# DONTZIN NAGY & FLEISSIG LLP

980 Madison Avenue | New York, New York 10075 | (212) 717 - 2900

Gregory N. Wolfe
greg@dnfllp.com

**VIA ECF & FEDEX**

May 15, 2023

Hon. P. Kevin Castel
United States District Court Judge
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, NY 10007

    Re: *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, 1:23-cv-02954-PKC

Dear Judge Castel:

  We represent plaintiff Sphere and write in response to Defendant Gryphon's pre-motion letter dated May 9, 2023 (the "Letter") seeking leave to file a partial motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules").[1] The parties are scheduled to appear at the initial pre-trial conference on June 6, 2023 at 3:30 PM.[2]

  As set forth in greater detail in the Complaint, the parties are both in the business of digital asset mining. *See* Compl. ¶ 1. Under the Master Services Agreement between the parties dated August 19, 2021, as subsequently amended (the "MSA"), Gryphon undertook an obligation to be the "exclusive provider of any and all management services for" Sphere's "blockchain and cryptocurrency-related operations"—*i.e.*, essentially Sphere's business—and the custodian of certain of Sphere's digital assets. *Id.* In exchange, Sphere agreed to pay Gryphon fantastic fees. *Id.*

  Gryphon, however, has been content to receive the benefits of the MSA without fulfilling its contractual duties or the fiduciary duties that come with being the exclusive manager of Sphere's business (including the broker of Sphere's investments) and custodian of Sphere's digital assets. *Id.* Since the inception of the parties' relationship, Gryphon has provided utterly abhorrent management services, engaged in self-dealing, and prioritized its own interests to the detriment of Sphere, giving rise to this lawsuit. *Id.* ¶ 27–46.

  In its Letter, Gryphon concedes that Sphere's claim for breach of contract (Count I) is properly pleaded; the case will accordingly proceed through discovery no matter what. Gryphon, however, seeks leave to file a partial motion to dismiss for failure to state a claim against (a) Count II for breach of the implied covenant; (b) Count III for breach of fiduciary duty; and (c) two allegations (*see id.* ¶¶ 4, 32) related to Gryphon's nonpayment of fees that support Sphere's otherwise unopposed claim for breach of contract.

  The key purposes of a pre-motion letter include "to explore whether the motion may be (a) obviated by an amendment to the pleadings or consent to the relief; or (b) deferred to a different juncture in the case." *See* Indiv. P. R. 3.A.v. For the reasons that follow, the Court should defer

---

[1] Capitalized terms have the meanings ascribed in the Letter unless otherwise noted.

[2] Gryphon's Letter (at 1) erroneously states that the initial pre-trial conference is scheduled for June 2, 2023. Although initially scheduled for June 2, the Court subsequently moved the conference to June 6.

Case 1:23-cv-02954-PKC   Document 56   Filed 05/15/23   Page 2 of 8

Page 2 of 8

consideration of summary dismissal of the claims until after discovery is complete. The proposed motion is baseless—but even if it were granted, it would not materially change the scope of discovery. Briefing it now would only serve to burden the parties and the Court, especially given that discovery is already under way and will likely be completed later this year.

In the event the Court is inclined to entertain the proposed motion now, Sphere would amend its Complaint under Rule 15(a) in response to any motion. Although Sphere believes its Complaint to be sufficient in all respects, Sphere would add allegations to bolster its present claims and also to address certain of Gryphon's ongoing breaches.

I. **SPHERE'S COMPLAINT IS NEITHER A REACTION TO GRYPHON'S EXTORTIONATE DEMAND FOR $560,225.53, NOR A "COPY" OF ITS DRAFT COMPLAINT**

At the outset, Gryphon's suggestion (at 1–2) that Sphere's Complaint was simply a reaction to Gryphon's extortionate demand for $560,225.53 on April 6, 2023 (attached as Exhibit A) is baseless. As explained in the Complaint, Gryphon had long been aware of Sphere's position that Gryphon has utterly failed to perform under the MSA. Compl. ¶¶ 31, 50. In an effort to dissuade Sphere from filing this suit, Gryphon has recently sought to leverage its dominant position as a fiduciary and the exclusive provider of Sphere's management services to manufacture technical breaches of the MSA by Sphere that would give rise to (generously) *de minimis* damages but promised an expensive, time-consuming litigation—all while Gryphon as custodian holds Sphere's digital assets (*i.e.*, the funds needed to pay for any litigation). *Id.* ¶¶ 47–49. Gryphon's demand, and the draft complaint that came with it, was simply the latest instance of Gryphon trying to cow Sphere. Tired of the bullying, and no longer believing that the parties could resolve their long-running differences without litigation, Sphere elected to file its Complaint. *Id.* ¶ 51. Tellingly, despite the supposed urgency and seriousness of its purported claims, Gryphon still has yet to assert them over a month later. Sphere will respond to Gryphon's counterclaims and address the many inaccuracies Gryphon seems to be poised to allege if and when it files them.

Gryphon's accusation (at 2) that Sphere "essentially copied Gryphon's draft complaint and re-styled it as a complaint of its own against Gryphon" is equally baseless. The draft Gryphon sent Sphere is attached as Exhibit B. No reasonable review of Gryphon's draft and Sphere's Complaint would suggest that Sphere "copied" Gryphon's draft, let alone modeled its Complaint off it. *See* Exhibit C (redline of the two documents). Nor would any reasonable review of Sphere's Complaint (which includes a table of contents, exhibits, and images) lead to the conclusion that Sphere drafted it, start to finish, in the less than 24 hours between receiving Gryphon's draft at 5:28 PM on April 6, 2023 and filing it around 3:00 PM on April 7, 2023 (which it did not).

II. **GRYPHON'S CONCESSION THAT ITS PROVISION OF MANAGEMENT SERVICES ARE SUBJECT TO A STANDARD OF CARE BASED ON INDUSTRY STANDARDS SHOULD LARGELY MOOT THE PRESENT DISPUTE OVER THE BREACH OF THE IMPLIED COVENANT CLAIM (COUNT II)**

In claiming that Gryphon breached its contractual duty as the exclusive provider of Sphere's management services and thus owes Sphere damages, Sphere asserted a claim for breach of the implied covenant in the alternative to its breach of contract claim because the MSA is arguably ambiguous about the applicable standard of care governing Gryphon's provision of such services. *See* Compl. ¶¶ 25, 62. Notwithstanding Gryphon's arguments (at 2) that the breach of

Page 3 of 8

contract of claim is duplicative of the implied covenant claim, alleging both claims is permissible in such circumstances. *See, e.g.*, *Claridge v. N. Am. Power & Gas, LLC*, 2015 WL 5155934, at *6 (S.D.N.Y. Sept. 2, 2015) (Castel, J.); *Vitamin Realty Assocs. LLC v. Time Rec. Storage, LLC*, 148 N.Y.S.3d 8, 9–10 (N.Y. App. Div. 2021) ("While arguably duplicative of the breach of contract claim, where, as here, the express terms of the agreement are ambiguous, plaintiff may maintain this alternate theory [for breach of the covenant of good faith and fair dealing], at least at this stage of the action.").

In its Letter, however, Gryphon concedes (at 2) that it must "perform the [Management] Services in a professional and workmanlike manner in accordance with generally recognized crypto-mining industry standards for similar services."[3] Gryphon's concession that Sphere may pursue its breach of contract claim for damages on the basis that Gryphon breached this standard of care in providing management services should obviate the need for motion practice on this issue.

### III. THE PROPOSED MOTION TO DISMISS THE BREACH OF FIDUCIARY CLAIM (COUNT III) IS WITHOUT MERIT

Gryphon's contention (at 1) that it can control Sphere to the point that Sphere cannot even "*attempt[] to enter into business relationships*"[4] with any other player in the crypto-industry—*i.e.*, the industry in which Sphere operates (*see* Compl. ¶ 49)—cannot be squared with Gryphon's claim that it does not owe Sphere a fiduciary duty (*see* Count III).

"To determine whether a party in a business relationship has a fiduciary duty depends on an inquiry into the nature and quality of that relationship which is an issue of fact that is ill-suited for resolution on a motion to dismiss." *Impax Media, Inc. v. Ne. Advert. Corp.*, 2018 WL 3962841, at *7 (S.D.N.Y. Aug. 17, 2018); *accord In re Refco Inc. Sec. Litig.*, 2010 WL 11475742, at *19 (S.D.N.Y. Mar. 2, 2010) ("[A] claim for breach of fiduciary duty is likely to be fact-dependent and is an unlikely candidate for a motion to dismiss."), *report and recommendation adopted*, 2011 WL 13168455 (S.D.N.Y. May 4, 2011); *Dresses for Less, Inc. v. CIT Grp./Com. Servs., Inc.*, 2002 WL 31164482, at *16 (S.D.N.Y. Sept. 30, 2002) ("Claims alleging the existence of a fiduciary duty are usually not subject to dismissal in a 12(b)(6) motion.").

"New York law is clear that a fiduciary relationship exists from the assumption of control and responsibility." *Deleu v. Scaife*, 775 F. Supp. 712, 715 (S.D.N.Y. 1991). "[T]he hallmark of a fiduciary relationship is one party's handling of money or property for a second party's best interest." *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 307 (S.D.N.Y. 2014). "[A] fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit." *In re Refco*, 2010 WL 11475742, at *19 (citation omitted).

Gryphon declares that "'the unusual amount of trust placed in Gryphon by Sphere' . . . is insufficient to plead the existence of a fiduciary duty," but glosses over Sphere's additional allegations that Gryphon owes fiduciary duties based on the unusual "control that Gryphon has

---

[3] The Court should discount Gryphon's breezy, unsupported assertion (at 3) that this "standard of care" is "considerably lower standard of care . . . than a fiduciary one," an issue that will no doubt be heavily litigated during the course of the case.

[4] All emphases have been added unless otherwise noted.

over Sphere" as the exclusive provider of its management services and Gryphon's "status as a custodian of Sphere's digital assets and miners," including its ability to determine how Sphere's assets are invested and its miners utilized. Compl. ¶¶ 13, 33–34. Gryphon has also taken the position that, in providing its services, it controls whether and how Sphere communicates with third parties in the crypto-industry, and where and how Sphere stores its digital assets, and that it is entitled to virtually unfettered access to Sphere's confidential information. *See* Letter at 1; Compl. ¶ 49. Such allegations of dominance clearly give rise to fiduciary duties, including the duty of loyalty and to avoid self-dealing. *See* Compl. ¶ 1.

*In re Refco*—a report and recommendation authored by Professor Daniel Capra serving as special master and adopted "complete[ly]" by Judge Rakoff following "*de novo*" review, *see* 2011 WL 13168455, at *1—is instructive. The court there determined that a group of investment fund plaintiffs adequately alleged that defendant Refco owed them fiduciary duties "because Refco performed functions that established a relationship of trust and confidence," including because Refco "was the prime broker and custodial agent" for the plaintiffs; "exercised discretion over the movement of [the plaintiffs'] assets"; had "veto rights over the structuring, offering and operation of certain investment vehicles"; and had "superior knowledge" in certain matters. 2010 WL 11475742, at *21–23. The same indicia are present here: Gryphon serves as the sole broker and custodial agent for Sphere, exercises discretion over the investment and utilization of Sphere's assets, has veto rights over many of Sphere's operations, and superior knowledge of its interactions with Sphere's counterparties, as Gryphon controls those relationships, as well as superior knowledge of the crypto-market at the time the parties entered into the MSA (or at least so Sphere believed at the time it entered into the MSA). *See* Compl. ¶¶ 1, 23–25.

Independently, the relationship between Gryphon and Sphere gives rise to inherent fiduciary duties. *See Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551–52 (1992) (noting that certain relationships subject parties "to tort liability for failure to exercise reasonable care, irrespective of their contractual duties"). Gryphon argues that the MSA precludes a finding of a fiduciary duty because it does not include the specific words "fiduciary duty," but it is well established that "a contractual relationship may give rise to fiduciary duties regardless of whether the contract itself includes specific words or language in that regard." *Kern v. Robert Currie Assocs.*, 220 A.D.2d 255, 255–56 (N.Y. App. Div. 1995); *accord Westwoods Aviation, LLC v. Atl. Aviation Flight Servs., Inc.*, 2007 WL 2454115, at *3 (S.D.N.Y. Aug. 27, 2007). "The common law has recognized that some associations are inherently fiduciary." *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 307 (S.D.N.Y. 2014) (citation omitted). Although there is no "exhaustive" list of such associations, associations that give rise to fiduciary relationships include principal-agent, trustee-beneficiary, employer-employee, broker-customer, and investment advisor-client. *See id*; *Podgoretz v. Shearson Lehman Bros.*, 1994 WL 1877200, at *10 (E.D.N.Y. Mar. 23, 1994); *Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 463 (N.Y. App. Div. 2007).

Here, the nature of the relationship—with Gryphon managing Sphere's material operations—is akin to that of an officer or trustee and leads to the inexorable conclusion that Gryphon is a fiduciary. *See Bos. Consulting Grp., Inc. v. NCR Corp.*, 2020 WL 5731963, at *3 (S.D.N.Y. Sept. 24, 2020) (argument that defendant did not have "fiduciary obligation" was "unpersuasive because the explicit terms of the contract grant [defendant] significant influence over [plaintiff's] decision-making processes for matters related and unrelated to [defendant's]

initiatives at [plaintiff] as well as nearly unfettered access to confidential information and data"). Moreover, Gryphon acts as an agent of Sphere, including in dealing with third parties, and a broker, investment advisor, and custodian, including in managing, investing, and holding Sphere's digital assets, relationships that give rise to fiduciary duties. *See Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 720 (S.D.N.Y. 2019) ("Shrem accepted discretionary control over WCR's funds to purchase Bitcoin on its behalf based on his knowledge of the Bitcoin market; there is no doubt he had a fiduciary duty in acting as WCF's agent.").

Pointing to the MSA accordingly aids Sphere, not Gryphon—and certainly does not aid Gryphon at the pleading stage. There is no fiduciary duty disclaimer anywhere in the MSA—or in fact any affirmative language that is even inconsistent with the imposition of a fiduciary duty, let alone so inconsistent as to exclude the possibility at the pleading stage. *See Westwoods Aviation*, 2007 WL 2454115, at *3 (absence of fiduciary duty disclaimer weighed in favor of denying motion to dismiss and declining to dismiss fiduciary duty claim even though, unlike here, there were "clauses in the contracts that seem to tilt against" a fiduciary duty). Nor is there a waiver of an agency or brokerage relationship, and the existence of such relationships, at best for Gryphon, raises fact questions that cannot be resolved now. *See Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 452 (S.D.N.Y. 2015) (observing that "[t]he existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury" and "where a writing erects the essential structure of an agency relationship, even an explicit disclaimer cannot undo it"). And, in all events, the three-page MSA (with a one-and-a-half-page amendment) is a binding term sheet signed in contemplation of a more robust agreement that never came to be and is far too barebone to blot out Gryphon's fiduciary duties in these circumstances. *See Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 122 (N.Y. App. Div. 1998) ("While in some instances courts have declined to find the existence of a fiduciary relationship where the parties failed to provide for it in their written agreements, the agreements in those cases were far more extensive or comprehensive than the contract between the parties before us.").

The cases cited by Gryphon (at 3) are readily distinguishable, as they involved materially different circumstances. In *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, the instrument allegedly giving rise to an agency relationship was executed for the benefit of a different party, not the plaintiff, and there were otherwise no allegations of dominance. 921 F. Supp. 2d 94, 104 (S.D.N.Y. 2013). *In re Mid-Island Hospital, Inc.* involved a debtor-creditor relationship, which ordinarily "is not by itself a fiduciary relationship." 276 F.3d 123, 130 (2d Cir. 2002). *B & M Linen, Corp. v. Kannegiesser, USA, Corp.* involved "bald[]" allegations of a fiduciary relationship between a purchaser and seller. 679 F. Supp. 2d 474, 479 (S.D.N.Y. 2010). None of these cases remotely resemble this one.

### IV.  GRYPHON'S ATTEMPT TO DISMISS ALLEGATIONS UNDER RULE 9(B) SUPPORTING SPHERE'S CLAIM THAT GRYPHON FAILED TO PAY SPHERE CERTAIN FEES IS BASELESS

As a general matter, one of the most basic, commonly articulated theories underlying breach of contract claims is that a counterparty failed to pay what was due under the contract. Sphere's Complaint includes such well-trod allegations in support of its breach of contract claim (Count I), namely, that Gryphon has not paid Sphere what it is due on the MSA. Compl. ¶¶ 4, 32. Sphere, in its Complaint, termed the failure to make the payments "skimming" and "stealing." *Id*. Gryphon concedes that Sphere's breach of contract claim is properly pleaded but incorrectly claims

(at 3) that, because Sphere used those words, these commonplace nonpayment allegations are now subject to dismissal under the heightened pleading standards of Rule 9(b).

Initially, as many courts hold, "[a] party advancing a breach of contract claim need not satisfy the particularity requirement of Rule 9(b)." *Murray Eng'g P.C. v. Remke*, 2018 WL 3773991, at *6 (S.D.N.Y. Aug. 9, 2018). But even if Rule 9(b) could be applied to breach of contract claims, it would not apply here because Sphere's allegation that "Gryphon has been skimming off the top—effectively stealing money—from Sphere" (*see* Compl. ¶ 32) does not rise to the level of fraudulent because it brands Gryphon "as [a] thie[f], not [a] liar[]." *In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 430 (Bankr. S.D.N.Y. 2005) (finding breach of fiduciary duty claim "not grounded on a fraud theory" despite alleging "a course of dishonest conduct involving self-dealing, misappropriation, diversion of assets" and noting "not every claim based on dishonesty necessarily sounds in fraud").

And even if Sphere's specific non-payment allegation sounded in fraud, that would still be irrelevant because courts generally look to the "gravamen" of a claim before applying Rule 9(b) and the gravamen Sphere's breach of contract claim is not Gryphon's theft, but Gryphon's persistent failure to provide management services consistent with the MSA. *See Citigroup Mortg. Loan Tr. 2007-AMC3 ex rel. U.S. Bank, Nat. Ass'n v. Citigroup Glob. Markets Realty Corp.*, 2014 WL 1329165, at *4 (S.D.N.Y. Mar. 31, 2014). Sphere's breach of contract claim is "therefore not the type of fraud-based claim that necessitates the heightened pleading standard of Rule 9(b). . . . Because [Sphere] seeks a cognizable remedy on a traditional breach of contract claim that does not sound in fraud, Rule 9(b) does not apply." *Id.*

And even if the nonpayment allegations were isolated and subjected to a Rule 9(b) analysis, the allegations are sufficiently particularized. The essence of the allegation is that Sphere cannot reconcile the payments it has received with the performance of its miners. Compl. ¶ 32. Gryphon has inexplicably refused to provide the information needed for such reconciliation, which leads to the conclusion that Gryphon is not paying Sphere what it is due under the MSA. *Id.* At this stage, this is sufficient.

Finally, Gryphon's cases (at 3) are distinguishable. *Fernandez v. UBS AG* dismissed an implied covenant claim that rested on "general allegations that the . . . Defendants pushed plaintiffs to invest in the Funds by representing that they were safe when they were actually risky" and did not apprise any of the multiple defendants of the wrongdoing alleged against it. 222 F. Supp. 3d 358, 388 (S.D.N.Y. 2016). By contrast, allegations that defendants had breached the contract by failing to conduct a suitability analysis could not be said to sound in fraud. *Id.* at 389. Here, Gryphon has moved to dismiss allegations (not a claim), the gravamen of the breach of contract claim is not fraud and, in any event, this is a one-defendant case and Gryphon certainly understands the allegations against it. Gryphon's other case, *Spira v. Curtin*, did not involve breach of contract claims at all and is not analogous. *See* 2001 WL 611386, at *1 (S.D.N.Y. June 5, 2001).

V. **THE COURT SHOULD DEFER CONSIDERATION OF ANY MOTION TO DISMISS THE CLAIMS SUMMARILY UNTIL AFTER DISCOVERY IS COMPLETE**

Efficiency counsels that the Court defer consideration of any motion to summarily dismiss the claims until after discovery is complete. *See* Indiv. P. R. 3.A.v; Rule 1 (providing that the Rules "should be construed, administered, and employed by the court and the parties to secure the

just, speedy, and inexpensive determination of every action and proceeding"). For the aforementioned reasons, the partial motion to dismiss would not be successful, but even if it were, it would not materially narrow the scope of discovery. Discovery is already underway, will likely be complete around year-end, will proceed regardless of the outcome of the proposed partial motion to dismiss, and will be broad given that Sphere's breach of contract claim challenges the provision of Gryphon's management services and will require an assessment of industry standards.

In the event that the Court is inclined to entertain a motion to dismiss now, Sphere would amend its Complaint under Rule 15(a) to bolster its claims and also to address certain instances of Gryphon's ongoing misconduct. For example, since filing its Complaint, Gryphon has resorted to self-help by refusing to sell Sphere's digital assets and remit the proceeds therefrom to Sphere in accordance with Sphere's instructions. Instead, for the first time in the parties' nearly two-year relationship, Gryphon has taken the position that Sphere must keep a minimum deposit of digital assets worth in excess of at least $500,000 in Gryphon's control—an amount of money that just so happens to coincide with the amount of money Gryphon contends it is owed from Sphere. There is no support in the MSA for the maneuver, which is instead obviously designed to starve Sphere of the resources needed to operate its business and fund this litigation—and which may eventually require emergency relief from this Court.

In terms of the pre-motion conference, Sphere believes that it would be most efficient to merge the initial pretrial conference scheduled for June 6, 2023 with the pre-motion conference. This will give the parties sufficient time to submit a case management plan and the joint letter required in advance of the initial pretrial conference. *See* Dkt. 12. That said, Sphere would be available for a pre-motion conference before that date.

In terms of scheduling and process for any responsive pleading, motion to dismiss, and amendment, Sphere proposes that:

- Gryphon file its responsive pleading and motion to dismiss (if permitted by the Court) as proposed by Gryphon, namely, "within two (2) business days of the Court granting Gryphon permission to do so."

- Sphere will amend its Complaint twenty-one days (21) days after in accordance with Rule 15(a)(1)(B).

In the alternative, Sphere recognizes that, in line with your Honor's Individual Practices, it may make sense for Sphere to amend its Complaint before Gryphon files its answer and motion to dismiss so that Gryphon only has to undertake the burden of responding to one operative pleading. *See* Indiv. P. R. 3.A.v. In such circumstances, Sphere again asks for twenty-one (21) days to amend its Complaint from the date the Court enters its schedule and that Gryphon respond within fourteen (14) days in accordance with Rule 15.

Sphere also respectfully asks that, should Gryphon seek to dismiss Sphere's amended pleading and Sphere seek leave to amend in the future, the Court keep in mind that Sphere is now amending its Complaint as of right in response to a four-page pre-motion letter, only a page-and-a-half of which was actually devoted to explaining Gryphon's views of why the Complaint is deficient. *See* Indiv. P. R. 3.A.iv ("The Pre-Motion Letter and response will be taken into account in deciding whether further leave to amend will be granted in the event the motion to dismiss is

granted."). It is apparent that Gryphon's Letter did not reflect Gryphon's "best shot" and that Gryphon has strategically held back arguments and cases; indeed, Gryphon expressly states (at 4) that its Letter is "not intended to be an exhaustive list" of the "grounds for dismissal." Nevertheless, Gryphon has secured a commitment from Sphere to amend its Complaint without the need to file a formal motion to dismiss and now knows full well that it need not include all or even some of its best arguments and cases for dismissal should it file such a motion to dismiss before Sphere amends. *Cf. Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015) (noting the benefit of "full briefing" in detecting "pleading defects" before finding amendment to be futile).

***

We are available to discuss these issues at your Honor's convenience.

Respectfully submitted,

*/s/ Gregory N. Wolfe*

cc: Counsel for Gryphon (*via ECF only*)

---

Plaintiff is granted leave to amend its complaint within 21 days of this Order. Defendant may file a renewed pre-motion letter 14 days after receipt of the Amended Complaint. Letter motion DE 14 is terminated. June 6, 2023 conference is VACATED.
SO ORDERED.
Dated: 5/25/2023

P. Kevin Castel
United States District Judge