# DONTZIN NAGY & FLEISSIG LLP

980 Madison Avenue | New York, New York 10075 | (212) 717 - 2900

Gregory N. Wolfe
greg@dnfllp.com

**VIA ECF**                                                                                    July 5, 2023

Hon. P. Kevin Castel
United States District Court Judge
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, NY 10007

Re:     *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, 1:23-cv-02954-PKC

Dear Judge Castel:

We represent plaintiff Sphere and write in response to Defendant Gryphon's pre-motion letter dated June 28, 2023 (the "Letter"), seeking leave to file a partial motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules").[1] The initial pre-trial conference is presently off-calendar.

As set forth in greater detail in the First Amended Complaint (the "FAC"), the parties are both in the business of digital asset mining. *See* FAC. ¶ 1. Under the Master Services Agreement between the parties dated August 19, 2021, as subsequently amended (the "MSA"), Gryphon undertook an obligation to be the "exclusive provider of any and all management services for" Sphere's "blockchain and cryptocurrency-related operations"—*i.e.*, essentially Sphere's business—and the custodian of certain of Sphere's digital assets. *Id.* In exchange, Sphere agreed to pay Gryphon fantastic fees. *Id.*

Gryphon, however, has been content to receive the benefits of the MSA without fulfilling its contractual duties or the fiduciary duties that come with being the exclusive manager of Sphere's business (including the broker of Sphere's investments) and custodian of Sphere's digital assets. *Id.* Since the inception of the parties' relationship, Gryphon has provided utterly abhorrent management services, engaged in self-dealing, and prioritized its own interests to the detriment of Sphere, giving rise to this lawsuit. *Id.* ¶¶ 33–47.

And, since Sphere amended its Complaint, Gryphon's misconduct has only gotten worse. Most notably, Gryphon has ceased honoring Sphere's written instructions to sell Sphere's own digital assets and remit the proceeds to Sphere. *See id.* ¶¶ 68–73. Aside from being a clear breach of the MSA, this is, to put it mildly, problematic for Sphere because Sphere generates substantially all of its revenue by mining for digital assets and those digital assets flow through a wallet controlled by Gryphon. *Id.* ¶ 68. Gryphon has communicated that it is refusing to do so because it is trying to put Sphere in a position where Sphere cannot meet its ordinary course obligations and where it cannot pay for the expenses and costs associated with this litigation so that Sphere will be forced to capitulate. *Id.* ¶ 73. The situation may reach a point where Sphere is forced to seek emergency relief from the Court.

In its Letter, Gryphon concedes that Sphere's claim for breach of contract (Count I) is properly pleaded; the case will accordingly proceed through discovery no matter what. Gryphon,

---
[1] Capitalized terms have the meanings ascribed in the Letter unless otherwise noted.

however, seeks leave to file a partial motion to dismiss for failure to state a claim against: (a) Count II for breach of the implied covenant; (b) Count III for breach of fiduciary duty; and (c) two allegations (*see id.* ¶¶ 4, 38) related to Gryphon's nonpayment of fees that support Sphere's otherwise unopposed claim for breach of contract.

The parties previously exchanged pre-motion letters on these issues. *See* Dkt. Nos. 14–15. Although Sphere believed its Complaint was sufficient in all respects, it amended its Complaint to address certain of Gryphon's ongoing breaches and bolster its present claims. Gryphon's initial pre-motion letter was barebone and designed simply to ferret out Sphere's contentions; it, however, did not present any viable justification for dismissing any part of the pleadings. Its present pre-motion Letter and proposed motion fair no better.

The key purposes of a pre-motion letter include "to explore whether the motion may be (a) obviated by an amendment to the pleadings or consent to the relief; or (b) deferred to a different juncture in the case." *See* Indiv. P. R. 3.A.v. For the reasons that follow, the Court should defer consideration of summary dismissal of the claims until after discovery is complete. As before, the proposed motion is baseless—but even if it were granted, it would not materially change the scope of discovery. Briefing it now would only serve to burden the parties and the Court, especially given that discovery is already under way.

I. **SPHERE'S IMPLIED COVENANT CLAIM (COUNT II) IS VIABLE BECAUSE THERE IS AN AMBIGUITY IN THE MSA**

The MSA provides that "[Sphere] shall provide written instructions to [Gryphon] with respect to all decisions to sell or hold Digital Assets" (hereinafter, the "Sale Provision"). MSA at 4. As noted, once Sphere filed its Complaint, Gryphon ceased honoring Sphere's written instructions to sell its digital assets and remit the proceeds from such sales to Sphere. *See* FAC ¶¶ 68–73.

Where a provision is arguably ambiguous, a party may maintain an implied covenant claim in parallel with a breach of contract claim. *See, e.g.*, *Claridge v. N. Am. Power & Gas, LLC*, 2015 WL 5155934, at *6 (S.D.N.Y. Sept. 2, 2015) (Castel, J.); *Vitamin Realty Assocs. LLC v. Time Rec. Storage, LLC*, 148 N.Y.S.3d 8, 9–10 (N.Y. App. Div. 2021) ("While arguably duplicative of the breach of contract claim, where, as here, the express terms of the agreement are ambiguous, plaintiff may maintain this alternate theory [for breach of the covenant of good faith and fair dealing], at least at this stage of the action.").

Sphere's position is that the Sale Provision on its face requires Gryphon to comply with its written instructions—how else to give meaning to the Sale Provision given that there is no other mechanism in the MSA for selling the assets and transferring the revenues to Sphere. Gryphon's position is that it may disregard Sphere's written instructions.

As the FAC spells out, because the Sale Provision does not expressly state what should happen when Gryphon receives a written instruction from Sphere, there is an ambiguity that makes assertion of an implied covenant claim permissible. *See* FAC ¶¶ 88–89. Moreover, contrary to Gryphon's claim (at 3), the allegations supporting the implied covenant count expressly explain why Gryphon is acting in bad faith and frustrating the purpose of the MSA by failing to honor Sphere's written instructions:

> [T]he intent and purpose of the [Sales Provision] was that Gryphon would sell digital assets when instructed to do so and remit the proceeds of such sales to Sphere.  Any other interpretation would frustrate the purpose of the provision and the MSA itself—there is no point to providing written instructions to Gryphon unless they will be honored and unless Gryphon will remit the proceeds of such sales to Sphere.  Indeed, there is no other mechanism for Sphere to receive the proceeds of sales of its own digital assets under the MSA and there is no point to the MSA unless Sphere can actually reap its benefits, namely, revenue.
>
> Gryphon has materially breached its implied obligations.  By refusing to honor instructions to sell digital assets, Gryphon is acting in bad faith and in a way that is frustrating the intent and purpose of the MSA.  Indeed, Gryphon has communicated it is trying to put Sphere in a position where it cannot meet its ordinary course obligations and where it cannot pay for the expenses and costs associated with this litigation so that Sphere will be forced to capitulate.  This smacks of bad faith.

*Id.*  Accordingly, there is no merit to the proposed motion to dismiss Count II.

## II. THE PROPOSED MOTION TO DISMISS THE BREACH OF FIDUCIARY CLAIM (COUNT III) IS WITHOUT MERIT

Gryphon's position that it can control Sphere to the point that Sphere cannot even "*attempt[] to enter into business relationships*"[2] with any other player in the crypto-industry (*see* Dkt No. 14; *see also* FAC Exhibit 3 at 1)—*i.e.*, the industry in which Sphere operates (*see* FAC ¶ 65)—cannot be squared with Gryphon's claim that it does not owe Sphere a fiduciary duty (*see* Count III).

"To determine whether a party in a business relationship has a fiduciary duty depends on an inquiry into the 'nature and quality of that relationship' which is an issue of fact that is ill-suited for resolution on a motion to dismiss."[3]  *Impax Media, Inc. v. Ne. Advert. Corp.*, 2018 WL 3962841, at *7 (S.D.N.Y. Aug. 17, 2018); *accord In re Refco Inc. Sec. Litig.*, 2010 WL 11475742, at *19 (S.D.N.Y. Mar. 2, 2010) ("[A] claim for breach of fiduciary duty is likely to be fact-dependent and is an unlikely candidate for a motion to dismiss."), *report and recommendation adopted*, 2011 WL 13168455 (S.D.N.Y. May 4, 2011); *Dresses for Less, Inc. v. CIT Grp./Com. Servs., Inc.*, 2002 WL 31164482, at *16 (S.D.N.Y. Sept. 30, 2002) ("Claims alleging the existence of a fiduciary duty are usually not subject to dismissal in a 12(b)(6) motion.").

---

[2] All emphases have been added unless otherwise noted.

[3] Gryphon cites nothing to diminish this black letter proposition.  Instead, Gryphon disingenuously states (at 3) that Sphere's position is that the existence of a "fiduciary relationship can" never "be decided on a motion to dismiss," which is not Sphere's position; rather, as set forth above, whether a fiduciary duty exists is typically a fact bound question that cannot be resolved on the pleadings.  *See, e.g.*, *Roni LLC v. Arfa*, 18 N.Y.3d 846, 848 (N.Y. 2011) ("Ascertaining the existence of a fiduciary relationship 'inevitably requires a fact-specific inquiry.'").

"New York law is clear that a fiduciary relationship exists from the assumption of control and responsibility." *Deleu v. Scaife*, 775 F. Supp. 712, 715 (S.D.N.Y. 1991). "[T]he hallmark of a fiduciary relationship is one party's handling of money or property for a second party's best interest." *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 307 (S.D.N.Y. 2014). "[A] fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit." *In re Refco*, 2010 WL 11475742, at *19 (citation omitted).

The relationship between Gryphon and Sphere gives rise to inherent fiduciary duties. FAC ¶¶ 41–45; *see* FAC *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551 (1992) (noting that certain relationships subject parties "to tort liability for failure to exercise reasonable care, irrespective of their contractual duties"). Gryphon argues that the MSA precludes a finding of a fiduciary duty because it does not include the specific words "fiduciary duty," but it is well established that "a contractual relationship may give rise to fiduciary duties regardless of whether the contract itself includes specific words or language in that regard." *Kern v. Robert Currie Assocs.*, 220 A.D.2d 255, 255–56 (N.Y. App. Div. 1995); *accord Westwoods Aviation, LLC v. Atl. Aviation Flight Servs., Inc.*, 2007 WL 2454115, at *3 (S.D.N.Y. Aug. 27, 2007). "The common law has recognized that some associations are inherently fiduciary." *Childers*, 36 F. Supp. 3d at 307 (citation omitted). Although there is no "exhaustive" list of such associations, associations that give rise to fiduciary relationships include principal-agent, trustee-beneficiary, employer-employee, broker-customer, and investment advisor-client. *See id*; *Podgoretz v. Shearson Lehman Bros.*, 1994 WL 1877200, at *10 (E.D.N.Y. Mar. 23, 1994); *Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 463 (N.Y. App. Div. 2007).

Here, the nature of the relationship—with Gryphon managing Sphere's material operations—is akin to that of an officer or trustee and leads to the inexorable conclusion that Gryphon is a fiduciary. *See Bos. Consulting Grp., Inc. v. NCR Corp.*, 2020 WL 5731963, at *3 (S.D.N.Y. Sept. 24, 2020) (argument that defendant did not have "fiduciary obligation" was "unpersuasive because the explicit terms of the contract grant [defendant] significant influence over [plaintiff's] decision-making processes for matters related and unrelated to [defendant's] initiatives at [plaintiff] as well as nearly unfettered access to confidential information and data"). Moreover, Gryphon acts as an agent of Sphere, including in dealing with third parties, and a broker, investment advisor, and custodian, including in managing, investing, and holding Sphere's digital assets; relationships that give rise to fiduciary duties. *See Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 720 (S.D.N.Y. 2019) ("Shrem accepted discretionary control over WCR's funds to purchase Bitcoin on its behalf based on his knowledge of the Bitcoin market; there is no doubt he had a fiduciary duty in acting as WCF's agent.").

Pointing to the MSA accordingly aids Sphere, not Gryphon—and certainly does not aid Gryphon at the pleading stage. There is no fiduciary duty disclaimer anywhere in the MSA—nor any affirmative language that is even inconsistent with the imposition of a fiduciary duty, let alone so inconsistent as to exclude the possibility at the pleading stage.[4] *See Westwoods Aviation*, 2007

---

[4] Gryphon states (at 4) that the services "Gryphon would provide are described in the MSA in obligatory terms," but never explains how that affects the existence of fiduciary duties, how it removes Gryphon's discretion, or how that renders this case distinguishable from the long line of cases that have found inherent fiduciary duties based on the relationship between the parties.

WL 2454115, at *3 (absence of fiduciary duty disclaimer weighed in favor of denying motion to dismiss and declining to dismiss fiduciary duty claim even though, unlike here, there were "clauses in the contracts that seem to tilt against" a fiduciary duty). Nor is there a waiver of an agency or brokerage relationship, and the existence of such relationships, at best for Gryphon, raises fact questions that cannot be resolved now. *See Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 452 (S.D.N.Y. 2015) (observing that "[t]he existence of an agency relationship is a mixed question of law and fact that should generally be decided by a jury" and "where a writing erects the essential structure of an agency relationship, even an explicit disclaimer cannot undo it"). And, in all events, the three-page MSA (with a one-and-a-half-page amendment) is a binding term sheet signed in contemplation of a more robust agreement that never came to be and is far too barebone to blot out Gryphon's fiduciary duties in these circumstances. *See Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 122 (N.Y. App. Div. 1998) ("While in some instances courts have declined to find the existence of a fiduciary relationship where the parties failed to provide for it in their written agreements, the agreements in those cases were far more extensive or comprehensive than the contract between the parties before us.").

Independently, Gryphon's fiduciary duties arise from the "unusual trust" Sphere places in Gryphon, as well as unusual "control that Gryphon has over Sphere" as the exclusive provider of its management services and Gryphon's "status as a custodian of Sphere's digital assets and miners," including its ability to determine how Sphere's assets are invested and its miners are utilized. FAC ¶¶ 16, 41. Gryphon has also taken the position that, in providing its services, it controls whether and how Sphere communicates with third parties in the crypto-industry, and where and how Sphere stores its digital assets, and that it is entitled to virtually unfettered access to Sphere's confidential information. *See* Letter at 1; FAC ¶ 65. Such allegations of dominance clearly give rise to fiduciary duties, including the duty of loyalty and to avoid self-dealing. *See* FAC ¶ 1.

*In re Refco*—a report and recommendation authored by Professor Daniel Capra serving as special master and adopted "complete[ly]" by Judge Rakoff following "*de novo*" review, *see* 2011 WL 13168455, at *1—is instructive. The court there determined that a group of investment fund plaintiffs adequately alleged that defendant Refco owed them fiduciary duties "because Refco performed functions that established a relationship of trust and confidence," including because Refco "was the prime broker and custodial agent" for the plaintiffs; "exercised discretion over the movement of [the plaintiffs'] assets"; had "veto rights over the structuring, offering and operation of certain investment vehicles"; and had "superior knowledge" in certain matters. 2010 WL 11475742, at *21–22. The same indicia are present here: Gryphon serves as the sole broker and custodial agent for Sphere, exercises discretion over the investment and utilization of Sphere's assets, has veto rights over many of Sphere's operations, and superior knowledge of its interactions with Sphere's counterparties, as Gryphon controls those relationships, as well as superior knowledge of the crypto-market at the time the parties entered into the MSA (or at least so Sphere believed at the time it entered into the MSA). *See* FAC ¶¶ 1, 29–31, 44–46.

Finally, the cases cited by Gryphon (at 4) are readily distinguishable, as they involved materially different circumstances. *In re Mid-Island Hospital, Inc.* involved a debtor-creditor

---

And the Court should discount Gryphon's breezy, unsupported assertion (at 3) that its contractual "standard of care" is a "considerably lower standard of care . . . than a fiduciary one," an issue that will no doubt be heavily litigated during the course of the case.

relationship, which ordinarily "is not by itself a fiduciary relationship." 276 F.3d 123, 130 (2d Cir. 2002). *B & M Linen, Corp. v. Kannegiesser, USA, Corp*. involved "bald[]" allegations of a fiduciary relationship between a purchaser and seller. 679 F. Supp. 2d 474, 479 (S.D.N.Y. 2010). Neither of these cases remotely resemble this one.

### III. GRYPHON'S ATTEMPT TO DISMISS ALLEGATIONS UNDER RULE 9(B) SUPPORTING SPHERE'S CLAIM THAT GRYPHON FAILED TO PAY SPHERE CERTAIN FEES IS BASELESS

As a general matter, one of the most basic, commonly articulated theories underlying breach of contract claims is that a counterparty failed to pay what was due under the contract. Sphere's FAC includes such well-trod allegations in support of its breach of contract claim (Count I), namely, that Gryphon has not paid Sphere what it is due on the MSA. FAC ¶¶ 4, 38. Sphere, in its FAC, termed the failure to make the payments "skimming" and "stealing." *Id*. Gryphon concedes that Sphere's breach of contract claim is properly pleaded but incorrectly claims (Letter at 4) that, because Sphere used those words, these commonplace nonpayment allegations are now subject to dismissal under the heightened pleading standards of Rule 9(b).

Initially, as many courts hold, "[a] party advancing a breach of contract claim need not satisfy the particularity requirement of Rule 9(b)." *Murray Eng'g P.C. v. Remke*, 2018 WL 3773991, at *6 (S.D.N.Y. Aug. 9, 2018). But even if Rule 9(b) could be applied to breach of contract claims, it would not apply here because Sphere's allegation that "Gryphon has been skimming off the top—effectively stealing money—from Sphere" (*see* FAC ¶ 38) does not rise to the level of fraudulent because it brands Gryphon "as [a] thie[f], not [a] liar[]." *In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 430 (Bankr. S.D.N.Y. 2005) (finding breach of fiduciary duty claim "not grounded on a fraud theory" despite alleging "a course of dishonest conduct involving self-dealing, misappropriation, diversion of assets" and noting "not every claim based on dishonesty necessarily sounds in fraud").[5]

And even if Sphere's specific non-payment allegation sounded in fraud, that would still be irrelevant because courts generally look to the "gravamen" of a claim before applying Rule 9(b), and the gravamen of Sphere's breach of contract claim is not Gryphon's theft, but Gryphon's persistent failure to provide management services consistent with the MSA. *See Citigroup Mortg. Loan Tr. 2007-AMC3 ex rel. U.S. Bank, Nat. Ass'n v. Citigroup Glob. Markets Realty Corp.*, 2014 WL 1329165, at *4 (S.D.N.Y. Mar. 31, 2014). Sphere's breach of contract claim is "therefore not the type of fraud-based claim that necessitates the heightened pleading standard of Rule 9(b)." Because Sphere seeks a "cognizable remedy on a traditional breach of contract claim that does not sound in fraud," Rule 9(b) does not apply. *Id*.

And even if the nonpayment allegations were isolated and subjected to the Rule 9(b) standard, the allegations are sufficiently particularized. Gryphon ignores the allegations added to the FAC that Sphere now has concrete evidence of Gryphon stealing its assets. As alleged in the FAC, "since Sphere filed this lawsuit, Gryphon has dropped the pretense and is holding Sphere's digital assets while refusing to sell them in accordance with Sphere's instructions. Gryphon has even sold Sphere's digital assets and simply retained the proceeds (tens of thousands of dollars),

---

[5] Gryphon only seeks to distinguish *Grumman*, but does not dispute that the gravamen of Sphere's claims is nonfraudulent, making Rule 9(b) inapplicable.

treating the funds as its own." FAC ¶ 39.  There can be no dispute that the allegations of theft are sufficiently particularized.

### IV. THE COURT SHOULD DEFER CONSIDERATION OF ANY MOTION TO DISMISS THE CLAIMS SUMMARILY UNTIL AFTER DISCOVERY IS COMPLETE

Efficiency counsels that the Court defer consideration of any motion to summarily dismiss the claims until after discovery is complete.  *See* Indiv. P. R. 3.A.v; Rule 1 (providing that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").  For the aforementioned reasons, the partial motion to dismiss would not be successful, but even if it were, it would not materially narrow the scope of discovery.  Discovery is already underway, will proceed regardless of the outcome of the proposed partial motion to dismiss, and will be broad given that Sphere's breach of contract claim challenges the provision of Gryphon's management services and will require an assessment of industry standards.

Should the Court be inclined to permit a motion to dismiss, Sphere agrees to the schedule proposed by Gryphon.

\*\*\*

We are available to discuss these issues at your Honor's convenience.

Respectfully submitted,

*/s/  Gregory N. Wolfe*

cc:     Counsel for Gryphon (*via ECF only*)