**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------ X

SPHERE 3D CORP.,                                     :
                                                     :
                              *Plaintiff*,           :     Case No. 1:23-cv-02954
                                                     :
              vs.                                    :     The Hon. Judge P. Kevin Castel
                                                     :
GRYPHON DIGITAL MINING, INC.,                        :     Magistrate Judge Valerie Figueredo
                                                     :
                              *Defendant*.           :
                                                     :
------------------------------------------------------ :
                                                     X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AND COUNTERCLAIM-
PLAINTIFF GRYPHON DIGITAL MINING, INC.'S PARTIAL MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL ALLEGATIONS AND BACKGROUND ............................................................... 4

ARGUMENT ............................................................................................................................. 6

I.      LEGAL STANDARD AND GOVERNING LAW .......................................................... 6

II.     SPHERE FAILS TO STATE A CLAIM FOR BREACH OF THE IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT II) ......................... 7

III.    SPHERE FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY
(COUNT III) ................................................................................................................. 12

IV.    SPHERE FAILS TO STATE A CLAIM BASED ON ALLEGATIONS OF
FRAUD UNDER RULE 9(B) OF THE FEDERAL RULES OF CIVIL
PROCEDURE ............................................................................................................... 15

CONCLUSION ........................................................................................................................ 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................6, 7

*Ashwood Cap., Inc. v. OTG Mgmt., Inc.,*
    99 A.D.3d 1 (1st Dep't 2012) ...............................................................14

*Atlantis Info. Tech., GmbH v. CA, Inc.,*
    485 F. Supp. 2d 224 (E.D.N.Y. 2007) ...................................................13

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.,*
    679 F. Supp. 2d 474 (S.D.N.Y. 2010)....................................................13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................7

*Brainbuilders LLC v. EmblemHealth, Inc.,*
    No. 21 Civ. 4627 (KPF), 2022 WL 3156179 (S.D.N.Y. Aug. 8, 2022) .................................10

*Burry v. Madison Park Owner LLC,*
    84 A.D.3d 699, 924 N.Y.S.2d 77 (1st Dep't 2011) ...............................12

*Cortazar v. Tomasino,*
    150 A.D.3d 668, 54 N.Y.S.3d 89 (2d Dep't 2017) ..................................8

*Dalton v. Educ. Testing Serv.,*
    87 N.Y.2d 384, 663 N.E.2d 289 (N.Y. 1995) ......................................7, 8

*Detko v. Blimpies Rest.,*
    924 F. Supp. 555 (S.D.N.Y. 1996) .........................................................11

*Doyle v. MasterCard Int'l Inc.,*
    2016 WL 9649874 (S.D.N.Y. Dec. 15, 2016) ........................................11

*Fernandez v. UBS AG,*
    222 F. Supp. 3d 358 (S.D.N.Y. 2016).....................................................16

*Gaia House Mezz LLC v. State St. Bank & Trust Co.,*
    720 F.3d 84 (2d Cir. 2013).....................................................................11

*Gizara v. New York Times Co.,*
    80 A.D.3d 1026, 915 N.Y.S.2d 379 (3d Dep't 2011) ..............................8

*Gravier Prods., Inv. v. Amazon Content Servs., LLC*,
   No. 19 Civ. 1169 (DLC), 2019 WL 3456633 (S.D.N.Y. July 31, 2019)..................................9

*In re Grumman Olson Industries, Inc.*,
   329 B.R. 411 (Bankr. S.D.N.Y. 2005).....................................................................................17

*Henneberry v. Sumitomo Corp. of Am.*,
   532 F. Supp. 2d 523 (S.D.N.Y. 2007).....................................................................................16

*King Penguin Opportunity Fund III, LLC v. Spectrum Grp. Mgmt. LLC*,
   187 A.D.3d 688, 135 N.Y.S.3d 363 (1st Dep't 2020) .........................................................8, 12

*Kuwait Inv. Off. v. Am. Int'l Grp., Inc.*,
   128 F. Supp. 3d 792 (S.D.N.Y. 2015).......................................................................................7

*Lamoureux v. Trustco Bank*,
   592 F. Supp. 3d 14 (N.D.N.Y. 2022).........................................................................................9

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*,
   902 F. Supp. 2d 329 (S.D.N.Y. 2012).......................................................................................7

*Litvinoff v. Wright*,
   150 A.D.3d 714, 54 N.Y.S.3d 22 (2d Dep't 2017) ................................................................12

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
   No. 02 MDL 1484(JFK), 2008 WL 2594819 (S.D.N.Y. June 26, 2008) ..............................16

*In re Mid-Island Hosp., Inc.*,
   276 F.3d 123 (2d Cir. 2002).....................................................................................................13

*MP Cool Invs. Ltd. v. Forkosh*,
   142 A.D.3d 286, 40 N.Y.S.3d 1 (1st Dep't 2016) ....................................................................8

*N. Shipping Funds I, LLC v. Icon Cap. Corp.*,
   921 F. Supp. 2d 94 (S.D.N.Y. 2013).......................................................................................13

*Ne. Wine Dev., LLC v. Serv.-Universal Distribs., Inc.*,
   23 A.D.3d 890, 804 N.Y.S.2d 836 (3d Dep't 2005)................................................................11

*Perks v. TD Bank, N.A.*,
   444 F. Supp. 3d 635 (S.D.N.Y. 2020).......................................................................................9

*Port Parties, Ltd. V. Enk Int'l LLC*,
   84 A.D.3d 685, 923 N.Y.S.2d 537 (1st Dep't 2011) ................................................................8

*Rivoli v. Gannett Co., Inc.*,
   327 F. Supp. 2d 233 (W.D.N.Y. 2004).....................................................................................17

iii

*Spira v. Curtin*,
  No. 97 CIV 2637(TPG), 2001 WL 611386 (S.D.N.Y. June 5, 2001) .....................................17

*Stortini v. Pollis*,
  138 A.D.3d 977, 31 N.Y.S.3d 90 (2d Dep't 2016) ...................................................................12

*Twersky v. Yeshiva Univ.*,
  993 F. Supp. 2d 429 (S.D.N.Y. 2014)........................................................................................7

*Ward v. TheLadders.com, Inc.*,
  3 F. Supp. 3d 151 (S.D.N.Y. 2014) ..........................................................................................10

## Other Authorities

Fed. R. Civ. P. 8 .............................................................................................................................17

Fed. R. Civ. P. 9(b) .................................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6).............................................................................................................1, 6

Defendant and Counterclaim-Plaintiff Gryphon Digital Mining, Inc. ("Gryphon"), by and through its undersigned counsel, K&L Gates LLP, respectfully submits this memorandum of law in support of its partial Motion to Dismiss the Amended Complaint of Plaintiff and Counterclaim-Defendant Sphere 3D Corp. ("Sphere"), pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and this Court's Order, dated August 11, 2023 (ECF No. 23).

## PRELIMINARY STATEMENT

Gryphon is an industry-leading, net carbon neutral bitcoin mining company with a commitment to the environmentally responsible and sustainable mining of digital assets. In 2021, in contemplation of a potential merger of the companies, Gryphon entered into a Master Services Agreement with Sphere, another digital asset mining company, pursuant to which Gryphon and Sphere agreed that Gryphon shall serve as the exclusive provider of management services for Sphere's blockchain and cryptocurrency-related operations (the "Original MSA"). These services include, without limitation, those relating to all mining equipment owned, purchased, leased, operated or otherwise controlled by Sphere; control and management of the digital wallet used for storing the digital assets that Gryphon mines for or on behalf of Sphere; and the selection of the mining pool and custodian of the digital assets.

Although the contemplated merger did not come to fruition, Gryphon and Sphere nevertheless remained enthusiastic about their partnership and, on or about December 29, 2021, entered into an amended form of the Original MSA (the "Amendment" and, together with the Original MSA, the "MSA"). Unfortunately, the parties' business relationship over time has deteriorated due to Sphere's repeated and material breaches of the MSA, bad faith conduct, and negligence.

Specifically, as detailed in Gryphon's Answer and Counterclaims, filed contemporaneously with this motion, Sphere has, among other things, entered into business

relationships with third-party cryptocurrency-related service providers in direct violation of the exclusivity provision in the MSA designating Gryphon as the exclusive provider of such services. Moreover, Sphere has created an independent digital wallet for the purpose of receiving, and which has in fact received, proceeds from cryptocurrency mining operations outside the digital wallet Gryphon maintains for Sphere, also in violation of the MSA. Sphere has further failed to pay Gryphon the agreed-upon management fees for its various services.

Gryphon has been damaged not only by Sphere's flagrant breaches of the MSA, but also by Sphere's gross negligence, which allowed a hostile threat actor to infiltrate Sphere's computer system, send spoofing emails from Sphere's email domain, and induce Gryphon to send cryptocurrency that was intended to be sent to Sphere but instead was sent to the hostile threat actor (the "Data Security Incident"). Sphere's complete and utter lack of care with respect to the safeguarding, security, and control of its technology systems resulted in Gryphon sending over $500,000 worth of bitcoin to the hostile threat actor, which Gryphon has been unable to recover.

On March 21, 2023, counsel for Gryphon sent a letter to counsel for Sphere about Sphere's blatant violations of the MSA, including Sphere's engaging of third parties for its cryptocurrency-related operations, and its creating a digital wallet and receiving cryptocurrency mining proceeds into that digital wallet. Gryphon demanded Sphere provide any and all documentation concerning the creation of third-party business relationships regarding Sphere's cryptocurrency-related operations. After Sphere failed to provide any such documentation, counsel for Gryphon prepared a draft complaint asserting claims against Sphere.

In a final effort to avoid litigation, Gryphon's counsel sent the draft complaint to counsel for Sphere on April 6, 2023. Rather than responding to Gryphon, Sphere quickly concocted a

handful of unfounded claims against Gryphon based entirely on vague and conclusory allegations of law and fact, and initiated this action the very next day on April 7, 2023.

Evidently only concerned with winning a "race to the courthouse," Sphere's original Complaint failed to allege any well-pleaded facts that could support its purported claims for breach of fiduciary duty or breach of the implied covenant of good faith and fair dealing.  Sphere's original Complaint also failed to allege any well-pleaded facts, let alone allege facts with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b), in support of its unfounded and bad faith claim that Gryphon has somehow attempted to defraud Sphere by "skimming off the top" or "stealing" assets from Sphere, and has taken actions to "conceal" such fraud from Sphere.

In response to Gryphon's pre-motion letter requesting leave to file a partial motion to dismiss these purported claims (ECF No. 14), and the Court's Order granting Sphere leave to amend its pleading (ECF No. 16), Sphere filed its Amended Complaint on June 15, 2023.  *See* ECF No. 20 (the "Amended Complaint").  As set forth below, however, the Amended Complaint in no way cures the defects in Sphere's original pleading with respect to Sphere's purported claims for breach of the implied covenant of good faith and fair dealing (Count II) or breach of fiduciary duty (Count III).  Accordingly, the Court should dismiss Counts II and III of the Amended Complaint entirely, with prejudice, as well as any claim based on alleged fraudulent conduct.

## FACTUAL ALLEGATIONS AND BACKGROUND

Gryphon and Sphere are in the business of digital asset mining.  Am. Compl., ¶¶ 1, 21-22.
In contemplation of a merger that ultimately was not consummated, Gryphon and Sphere entered
into the MSA on or about August 19, 2021, pursuant to which they agreed that Gryphon shall serve
as the "exclusive provider of any and all management services for all blockchain and crypto-
currency-related operations including but not limited to services relating to all mining equipment
owned, purchased, leased, operated, or otherwise controlled by [Sphere] . . . ."  *Id.* ¶¶ 1, 29; *see
also id.* at Ex. 1 (the "Exclusivity" Clause).

Pursuant to the MSA, the parties also agreed that Gryphon shall "at all times control the
digital wallet, which shall be a wallet address selected by [Gryphon] on behalf of [Sphere] for
storing digital assets . . . mined by [Gryphon] for or on behalf of [Sphere] . . .  (the 'Digital
Assets')."  *Id.* ¶¶ 1, 30; *see also id.* at Ex. 1 (the "Commercial Terms" Clause).  The parties further
agreed that Gryphon "shall at all times select the mining pool and custodian of the Digital Assets."
*Id.* at Ex. 1 (the "Commercial Terms" Clause).  In exchange for its services, Sphere of its own free
will agreed to pay Gryphon a contractually-defined management fee.  *Id.* ¶ 1.  The MSA was later
amended on or about December 29, 2021.  *Id.* ¶¶ 1, 28 & Ex. 2.

In ostensible support of its claims, Sphere purports to allege that Gryphon has "shirked its
duties" under the MSA by providing either "no services whatsoever" or "abhorrent services."  Am.
Compl., ¶¶ 2, 3, 33, 35.  With respect to its claims for breach of contract and breach of the implied
covenant, which are predicated on the same conduct and incorporate the same allegations, Sphere
alleges Gryphon has "refused to find hosting space" for Sphere's miners (*Id.* ¶ 34); "shirked its
duties to provide the assistance and information needed to release" miners seized by U.S. Customs
after they were ordered by Sphere from a foreign provider (*id.* ¶ 35); "delayed setting up mining
pools" (*id.* ¶ 36); "ignored instructions to sell Sphere's bitcoin on a timely basis" (*id.*); "failed to

4

review third-party invoices for accuracy" (*id.*); and "failed to manage any of Sphere's relationships with third-parties." *Id.* Sphere also alleges, based solely on Gryphon's purported refusal to provide Sphere with certain financial information and documents, that Gryphon has orchestrated a scheme to defraud Sphere by "skimming off the top" or "stealing" digital assets and/or money from Sphere and to conceal the alleged theft from Sphere. *Id.* ¶ 38.

With respect to its claim for breach of fiduciary duty, Sphere alleges Gryphon owes fiduciary duties to Sphere arising from "the unusual amount of trust placed in Gryphon by Sphere, control that Gryphon has over Sphere, and [Gryphon's] status as a custodian of Sphere's digital assets and miners." *Id.* ¶ 41. Notably, the MSA nowhere provides that the parties agreed to enter into a fiduciary relationship, or that Gryphon agreed to accept any fiduciary duties owing to Sphere. *See id.* at Exs. 1-2. Nevertheless, Sphere alleges Gryphon breached its fiduciary duties to Sphere "by prioritizing the operations of [Gryphon's] miners over Sphere's and employing more advantageous mining pool strategies for its own digital assets." *Id.* ¶ 47. Sphere does not allege how Gryphon has prioritized its own miners or employed "more advantageous" mining strategies; rather, Sphere infers this must be true because Gryphon has "reported a substantially higher mining efficacy ratio than Sphere." *Id.*

Sphere also alleges that a "spoofing" attack—whereby an unknown threat actor infiltrated ***Sphere's*** computer systems, impersonated ***Sphere's*** Chief Financial Officer, Kurt Kalbfleisch, and ***induced Gryphon*** to send over $500,000 in bitcoin intended for Sphere to a hostile threat actor— is somehow ***Gryphon's*** fault. Am. Compl., ¶¶ 48-62.

Specifically, despite the Data Security Incident being a direct consequence of *Sphere's* failure to maintain proper security and control of its own technology systems, *Sphere's* failure to detect or intercept a hostile threat actor in its systems, and *Sphere's* failure to notify Gryphon of

fraudulent activity occurring in Sphere's systems, Sphere nonetheless claims that Gryphon's purported lack of internal controls and policies and procedures allowed the attack. *Id.* Sphere does so while simultaneously admitting that Sphere's own Chief Executive Officer, Patricia Trompeter, was properly copied on the emails sent by the hostile threat actor while impersonating Mr. Kalbfleisch, yet did nothing to stop the attack. *Id.* ¶ 7, Fig. 1.

Based on the foregoing, Sphere asserts claims against Gryphon for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and breach of fiduciary duty (Count III) and seeks compensatory and punitive damages, pre- and post-judgment interest, and attorneys' fees. *Id.* ¶¶ 78-95 and pp. 28-29 at "Prayer for Relief."

## ARGUMENT

The Amended Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing or breach of fiduciary duty as a matter of New York law. Thus, Counts II and III should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

As set forth below, Sphere's claim for breach of the implied covenant of good faith and fair dealing is duplicative of its breach of contract claim and is not supported by any well-pleaded allegations of bad faith or wrongful conduct by Gryphon. Similarly, Sphere's claim for breach of fiduciary duty is based on vague and conclusory allegations that do not contain any well-pleaded facts establishing a fiduciary relationship between Gryphon and Sphere, let alone a breach of any such fiduciary duty. Finally, to the extent any claim in the Amended Complaint is based on alleged fraudulent conduct by Gryphon, those claims should be dismissed for failure to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

## I.    Legal Standard and Governing Law

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible . . . ." *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678 ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

Moreover, any claim that sounds in fraud must satisfy Rule 9(b)'s heightened pleading requirements. *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 433 (S.D.N.Y. 2014). Rule 9(b) requires that a plaintiff must "state with particularity the circumstances constituting fraud," *Kuwait Inv. Off. v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 802 (S.D.N.Y. 2015), including "(1) specify[ing] the statements that the plaintiff contends were fraudulent, (2) identify[ing] the speaker, (3) stat[ing] where and when the statements were made, and (4) explain[ing] why the statements were fraudulent." *Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 338 (S.D.N.Y. 2012) (internal quotations and citation omitted).

Under the MSA, Sphere's purported claims against Gryphon are governed by New York law. *See* Am. Compl., at Ex. 1, "Governing Law" Section ("This Agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to conflicts of law principles.").

## II.     Sphere Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

The allegations in the Amended Complaint are insufficient to state a claim for breach of the implied covenant of good faith and fair dealing for several reasons. "Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291 (N.Y. 1995). The implied covenant

"embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Gizara v. New York Times Co.*, 80 A.D.3d 1026, 1027, 915 N.Y.S.2d 379, 381-82 (3d Dep't 2011) (internal quotations and citations omitted); *see also Port Parties, Ltd. V. Enk Int'l LLC*, 84 A.D.3d 685, 686, 923 N.Y.S.2d 537, 538 (1st Dep't 2011) (same). But the duty of good faith and fair dealing "is not without limits," *Dalton*, 87 N.Y.2d at 389, 663 N.E.2d at 291-92, and "[t]he implied covenant may not be used to create new contractual obligations that were not bargained for . . . ." *King Penguin Opportunity Fund III, LLC v. Spectrum Grp. Mgmt. LLC*, 187 A.D.3d 688, 690-91, 135 N.Y.S.3d 363, 366 (1st Dep't 2020).

As an initial matter, Sphere's purported claim for breach of the implied covenant of good faith and fair dealing is entirely duplicative of its breach of contract claim and should be dismissed on that basis. *See Cortazar v. Tomasino*, 150 A.D.3d 668, 670, 54 N.Y.S.3d 89, 92 (2d Dep't 2017) (claim for breach of the implied covenant "must be dismissed if it is merely duplicative of a breach of contract cause of action"); *see also MP Cool Invs. Ltd. v. Forkosh*, 142 A.D.3d 286, 293, 40 N.Y.S.3d 1, 7 (1st Dep't 2016) (claim for breach of the implied covenant properly dismissed where "facts alleged describe[d] little more than a breach of [the] agreements").

Specifically, in its breach of contract claim (Count I), Sphere alleges that Gryphon "has materially breached the MSA . . . by failing to provide management services for blockchain and cryptocurrency-related operations at the level required by the MSA . . . and refusing to honor Sphere's written instructions to sell digital assets." Am. Compl., ¶ 82. In its implied covenant claim (Count II), Sphere alleges the ***exact same thing***: that Gryphon "has materially breached its implied obligations" and "its good faith obligations under the MSA" by "refusing to honor [Sphere's] instructions to sell digital assets." *Id.* ¶¶ 88-89.

8

Said differently, Sphere does not seriously allege any conduct in ostensible support of its claim for breach of the implied covenant that is distinct from the alleged conduct that predicates Sphere's breach of contract claim.[1]  For this reason alone, Sphere's breach of the implied covenant claim fails.  *See, e.g.*, *Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 37 (N.D.N.Y. 2022) ("[C]ourts . . . dismiss claims for breach of the implied covenant of good faith and fair dealing where the plaintiff does not allege facts independent of or separate from those supporting the breach-of-contract claim."); *see also Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020) ("A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.").[2]

Moreover, both Counts I and II repeat and re-state the allegations set forth in prior paragraphs of the Amended Complaint, and Sphere's claim for breach of the implied covenant of even expressly incorporates Sphere's breach of contract allegations from Count I of the Amended Complaint.  *See* Am. Compl., ¶¶ 78, 84.  Simply put, because both claims are predicated on the same alleged conduct, Sphere's purported claim for breach of the implied covenant is duplicative

---

[1]    Sphere haphazardly includes, in a single sentence, the allegation that "Gryphon . . . communicated [that] it is trying to put Sphere in a position where it cannot meet its ordinary course obligations and where it cannot pay for the expenses and costs associated with this litigation." Am. Compl., ¶ 89.  This does not somehow differentiate Sphere's implied covenant claim from its breach of contract claim however.  Indeed, other than blindly asserting that Gryphon is engaging in "extortionate behavior," Sphere nowhere alleges any ***facts*** supporting its claim.  *Id.* at ¶ 18; *see also id.* at ¶¶ 68-73.  Nor could it for the reasons separately noted in Defendant and Counterclaim-Plaintiff Gryphon Digital Mining, Inc.'s Answer to those allegations, filed contemporaneously herewith.

[2]    Sphere's superficial attempt to cure this deficiency by purporting to plead its implied covenant claim "in the alternative" does not militate a different result.  *See Gravier Prods., Inv. v. Amazon Content Servs., LLC*, No. 19 Civ. 1169 (DLC), 2019 WL 3456633, at *5 (S.D.N.Y. July 31, 2019) (rejecting argument that breach of implied covenant claim should survive as "alternative" pleading where it was "entirely redundant" of breach of contract claims).

and should therefore be dismissed.  *See Brainbuilders LLC v. EmblemHealth, Inc.*, No. 21 Civ. 4627 (KPF), 2022 WL 3156179, at *8 (S.D.N.Y. Aug. 8, 2022) (dismissing claim for breach of the implied covenant as duplicative of breach of contract claim where it "re-alleged and incorporated by reference" very same allegations predicating breach of contract claim).

Even setting aside that Sphere's claims for breach of contract and breach of the implied covenant are duplicative, Sphere's supposed "examples" of Gryphon's alleged "failure to provide management services"—which are nowhere mentioned in Sphere's actual breach of the implied covenant claim, *see* Am. Compl., ¶¶ 84-90—lack the detail required to state a claim.  For example, Sphere conclusorily alleges that Gryphon "refused to find hosting space and instead directed Sphere to find such space on its own."  *Id.* ¶ 34.  But Sphere nowhere pleads any ***facts*** identifying any particular request for hosting that Gryphon refused, or how, or when.[3]

Sphere also alleges that Gryphon "shirked its duties to provide assistance and information needed to release" miners seized by U.S. Customs.  *Id.* ¶ 35.  But nowhere does Sphere allege that Gryphon actually had the information required to obtain the release of the miners, when or how such assistance was requested from Gryphon, or how Gryphon "shirked its duties" under the MSA by purportedly failing to provide such information to U.S. Customs.

Moreover, to state a claim for breach of the implied covenant under New York law, "'the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff.'"  *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 164 (S.D.N.Y. 2014) (quoting *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank*

---

[3]    Contrary to Sphere's allegation, Gryphon did, in fact, secure hosting for Sphere's miners.  Gryphon has also repeatedly reached out to Sphere to determine its additional hosting needs, if any, and assist Sphere in obtaining such additional hosting, only to be ignored and eventually learn that Sphere has contracted with third-party hosting providers, in violation of the MSA.  *See* Gryphon's Counterclaims, ¶¶ 30-57, filed contemporaneously herewith.

*of Commerce*, 265 A.D.2d 513, 514, 697 N.Y.S.2d 128, 130 (2d Dep't 1999)).  Sphere fails to explain how Gryphon's alleged failure to "provide assistance and information needed to release" the miners could "tend to show" that Gryphon sought to prevent the performance of the MSA or withhold the MSA's benefits from Sphere.  *See Ne. Wine Dev., LLC v. Serv.-Universal Distribs., Inc.*, 23 A.D.3d 890, 893, 804 N.Y.S.2d 836, 839 (3d Dep't 2005) (dismissing breach of the implied covenant claim where there was "no allegation that defendant's actions deprived plaintiff of the benefit of its bargain"); *see also Gaia House Mezz LLC v. State St. Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013) ("In order to find a breach of the implied covenant [under New York law], a party's action must directly violate an obligation that may be presumed to have been intended by the parties.") (internal quotations and citation omitted).

Sphere further alleges, in even more conclusory fashion, that Gryphon "has inexplicably delayed setting up mining pools," "failed to review third party invoices for accuracy," and "failed to manage any of Sphere's relationships with third-parties."  Am. Compl., ¶ 36.  Once again, the Amended Complaint contains absolutely no facts concerning any of these purported "examples" of Gryphon's purported "failure to provide management services."  Nor does the Amended Complaint contain facts demonstrating any bad faith conduct on Gryphon's part.  *See Doyle v. MasterCard Int'l Inc.*, 2016 WL 9649874, at *2 (S.D.N.Y. Dec. 15, 2016) (internal quotations and citation omitted) (dismissing implied covenant claim where complaint contained merely "naked assertions of bad faith, unaccompanied by any factual predicate distinct from the breach of contract claim").  Such allegations, therefore, are insufficient to state a claim upon which relief may be granted.  *See Detko v. Blimpies Rest.*, 924 F. Supp. 555, 557 (S.D.N.Y. 1996) ("[c]omplaints containing only conclusory, vague or general allegations . . . cannot survive a motion to dismiss").

Finally, Sphere's implied covenant claim must fail because the MSA provides an explicit standard of care, *i.e.*, that Gryphon shall "perform the Services in a professional and workmanlike manner in accordance with generally recognized crypto-mining industry standards for similar services . . . ." Am. Compl., Ex. 1 (the "Term/Termination" Clause). Sphere cannot now avoid or circumvent such standard by asserting a claim for breach of the implied covenant. *See King Penguin Opportunity Fund III, LLC v. Spectrum Grp. Mgmt. LLC*, 187 A.D.3d at 690-91, 135 N.Y.S.3d at 366 (noting "[t]he implied covenant may not be used to create new contractual obligations"). To the extent Sphere alleges Gryphon has not satisfied this standard, such allegations amount to (if anything) a claim for breach of the MSA—not a breach of any implied covenant.

Because the Amended Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing, and because any such claim is duplicative of Sphere's claim for breach of contract, Count II should be dismissed, with prejudice.

III.    **Sphere Fails to State a Claim for Breach of Fiduciary Duty (Count III)**

The Amended Complaint similarly fails to state a claim against Gryphon for breach of fiduciary duty. To state such a claim under New York law, a plaintiff must allege "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Litvinoff v. Wright*, 150 A.D.3d 714, 715, 54 N.Y.S.3d 22, 24 (2d Dep't 2017) (internal quotations and citations omitted); *see also Burry v. Madison Park Owner LLC*, 84 A.D.3d 699, 700, 924 N.Y.S.2d 77, 78 (1st Dep't 2011) (same); *Stortini v. Pollis*, 138 A.D.3d 977, 978-79, 31 N.Y.S.3d 90, 93 (2d Dep't 2016) (internal quotations and citations omitted) (same).

Sphere's breach of fiduciary duty claim fails because Sphere does not plausibly allege that Gryphon owes Sphere fiduciary duties, under the MSA or otherwise. "Generally, no fiduciary

12

duties arise where parties deal at arm's length in conventional business transactions." *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 104 (S.D.N.Y. 2013). The Amended Complaint does not contain any allegations that Sphere and Gryphon specifically agreed to enter into a fiduciary relationship, despite Sphere's unfounded belief that a ***lack*** of contractual language disclaiming fiduciary duties somehow suggests a fiduciary relationship. *See* Am. Compl.; *id.* ¶ 46. Nor is there anything in the MSA that indicates or suggests Gryphon and Sphere are engaged in anything other than an arm's-length commercial transaction among sophisticated parties. Indeed, Gryphon and Sphere entered into the MSA *in anticipation of a merger between the parties*.

Sphere's allegations—that fiduciary duties arose from "the unusual amount of trust placed in Gryphon by Sphere, control that Gryphon has over Sphere, and status as a custodian of Sphere's digital assets and miners," *see id.* ¶ 41, and from "Gryphon's role as a manager of substantially all of Sphere's business operations (a role akin to an officer or trustee), agent, custodian, investment adviser, and broker-dealer," *see id.* ¶¶ 42, 93—is insufficient. *See In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002) (noting courts routinely hold that parties dealing at an arm's length are not in a situation "of confidence or trust sufficient to find the existence of a fiduciary relationship" and thus no fiduciary duty "will arise absent extraordinary circumstances"); *see also Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) ("when parties deal at arm[']s length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances"); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 479 (S.D.N.Y. 2010) ("[a]bsent extraordinary circumstances . . . parties dealing at arm[']s length in a commercial transaction lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation") (internal citation and quotation mark omitted).

To the extent Sphere placed any "trust" or "confidence" in Gryphon, it did so based on negotiated terms arrived at between represented parties in a conventional, arm's length transaction (*i.e.*, the MSA, wherein Gryphon and Sphere are respectively identified by the generic commercial terms of "Provider" and "Customer").  Indeed, the parties explicitly agreed in the MSA to a considerably lower standard of care than the fiduciary standard—that Gryphon shall "perform the Services in a professional and workman like manner in accordance with generally recognized crypto-mining industry standards for similar services."   Am. Compl., Ex. 1 (the "Term/Termination" Clause).  The Amended Complaint does not allege any extraordinary circumstances that could give rise to a fiduciary relationship, and Sphere's attempt to re-write the express terms of the MSA—a negotiated, arms-length agreement—should be rejected.  *See, e.g., Ashwood Cap., Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7 (1st Dep't 2012) (noting that, where "commercial contracts [are] negotiated at arm's length by sophisticated, counseled businesspeople . . . courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties . . . .") (internal citations and quotations omitted).

Sphere's breach of fiduciary claim should also be dismissed because even assuming, *arguendo*, that the MSA or the parties' business relationship gave rise to fiduciary duties on the part of Gryphon (they did not), Sphere does not allege that Gryphon has breached any such duty. Sphere alleges, in conclusory fashion, that Gryphon breached its fiduciary duties "by prioritizing its own interests over those of Sphere's, including by prioritizing the operations of its own miners over Sphere's and employing more advantageous mining pool strategies for its own digital assets." Am. Compl., ¶¶ 47, 94.  Sphere does not plead any facts to explain how Gryphon purportedly "prioritized" its miners over Sphere's or employed "more advantageous mining pools strategies."

Indeed, by way of just one example, Sphere does not even identify or describe any particular mining pool used by Sphere or Gryphon (even in general terms).  *See generally id*.

In fact, Sphere's claim for breach of fiduciary duty appears to be predominantly predicated on the allegation that Gryphon, for an undisclosed period of time, has "reported a substantially higher [but once again undisclosed] mining efficiency ratio than Sphere," which Sphere claims "would not occur if Gryphon were acting to avoid self-dealing."  Am. Compl., ¶ 47.  From this allegation, Sphere would have the Court infer that the only possible explanation for a higher mining efficiency ratio is that Gryphon is intentionally—and in breach of purported fiduciary duties— "prioritizing the operations of its own miners" and "employing more advantageous mining pool strategies for its own digital assets," while ignoring the multitude of other reasons why the mining efficiency ratio for Gryphon might be higher than that of Sphere.  Because Sphere fails to plausibly allege a breach of any fiduciary duty owed by Gryphon, Count III should be dismissed.

## IV.    Sphere Fails to State a Claim Based On Allegations of Fraud Under Rule 9(b) of the Federal Rules of Civil Procedure

To the extent Sphere's ostensible claims are based on the allegation that Gryphon has been "skimming off the top" or "stealing" digital assets from Sphere, such claims are subject to dismissal for the additional reason that such allegations, which in effect amount to accusations of fraud, fail to satisfy the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.  Specifically, Sphere purports to allege—on "information and belief"—that Gryphon has "taken actions to conceal the breakdown of revenues and costs associated with Sphere's business as opposed to for Gryphon's own benefit," and has "refus[ed] to provide Sphere with documentation to verify that it is not using or otherwise seizing Sphere's assets for its own account," ostensibly in an effort to prevent Sphere from learning that Gryphon "has been skimming off the top" or "stealing" Sphere's assets.  Am. Compl., ¶¶ 4, 38.

Such allegations, which are completely false, sound in fraud.  As such, any claim based upon these allegations is subject to Rule 9(b) and must be stated with particularity.  *See Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 387 (S.D.N.Y. 2016) (holding that Rule 9(b) applied where plaintiffs' breach of fiduciary duty and implied covenant claims sounded in fraud); *see also In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, No. 02 MDL 1484(JFK), 2008 WL 2594819, at *8-9 (S.D.N.Y. June 26, 2008) (same); *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 555 (S.D.N.Y. 2007) ("Rule 9(b)'s heightened pleading standards apply to breach of fiduciary duty claims where the breach is premised on the defendant's fraudulent conduct").

"In order to comply with Rule 9(b), [a] plaintiff['s] breach of fiduciary duty and breach of the implied covenant of good faith and fair dealing claims must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Fernandez*, 222 F. Supp. 3d at 387-88 (quoting *Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006)).

Despite the serious nature of Sphere's claims of theft and concealment, the Amended Complaint lacks any allegations of fact, let alone the particularized allegations required under Rule 9(b), detailing any supposed scheme to "steal" digital assets from Sphere.  Sphere does not allege what it claims was stolen (sometimes referring to "money" and other time referring to "digital assets"), how much it claims was stolen, when it claims it was stolen, or how many instances of theft allegedly occurred, nor does Sphere even summarize how the purported "theft" was orchestrated beyond nakedly asserting that "Gryphon is commingling[] its assets with Sphere's."  *See* Am. Compl.; *see also id.* ¶ 38.  The Amended Complaint also does not contain any particularized allegations of fact regarding how Gryphon "conceal[ed] the breakdown of revenues

and costs associated with Sphere's business," the ostensible purpose for which Sphere speculates is to "make it harder . . . to detect Gryphon stealing Sphere's assets." *Id.* ¶ 38.

Similarly, Sphere does not allege what documentation it has requested or to which it is entitled, who made the request, to whom the request was made, or how Gryphon responded to the request. Nor does Sphere identify any specific statements by Gryphon with respect to any such request (or even any statement regarding Sphere's or Gryphon's revenues or costs in general), let alone how any statement by Gryphon was purportedly false or fraudulent. Sphere also does not allege who at Gryphon possibly engaged in such fraud. *See* Am. Compl.

Instead, Sphere's allegations are based on rampant speculation, ostensibly supported only by conclusory allegations pled on "information and belief." *See id.* ¶ 38. As such, any claim based on Sphere's hollow allegation that Gryphon is "stealing" assets must be dismissed for failure to satisfy Rule 9(b). *See Spira v. Curtin*, No. 97 CIV 2637 (TPG), 2001 WL 611386, at *3-4 (S.D.N.Y. June 5, 2001) (dismissing claims predicated on generalized allegations of fraud and misappropriation of assets under Rule 9(b)). In fact, Sphere's allegations are so deficient that they do not even satisfy the notice pleading standard under Rule 8. *See Rivoli v. Gannett Co., Inc.*, 327 F. Supp. 2d 233, 239 (W.D.N.Y. 2004) (on motion to dismiss for failure to state a claim, court is "not obligated to draw unreasonable inferences in plaintiff's favor").[4]

---

[4]    Citing *In re Grumman Olson Industries, Inc.*, 329 B.R. 411 (Bankr. S.D.N.Y. 2005), Sphere claims that its allegations "do not rise to the level of fraudulent because it brands Gryphon 'as [a] thie[f], not [a] liar[].'" *See* ECF No. 22 (Sphere's July 5, 2023 response to Gryphon's June 28, 2023 pre-motion letter), p. 6. Sphere's reliance on *Grumman* is entirely misplaced. In holding that Rule 9(b) did not apply, the Bankruptcy Court in that case found that the plaintiff did not allege that the defendants "did anything secretly, concealed any information, or failed to disclose a material fact." 329 B.R. at 420. Here, by contrast, Sphere expressly alleges both that Gryphon has been "stealing" its digital assets ***and*** that Gryphon has further "conceal[ed]" its alleged theft "by repeatedly refusing to provide Sphere with documentation," and "conceal[e]d the breakdown of revenues and costs associated with Sphere's business . . . ." Am. Compl., ¶¶ 4, 38. Simply put, the gravamen of these allegations is theft, and concealment of the alleged theft to cover one's tracks. These are allegations of fraud, and must be pleaded with the particularity required by Rule 9(b). Sphere has utterly failed to do so here.

17

## **CONCLUSION**

For the foregoing reasons, Gryphon respectfully requests that the Court (1) dismiss Counts II and III of Sphere's Amended Complaint, with prejudice, (2) dismiss any claim purportedly based on the allegation that Gryphon "has been skimming off the top" or "stealing" the assets or money of Sphere, with prejudice, (3) award Gryphon its reasonable attorneys' fees associated with this motion pursuant to the prevailing party provision of the MSA (Am. Compl., Ex. 1, p. 3); and (4) grant Gryphon such other and further relief as the Court deems just and proper.

Dated:  August 18, 2023          **K&L GATES LLP**

By:     */s/ Brian D. Koosed*

Brian D. Koosed
1601 K Street, NW
Washington, D.C.  20006
Telephone: (202) 778-9204
E-mail:  brian.koosed@klgates.com

Desirée F. Moore (*pro hac vice* forthcoming)
Matthew A. Alvis (*pro hac vice* forthcoming)
**K&L GATES LLP**
70 West Madison Street
Suite 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
E-mail:  desiree.moore@klgates.com
           matthew.alvis@klgates.com

*Counsel for Defendant and Counterclaim-Plaintiff Gryphon Digital Mining, Inc.*