**K&L GATES**

September 7, 2023

Hon. P. Kevin Castel
United States District Court Judge
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, NY 10007

Brian D. Koosed
Partner
brian.koosed@klgates.com

T +1 202 778 9204
F +1 202 778 9100

*[Handwritten annotations: Sphere may amend to add an Anti-Slapp claim within 14 days. On its answer to the amended complaint (due within 21 days of filing) Gryphon may amend its counterclaim. The foregoing is without prejudice to Gryphon's right to file a pre-motion letter with regard to the Anti-Slapp claim. SO ORDERED. /s/ PKC USDJ 9-7-23]*

Re:   **Sphere 3D Corp. v. Gryphon Digital Mining, Inc., 1:23-cv-02954-PKC**

Dear Judge Castel:

We represent Defendant and Counter-Plaintiff Gryphon Digital Mining, Inc. ("Gryphon") in the referenced action. We write in response to the pre-motion letter, dated August 31, 2023 (the "Letter"), filed by Plaintiff and Counter-Defendant Sphere 3D Corp. ("Sphere") and Third-Party Defendant Patricia Trompeter ("Trompeter," and together with Sphere, the "Counter-Defendants"). In their Letter, Counter-Defendants request a pre-motion conference on their anticipated motion to dismiss certain of Gryphon's counterclaims, and further seek leave to amend Sphere's Amended Complaint to add a claim under New York State's anti-SLAPP statute. See ECF No. 31. For the reasons set forth below, Counter-Defendants' requests should be denied.

## I.   The Economic Loss Rule Does Not Apply to Gryphon's Negligence Claim

Sphere's initial contention—that Gryphon's negligence claim is "squarely foreclosed by the economic loss rule" (Letter, p. 2)—is simply wrong. Courts in this District, including this Court, have repeatedly held that New York's "economic loss doctrine does not bar negligence claims in data breach cases" such as this. *See Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 590 (S.D.N.Y. 2022); *see also Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472, 2019 WL 2023713, at *9 (S.D.N.Y. May 7, 2019) (Castel, J.) (same, noting the "applicability of the economic loss rule outside the product-liability context from which it originated is doubtful"); *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 471 n.6 (S.D.N.Y. 2022) (same); *Cohen v. Ne. Radiology, P.C.*, No. 20 CV 1202 (VB), 2021 WL 293123, at *7 (S.D.N.Y. Jan. 28, 2021) (the "defendant is wrong that the economic loss doctrine bars plaintiff's negligence claim" relating to a data breach); *Sackin v. TransPerfect Glob.*, 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017) (same).

Moreover, courts in this District have further held that the economic loss doctrine does not apply where a plaintiff alleges "a legal duty independent of [a] contract itself has been violated." *Sackin*, 278 F. Supp. 3d at 749; *see also Wallace v. Health Quest Systems, Inc.*, No. 20 CV 545 (VB), 2021 WL 1109727, at *9 (S.D.N.Y. Mar. 22, 2021) (finding plaintiffs "plausibly allege[d]

a legal duty . . . independent of a duty imposed by contract" when they alleged defendant "owed a duty of care to safeguard their [p]rivate [i]nformation").

Not surprisingly then, none of Sphere's cited cases even involve negligence claims arising out of a data breach such as Gryphon's negligence claim here. *See, e.g., Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 164 (S.D.N.Y. 2012) (alleging improper restraint of bank accounts); *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 165 (S.D.N.Y. 2014) (alleging violations of the Commodity Exchange Act); *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 394 (S.D.N.Y. 2018) (alleging failure to recommend a particular type of reinsurance). And, further, most of Sphere's cited cases either don't address the economic loss rule substantively, or find that it did not bar the claims at issue. *See Cruz*, 855 F. Supp. 2d at 179 ("The Court need not address whether the economic loss doctrine bars plaintiffs' claims . . . ."); *In re MF Global*, 998 F. Supp. 2d at 185 ("The Court thus rejects application of the economic loss doctrine to bar the negligence claims raised . . . .").

Here, Gryphon's negligence counterclaim against Sphere pleads, in detail, how a hostile threat actor accessed Sphere's IT systems and spoofed Sphere's CFO's email in order to trick Gryphon into redirecting Bitcoin proceeds to the threat actor instead of Sphere, all while Sphere's CEO, Ms. Trompeter, received each and every email from the threat actor in real time, doing nothing to stop the theft. *See* ECF No. 30 ("Counterclaims"), ¶¶ 67-92. Simply put, the Data Security Incident is Sphere's fault, it is not reliant on any contractual agreements between the parties, and Sphere cannot use the economic loss rule to escape its own negligence.[1] Accordingly, there is no merit to Sphere's proposed motion to dismiss Count III.

## II. Gryphon's Implied Covenant Claim Does Not Impose New Obligations Beyond the MSA

Contrary to Sphere's unfounded arguments otherwise, Gryphon's claim for breach of the implied covenant of good faith and fair dealing is valid and neither imposes new obligations beyond those in the MSA, nor fails to describe Sphere's breach in non-conclusory terms.

*First*, Gryphon does not impose upon Sphere a new obligation by requesting Sphere provide certain information relating to, among other things, the hosting services Sphere has independently sought out and obtained. *See* Counterclaims, ¶ 60. As detailed in Gryphon's Counterclaims, under the MSA, Gryphon "shall pay directly from the Digital Wallet on behalf of [Sphere] all operating costs" including Sphere's hosting services. *See id.* at ¶ 61 & Ex. A (MSA's Commercial Terms Clause). Inherent in Gryphon's obligation to pay Sphere's hosting costs (and other operating costs) on Sphere's behalf is Gryphon's ability to communicate with those hosting services and other vendors for the purpose of doing so. Sphere, however, has repeatedly refused to provide Gryphon with access and contact information for those hosting services, or with the

---

[1] At best, if this Court found, contrary to the great weight of authority, that the economic loss rule somehow applies to Gryphon's negligence claim arising out of the Data Security Incident, this would only transform Sphere's failure to adequately secure its technological infrastructure from a breach of an extra-contractual duty into an independent breach of the parties' Master Services Agreement (the "MSA").

2

authorizations that certain of the hosting services require, all of which is necessary for Gryphon to fulfill its obligations under the MSA. *See* Counterclaims, ¶¶ 60-65, 120-124.

To be sure, the MSA does not ***explicitly*** address Sphere's failure to provide Gryphon with this information. But, by definition, refusing to provide that information frustrates Gryphon's ability to pay Sphere's bills, which Gryphon *is* expressly and explicitly required to do for Sphere under the MSA. This is thus a classic implied covenant claim. Indeed, unlike Sphere's relied-upon cases, where parties sought to impose obligations wholly unrelated to already-existing contractual obligations, Gryphon seeks to hold Sphere accountable for frustrating Gryphon's ability to carry out its existing contractual obligations under the MSA. *See* Counterclaims ¶¶ 64, 125. *Compare id* at ¶ 60 ("Sphere has refused to provide . . . certain information . . . necessary for Gryphon to fulfill its obligations under the MSA"), *with Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 300 (S.D.N.Y. 2009) (dismissing Plaintiff's implied covenant claim only after finding that Plaintiff's original interpretation of the contract was "simply ridiculous"), *and Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Xerox Corp.*, 25 A.D.3d 309, 310, 807 N.Y.S.2d 344, 345-46 (1st Dep't 2006) (finding that the court properly dismissed plaintiff's implied covenant claim as "merely a substitute for plaintiff's nonviable contract claims" relating to a condition precedent found not to be part of the contract).

Simply put, Gryphon's implied covenant counterclaim nowhere seeks to impose any new obligations on Sphere. It merely addresses Sphere's failure to provide information inherently necessary for Gryphon to fulfill its already-specified, explicit obligations under the MSA. *See* Counterclaims ¶¶ 60-65, 120-24; *see also Nesconset ZJ 1 LLC v. Nesconset Acquisition, LLC*, No. 652719/2015, 2016 WL 5848840, at *8 (Sup. Ct. N.Y. Co. Oct. 4. 2016) (noting the implied covenant is "breached when a party acts in a manner that—although not expressly forbidden by any contractual provision—would deprive the other party of receiving the benefits under the agreement") (quoting *Sorenson v. Bridge Cap. Corp.*, 52 A.D.3d 256, 267 (1st Dep't 2008)).

*Second*, Gryphon's Counterclaims sufficiently describe the information that Sphere refused to provide Gryphon, specifically: "the number of cryptocurrency miners owned, purchased, leased or otherwise controlled by Sphere" (*see* Counterclaims, ¶ 120); the "information required for Gryphon to find hosting for Sphere's cryptocurrency miners" (*id.* at ¶ 121); "certain access and contact information relating to the various hosting facilities that Sphere has, on its own, arranged to host its cryptocurrency miners" (*id.* at ¶ 122); "authorization for Gryphon to manage the relationships [Sphere] has created with those hosting facilities" (*id.* at ¶ 123); and "sufficient information to allow Gryphon to pay operating costs incurred by Sphere" (*id.* at ¶ 124). In fact, Gryphon even attached certain correspondence in this vein to its Counterclaims. *See* Counterclaims, Ex. C. Sphere is therefore wrong—or willfully obtuse—in arguing that Gryphon "fail[ed] to describe what that information is, when it was sought, and why Gryphon required it to perform its contractual obligations." Letter, p. 7.[2]

---

[2] Lastly, despite Sphere's contentions, Gryphon has, in fact, sufficiently alleged harm caused by Sphere's failure to provide information. *See* Counterclaims, ¶ 128.

3

**III.      Gryphon Properly States A Claim For Defamation Because Sphere's Press Release Goes Beyond the Allegations in Sphere's Complaint**

Counter-Defendants' argument to dismiss Gryphon's defamation claim unconvincingly hinges primarily on one proposition: that Ms. Trompeter's statements in Sphere's press release merely provided a "fair report of [Sphere's] complaint" in this action. Letter, p. 3. This is wrong.

Initially, New York law holds that false statements "attacking the integrity or credit of a business constitute slander per se." *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442 (TPG) (FM), 2014 WL 4723299, at *6 (S.D.N.Y. Sept. 23, 2014) ("With regard to defamation, a statement is defamatory per se if it impugns the basic integrity of a business") (quotation marks omitted). Here, Counter-Defendants expressly concluded the press release at issue by stating that "Gryphon has **failed to act with integrity**." Letter, p. 3 (emphasis added). For this reason alone, Counter-Defendants' request as to Gryphon's defamation counterclaim should be denied.

Further, under New York law, out-of-court statements regarding pending litigation are only protected under the "fair reporting" litigation privilege if those out-of-court statements are "substantially accurate." *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 456 (E.D.N.Y. 2013). Indeed, courts have acknowledged that the privilege does not protect those who "embellish[]" or "mischaracterize[] the nature of a lawsuit, or speak[] in a manner that suggest more serious conduct than what is alleged." *GeigTech E. Bay LLC v. Lutron Elecs. Co., Inc.*, No. 18 Civ. 5290 (CM), 2019 WL 1768965, at *5 (S.D.N.Y. Apr. 4, 2019).

Here, Counter-Defendants' statements in the press release go beyond providing a "substantially accurate" depiction of Sphere's complaint against Gryphon. Rather, Counter-Defendants' impugning Gryphon's "integrity"—in an attempt to tie Gryphon to recent bad actors in the cryptocurrency industry writ large—and accusing Gryphon of "bullying" go well beyond the allegations in Sphere's complaint. *Compare* Letter, p. 3 (stating Sphere "will not be bullied or threatened by the likes of Gryphon"), *with* Compl., ECF No. 1. This is sufficient to plead defamation. *See, e.g., Calvin Klein Trademark Tr. v. Wachner*, 129 F. Supp. 2d 248, 253 (S.D.N.Y. 2001) (denying plaintiff's motion for summary judgment and finding that a reasonable juror could view Plaintiff's comments as "suggest[ing] a form of fraud . . . going well beyond anything reasonably suggested by the . . . Complaint, which relate to contractual breaches"). Thus, the "fair reporting" privilege does not protect Counter-Defendants here.[3]

---

[3] Further, and in any event, most of Sphere's relied-upon cases themselves found that the question of whether a publication was a "fair and true report" for purposes of the privilege could not be determined on a motion to dismiss. *See Gottwald v. Sebert*, Nos. 32 & 33, 2023 WL 3959051, at *4 (N.Y. June 13, 2023) (finding the question of whether statements in a press release were covered by statutory privilege was "appropriately left for the jury"); *see also Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005) (finding that whether the publication was a "fair and true report" of an "official proceeding" could not be determined on defendant's motion to dismiss); *Wachner*, 129 F. Supp. 2d at 253 (denying plaintiff's motion for summary judgment and finding that such immunity is "at best, a jury question").

4

Lastly, there is no basis for Sphere to invoke New York's anti-SLAPP statute here, let alone further amend its complaint to do so. Courts in this District have consistently found that that statute's provisions concerning costs and attorneys' fees do not apply in federal court. *See, e.g., Prince v. The Intercept*, 634 F. Supp. 3d 114, 142 (S.D.N.Y. 2022) (finding that, despite dismissal of plaintiff's defamation claim, defendants were not entitled to costs and attorneys' fees because § 70-a of New York's anti-SLAPP law "conflicts with the . . . Federal Rules of Civil Procedure" and thus "does not apply in federal court") (quoting *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 431 (S.D.N.Y. 2021)); *see also Carroll v. Trump*, 590 F. Supp. 3d 575, 585 (S.D.N.Y. 2022). As such, even if Sphere were entitled to dismissal of Gryphon's defamation claim—which Sphere is not—New York's anti-SLAPP statute would not enable it to recover costs or attorneys' fees.

### IV. Ms. Trompeter Is Subject to Personal Jurisdiction in New York

Finally, Counter-Defendants argue that Gryphon's defamation counterclaim should be dismissed because Ms. Trompeter is not subject to personal jurisdiction in New York. Letter, pp. 6-7. This is wrong because it ignores the forum selection clause that Sphere agreed to and actively relied on in its own filings. *See* Am. Compl. ¶ 24.

As the Second Circuit has held, "the fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recover Grp., LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). Accordingly, courts in this District have repeatedly held that a forum-selection clause may be enforced against a non-signatory where: (1) the non-signatory had an active role in the transaction between the signatories, or (2) the non-signatory had an active role in the company that was the signatory. *Melwani v. Amazon.com, Inc.*, No. 20-CV-09739 (AJN), 2021 WL 4429604, at *4 (S.D.N.Y. Sep. 27, 2021) (finding that a non-signatory plaintiff would be bound by a forum-selection clause because, among other things, the "[p]laintiff [was] the Chief Executive Officer of [a signatory entity]" and "played an active role in the transactions at issue" between the signatories).

Here, both are true. To be sure, Counter-Defendants nowhere acknowledge the MSA's forum selection clause in arguing that Ms. Trompeter is not subject to jurisdiction in New York. But they can hardly argue that Ms. Trompeter's conduct is not closely related to the parties' disputes, such that she could not foresee being bound by the MSA's forum selection clause. Indeed, Ms. Trompeter is repeatedly mentioned in the parties' pleadings.

For example, she is one of the main reasons Sphere failed to detect the hostile threat actor in its systems in the Data Security Incident. *See* Counterclaims, ¶ 135-36. Further, when Sphere admitted on March 21, 2023, to having created a digital wallet for Sphere without Gryphon's consent or approval, it did so through Ms. Trompeter. For Sphere to rely on this Court's

jurisdiction for its Complaint, while simultaneously arguing that its heavily involved CEO is not subject to this Court's jurisdiction, would run entirely counter to the applicable precedent.[4]

\*     \*     \*     \*     \*

As discussed at length above, Counter-Defendants' proposed motion would fail on multiple grounds. Counter-Defendants' request for a pre-motion conference should therefore be denied. To the extent the Court finds otherwise, the Court should either: (a) grant Gryphon leave to replead specific claims or issues promptly; or (b) defer consideration of any proposed motion until after the close of discovery, given that discovery will proceed on Gryphon's breach of contract counterclaim regardless.

Respectfully submitted,

/s/ *Brian D. Koosed*

Brian D. Koosed

cc:   All Parties (*via Pacer*)

---

[4] For the sake of completeness, in the event the Court finds that Ms. Trompeter is not subject to the forum selection clause, Gryphon notes that, as articulated in its Counterclaims, Ms. Trompeter is nevertheless subject to this Court's jurisdiction because (i) she has purposefully availed herself of the privileges of conducting activities within the State of New York by directing Sphere's own activities in this State including, among others, filing this lawsuit against Gryphon; (ii) the third-party claims against Ms. Trompeter arise out of or relate to her contacts with New York, namely her direction that Sphere initiate litigation in New York against Gryphon and then comment on such litigation; (iii) the third-party claims arise out of the same transactions and occurrences underlying Gryphon's counterclaims against Sphere, and litigating Gryphon's third-party claim against Ms. Trompeter in a separate jurisdiction such as Connecticut would risk inconsistent judgments and not serve judicial economy and efficiency; and (iv) exercising personal jurisdiction in New York comports with due process. At minimum, the combination of the facts pleaded in Gryphon's Counterclaims—plus the MSA's forum selection clause and the Second Circuit precedent cited above applying such clauses to non-signatory corporate officers—establish a *prima facie* case of personal jurisdiction over Ms. Trompeter, entitling Gryphon to jurisdictional discovery on the issue.