# Exhibit 4

# DONTZIN NAGY & FLEISSIG LLP

980 Madison Avenue | New York, New York 10075 | (212) 717 - 2900

Gregory N. Wolfe
greg@dnfllp.com

**BY EMAIL**

March 22, 2023

Steven L. Caponi, Esq.
K&L Gates
steven.caponi@klgates.com

Re:   *Sphere's Concerns About Gryphon's Performance Under The MSA*

Dear Steven:

We represent Sphere 3D Corp. ("Sphere") and write in response to your letter dated March 21, 2023 (the "Letter").

As you know, Sphere has for some time now had significant concerns about Gryphon Digital Mining, Inc.'s ("Gryphon") performance under, and material breaches of, the Master Services Agreement dated August 19, 2021, as subsequently amended (the "MSA"). As summarized below, those concerns include that Gryphon is (i) "skimming off the top" (*i.e.*, stealing) Sphere's digital assets ("Digital Assets"); (ii) persistently violating prevailing standards and laws applicable to custodians of digital assets; and (iii) providing abhorrent "management services" under the MSA. Our concerns were recently realized when Gryphon made an unauthorized transfer to a third-party of over $500,000 worth of Sphere's Digital Assets, an egregious breach of the MSA by any measure. Gryphon attributes the unauthorized transfer to "spoofing," but even rudimentary internal control processes—which Gryphon has apparently not implemented, as required—would have caught the purported spoof.

As you also know, Gryphon had been scheduled to explain to Sphere on March 10, 2023, how it could have possibly effected such a transfer. Instead of explaining itself, Gryphon insisted that Sphere disclose the results of its own investigation into the unauthorized transfer, which Sphere committed to do at a time convenient for its counsel and other representatives.

Rather than allowing a discussion of the foregoing issues to occur, and in an attempt to justify Gryphon's failure to adhere to the MSA, Gryphon sent the Letter, which is nothing more than an attempt to manufacture breaches based on Sphere's contacts with certain third parties, namely, USBTC, Foundry, Lancium, and Luxor (the "Third Parties").[1] The Letter (at 2) further demands that, in fewer than 24 hours, Sphere respond to the Letter and "*provide any and all documentation* related to its efforts to create business relationships with the Third Party Service Providers (and any other similar digital asset-related service provider), including evidence of disclosure of the MSA to those Third Party Service Providers, if any."[2] The Letter (at 2) elaborates that "Gryphon expects that the information will be provided in a fulsome and transparent manner

---

[1] The Letter (at 2) alleges that your firm had already raised the issues discussed in this Letter to this Firm, which is patently false. During a March 17, 2023 call, your firm asked this Firm what it knew about Sphere's relationship with USBTC and stated, without offering any substantive detail, that Gryphon may have an issue with the relationship. This Firm stated it would raise that issue with Sphere, which it did.

[2] All emphases are added unless otherwise noted.

so as to reassure Gryphon that Sphere has taken no action that would constitute a breach of the MSA."

The request for a response of this nature in fewer than 24 hours is patently unreasonable and has no basis in the MSA. Gryphon has long been aware and indeed blessed much of the purported conduct that it now claims is a breach. Sphere will consider your Letter and provide a full response in due course. Sphere also welcomes a discussion of the issues at a time that is mutually agreeable for both sides.

Given your demand for a response to your Letter in fewer than 24 hours, however, Sphere in the remainder of this letter briefly sets forth some, but by no means all, of the facts (i) underlying Sphere's significant concerns about Gryphon's failure to perform under the MSA; and (ii) explaining why Sphere is in full compliance with the MSA. Sphere will supplement this letter with a full response, either in a subsequent letter or through discussions with you.

I. THE MSA

The parties entered into the MSA in contemplation of a merger that ultimately never closed. In exchange for Sphere paying Gryphon tremendous fees equal to "twenty-two- and one-half percent (22.5%) of the Net Operating Profit of all of [Sphere's] blockchain and cryptocurrency-related operations," Gryphon undertook an obligation to be "[Sphere's] exclusive provider of any and all management services for all blockchain and cryptocurrency-related operations." MSA at 1. The MSA, however, never contemplated that Sphere would be completely prohibited from contacting and entering into contracts with other players in the blockchain and cryptocurrency industry. To the contrary, the MSA specifically envisions that Sphere may do so. For example, it provides that Gryphon would "assist" Sphere in "sourc[ing] and negotiat[ing] the appropriate host to locate the mining equipment." MSA at 1. And, when the parties amended the MSA, they specifically provided that Sphere could engage in certain transfers of mining equipment to third parties and "grant . . . security interest[s]" to any third-party "in connection with any equipment financing." *See* MSA Amendment § 2.b.

The MSA made Gryphon a custodian of certain of Sphere's Digital Assets. *See* MSA at 1. It further requires that Gryphon perform "in a professional and workmanlike manner in accordance with generally recognized crypto-mining industry standards for similar services" and not engage in "gross negligence, fraud or willful misconduct in connection with performing the Services." *See* MSA Amendment § 2.a. In the event of a breach by Sphere, Gryphon may only seek "specific performance" after providing "written notice and an opportunity for a period of up to one hundred eighty (180) days." *See* MSA Amendment § 2.a.

II. SPHERE'S SIGNIFICANT CONCERNS THAT GRYPHON HAS VIOLATED THE MSA

Sphere has significant concerns that Gryphon has been violating the MSA for some time now. By way of illustration only, Sphere has concerns that Gryphon has been skimming off the top, effectively stealing money from Sphere. Gryphon has repeatedly refused to provide documentation that would verify that it is not using Sphere's assets for its own account and indeed taken actions to conceal the breakdown of revenues and costs associated with Sphere's business as opposed to for Gryphon's own benefit.

As another example, Sphere has significant concerns that Gryphon does not have the internal controls and policies and procedures in place needed to comply with prevailing industry standards and applicable law. This became apparent when Gryphon made an unauthorized transfer of over $500,000 worth of Sphere's Digital Assets in response to a purported spoofing attack in which a third-party impersonated a Sphere representative and requested the transfer via email. Even a cursory review of the spoofing email itself—which did not originate from a Sphere email address, did not direct a transfer to a wallet associated with Sphere, and provided an implausible reason for the requested transfer—would have raised red flags and prevented the unauthorized transfer. So too would any independent verification of the requestor's identity. Gryphon failed to perform even rudimentary checks associated with a proper internal controls system. Exacerbating Sphere's concerns that no such system exists, Gryphon refused multiple, legitimate requests to review Gryphon's relevant policies and procedures, leading to the conclusion that Gryphon simply has none to provide.

And, since entering into the MSA, Gryphon has simply failed to deliver "management services" under the MSA. When Sphere needed hosting space in 2022 (a perquisite to turning on its miners and generating money), Gryphon refused to find hosting space and instead directed Sphere to find such space on its own. When Sphere's miners were held in customs (and thus not generating revenue), Gryphon shirked its duties to provide the assistance and information needed to release the miners from customs. Throughout the contractual relationship, Gryphon has inexplicably delayed setting up mining pools, resulting in lost revenue, and ignored instructions to sell bitcoin, costing Sphere dearly. And Gryphon has failed to review third-party invoices for accuracy, resulting in Sphere paying erroneous charges. These examples are part and parcel of a general failure to provide management services consistent with Gryphon's obligations under the MSA.

### III. GRYPHON'S CONCERNS THAT SPHERE IS BREACHING THE MSA ARE UNFOUNDED

By contrast, Gryphon's concerns are unfounded. Your Letter (at 1) states that Sphere is "attempting to create independent business relationships with the [Third Parties] to provide services related to Sphere's cryptocurrency-related operations," which is "a breach of the Exclusivity Provision of the MSA." According to your Letter, the attempted relationships concern Sphere "creat[ing] a relationship with Luxor and Foundry related to their mining pools" and "creat[ing] its own Digital Wallet" to receive "cryptocurrency mining proceeds from Luxor." The Letter also accuses Sphere of attempting to enter into purportedly illicit relationships with USBTC and Foundry, though never explains how doing so violates the MSA.

We will address the allegations in your Letter in detail after we have had sufficient time to consider them. In brief, however, the MSA provides that Gryphon is the "exclusive provider of any and all *management services* for all blockchain and cryptocurrency-related services." *See* MSA at 1. Sphere has not sought "management services" from any third-party; your Letter does not suggest otherwise.

Evidencing that Gryphon's allegations are drummed up to distract from its own breaches, Gryphon has in fact encouraged and sanctioned Sphere's communications with third parties in the industry. As noted, Gryphon last year suggested that Sphere find its own hosting for miners (which, of course, was a dereliction of Gryphon's own duties to find such hosting space). As

another example, Gryphon explicitly encouraged Sphere to enter into a relationship with Luxor last year.

Finally, we note that, even if there were a breach of the nature described in your Letter (and we do not believe there is one), it would be immaterial and easily curable. Your Letter does not identify any damages caused by Sphere's purported conduct—because there are none. There is no allegation, for example, that Gryphon has not received payments due under the MSA. Although we do not believe there is a breach to cure, we reiterate that we are exploring the issues raised in the Letter and will revert after we have had appropriate time to consider them.

*** 

Given the timeframe for response, this letter was necessarily truncated. Sphere will follow-up with a more extensive letter and is also available to discuss these issues with you.

Sphere reserves all rights.

Sincerely,

*Gregory N. Wolfe*

Gregory N. Wolfe
*Counsel for Sphere 3D Corp.*