# Exhibit A

# DONTZIN NAGY & FLEISSIG LLP

980 Madison Avenue | New York, New York 10075 | (212) 717 - 2900

Gregory N. Wolfe
greg@dnfllp.com

**VIA ECF**

August 31, 2023

Hon. Kevin P. Castel
United States District Court Judge
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, NY 10007

Re:   *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, **1:23-cv-02954-PKC**

Dear Judge Castel:

We represent Plaintiff Sphere 3D Corp. ("Sphere") and Third-Party Defendant Patricia Trompeter (together, "Counter-Defendants"). We write pursuant to this Court's Individual Practices to request a pre-motion conference on Counter-Defendants' anticipated motions to dismiss certain of Gryphon Digital Mining, Inc.'s ("Gryphon") counterclaims. Sphere also requests leave to amend its Amended Complaint to add a claim under the anti-SLAPP statute. No conference is currently set before the Court.

This is a case about Gryphon's repeated and ongoing violations of its contractual and fiduciary duties to Sphere. As alleged in the Amended Complaint (Dkt. No. 20), Gryphon serves as the exclusive manager of Sphere's cryptocurrency business pursuant to the master services agreement dated August 19, 2021 (the "MSA"), and as the steward of its cryptocurrency and mining assets. *See* Am. Compl. ¶ 1. Rather than discharge its duties faithfully, Gryphon flouted them, including by engaging in secretive self-dealing, refusing to follow Sphere's instructions to remit funds to Sphere, and *stealing* the very assets it swore to protect. *See, e.g.*, *id.* ¶¶ 3–4. Despite Sphere's considerable efforts to resolve the parties' dispute, Gryphon has refused to take responsibility for its actions or even to engage in good faith. Instead, Gryphon suppressed the evidence of its own misconduct and, in an attempt to bully Sphere into giving up its rights, threatened meritless litigation against it. *See id.* ¶ 63.

Gryphon has now made good on that threat. *See* Dkt. No. 30 ("Answer"). First, in an act of pure retaliation, Gryphon has asserted a defamation claim (Count IV) not only against Sphere, but also Ms. Trompeter, apparently in her personal capacity. *Id.* at 49. The claim is frivolous. With respect to Sphere, the claim is based on a short press release (the "Press Release") by Sphere that described the Complaint after it had been filed. With respect to the claim against Ms. Trompeter in her personal capacity, the claim is apparently based on her hyperlink in a tweet to an online article describing the Complaint and Press Release.[1] *Id.* at 42 ¶ 95. The statements are absolutely privileged and subject to anti-SLAPP protections, pursuant to which Counter-Defendants are entitled to recover

---

[1] To the extent Gryphon alleges that Ms. Trompeter defamed it in her capacity as CEO of Sphere, the claim fails for the same reasons that the claim fails against Sphere.

their attorneys' fees and costs.[2]  The claims against Ms. Trompeter in her personal capacity must also be dismissed for want of personal jurisdiction.[3]

Second, Gryphon—the custodian and steward of Sphere's cryptocurrency assets—asserts that Sphere was negligent (Count III) because it failed to prevent Gryphon from being duped by the independent acts of a scammer into parting with over $500,000 worth of Sphere's assets.  As set forth below, this claim is barred by the economic loss rule.[4]

Third, Gryphon asserts that Sphere breached the implied covenant of good faith and fair dealing (Count II) by failing to provide certain unspecified "information."  But Gryphon's alleged entitlement to this information—information it cannot even describe in non-conclusory terms—has no basis in the MSA.  Nor does Gryphon plausibly allege that the failure to provide the information injured it over and above Sphere's alleged breach of the MSA's express provisions.  The implied covenant claim should be dismissed too.

## I.  THE ECONOMIC LOSS RULE BARS GRYPHON'S NEGLIGENCE CLAIM (COUNT III)

Gryphon's negligence claim is a brazen attempt to blame Sphere for its own misconduct.  As alleged in Sphere's Amended Complaint, Gryphon authorized the transfer of twenty-six (26) bitcoins belonging to Sphere at the behest of a fraudster impersonating one of Sphere's employees.  *See* Am. Compl. ¶¶ 48–54.  Gryphon admits that it was duped.  *See* Answer at 38 ¶ 78 (admitting that, at the direction of the fraudster, Gryphon transferred bitcoin to a wallet not associated with Sphere).  It does not, however, take responsibility for its ineptitude.  Instead, it now claims *Sphere* was negligent because it failed to prevent Gryphon—the party who, by its own admission, was responsible for receiving and implementing Sphere's requests to transfer cryptocurrencies—from falling prey to the scammer's spoof email.

Gryphon's negligence claim is squarely foreclosed by the economic loss rule.  In New York, the law generally "prevents a plaintiff from recovering purely economic losses in a negligence action" absent a "a special relationship" between the parties.  *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 178 (S.D.N.Y. 2012) (Castel, J.) (cleaned up), *aff'd and remanded*, 742 F.3d 520 (2d Cir. 2013).  Gryphon has not attempted to plead a special relationship between the parties at all, let alone one that could give rise to a duty beyond those embodied in the MSA—nor could it, as it was Gryphon that was the steward of Sphere's asserts, not the other way around.  The claim must accordingly be dismissed.  *See In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 185 (S.D.N.Y. 2014) ("Plaintiffs who enter into transactions that are of a contractual nature—even if no contract exists—are limited to the benefits of their bargains unless they can show a legal duty separate and apart from obligations bargained for and subsumed within the transaction." (internal quotation marks omitted)); *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 397 (S.D.N.Y. 2018) ("If the parties have a remedy in contract, they may not also bring claims sounding in tort that claim only economic damages independent of physical injury or damage to property.").

---

[2] In the event, after reviewing this Letter, Gryphon withdraws its claim for defamation with prejudice, and allows Counter-Defendants to avoid the costs of moving to dismiss, then Counter-Defendants will not seek their attorney's fees under the anti-SLAPP statute.

[3] Ms. Trompeter intends to file her motion to dismiss for failure to state a claim in the alternative to her personal jurisdiction motion.

[4] Gryphon also asserts a breach of contract claim (Count I), which Sphere will prove is baseless on the merits.

## II.    THE DEFAMATION CLAIM (COUNT IV) MUST BE DISMISSED BECAUSE IT TARGETS ABSOLUTELY PRIVILEGED CONDUCT

### A.    The Press Release Is Protected As A Fair Report Of The Complaint

When Sphere filed its original complaint, Dkt. No. 1 (the "Complaint"), it announced the filing in a press release entitled "Sphere 3D Files Litigation Against Gryphon Digital Mining." The Press Release is reproduced below:

> ### Sphere 3D Files Litigation Against Gryphon Digital Mining
>
> April 7, 2023
>
> Toronto, Ontario--(Newsfile Corp. – April 7, 2023) - Sphere 3D Corp. (NASDAQ: ANY) ("Sphere 3D" or the "Company"), dedicated to becoming the leading carbon-neutral Bitcoin mining company operating at an industrial scale, announces it filed litigation today against Gryphon Digital Mining, Inc. ("Gryphon").
>
> "Today we filed litigation against Gryphon, the custodial management services provider of our blockchain and cryptocurrency-related services, for materially breaching the Master Services Agreement ("MSA") we entered into with Gryphon. We believe that Gryphon has put the Company's assets at significant risk and willfully violated their contractual duties." said Patricia Trompeter, CEO Sphere 3D.
>
> Sphere 3D entered into the MSA with Gryphon on August 19, 2021, which was subsequently amended on December 29, 2021. The MSA calls for Gryphon to manage Sphere 3D's crypto mining activities as well as maintain fiduciary duties of Sphere's digital assets. Gryphon receives 22.5% percent of Sphere 3D's gross profit in exchange for the aforementioned services.
>
> Ms. Trompeter continued "My job, first and foremost, is to safeguard the assets of the Company and maximize shareholder value. Today's filing demonstrates that we will not only protect the Company that we all have worked so hard to navigate through the past year, but also that we will not be bullied or threatened by the likes of Gryphon. Corporate integrity is essential, including in our industry. Gryphon has failed to act with integrity, has failed to honor our contract, and we will hold them accountable."

As its headline portends, the Press Release summarizes the Complaint's core allegations about Gryphon's conduct; it does not add any factual content not found in the Complaint. Despite arguing that the Complaint alleged such egregious conduct that it sounded in *fraud* (*see* Dkt. Nos. 14, 25), Gryphon now implausibly asserts that *nearly every word* of the Press Release is defamatory merely because it suggests Gryphon failed to act with integrity when it breached its obligations to Sphere. *See* Answer at 50 ¶ 153. Gryphon's defamation claim is a transparent attempt to retaliate against Sphere—*and Ms. Trompeter in her personal capacity*—for speech protected by the U.S. Constitution and New York law. This Court should dismiss the claims with prejudice and, pursuant to New York's anti-SLAPP statute, award Sphere the costs and attorneys' fees incurred in defending against Gryphon's groundless claim.

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012). To state a defamation claim, Gryphon must plead "(1) a written defamatory statement of and concerning [Gryphon], (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). Because Gryphon's defamation claim arises from Sphere's reporting of a publicly filed complaint, Gryphon must plead actual malice to state a claim for damages. *See Golan v. Daily News, L.P.*, 214 A.D.3d 558, 559 (1st Dept 2023) (holding that an action challenging allegedly defamatory reporting of judicial proceedings was subject to New York's anti-SLAPP statute); *NOVAGOLD Res., Inc. v. J Cap. Rsch. USA LLC*, 2022 WL 900604, at \*9 (E.D.N.Y. Mar. 28, 2022) (holding that New York's anti-SLAPP law requires proof of actual malice even if the plaintiff is not a public figure).

"A civil action cannot be maintained against any person . . . for the publication of a fair and true report of any judicial proceeding." N.Y. Civ. Rights Law § 74. To be "fair and true," a report of a judicial proceeding need only be "substantially accurate." *Gottwald v. Sebert*, 2023 WL 3959051, at *4 (N.Y. June 13, 2023) (quotation marks omitted). "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *See Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005).

Where, as here, a party is alleged to have defamed another in announcing the filing of a complaint, the test of substantial accuracy is whether the challenged statements, "considered in their context, suggest more serious conduct than that actually suggested" in the complaint. *See Calvin Klein Trademark Tr. v. Wachner*, 129 F. Supp. 2d 248, 253 (S.D.N.Y. 2001) (internal quotation mark and alteration omitted). "The report is not required to use the same words as the pleadings to convey the substance of the judicial proceeding and '[t]he challenged language . . . should not be dissected and analyzed with a lexicographer's precision.'" *Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019) (quoting *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 217 (E.D.N.Y. 2012)). "It is sufficient that the plaintiff's complaint or documents referred to therein form the basis for each of the contested statements or that the statements essentially summarize or restate the allegations of the complaint." *Id.* (cleaned up).

Despite challenging nearly all the statements made in the Press Release, Gryphon has failed to identify a single statement which "would have a different effect on the mind" than the Complaint itself. *Karedes*, 423 F.3d at 119. Each of the challenged statements, or its substantial equivalent, appears in the Complaint.

For example, Gryphon takes issue with the Press Release's statements that Gryphon "materially breach[ed] the [MSA]" and "did so willfully." Answer at 42 ¶¶ 93, 96. Those allegations are at the heart of the Complaint, which alleges that Gryphon "materially breached the MSA," "shirked its duties" to Sphere, "outright ignored instructions to sell Sphere's bitcoin on a timely basis," delivered "abhorrent management services," "has been content to sit back and collect millions of dollars in Management Fees while delivering no services whatsoever," and acted in bad faith. *E.g.*, Compl. ¶¶ 3, 14, 29, 33, 56.

Gryphon complains the Press Release states that it "bullied" and "threatened" Sphere, Answer at 43 ¶ 96, which is exactly what the Complaint alleges: rather than own up to its conduct, Gryphon "attempt[ed] to manufacture breaches of the MSA in an effort to cow Sphere into not seeking to enforce its rights in court," Compl. ¶ 47. And the Press Release's claim that Gryphon put Sphere's assets at risk, Answer at 43 ¶ 96, is, like all the other challenged statements, also found in the Complaint and follows from the allegation—admitted to be true—that Gryphon fell for a spoofing attack that saw it part with over $500,000 in Sphere's assets. *See, e.g.*, Compl. ¶ 5 ("Gryphon's gross incompetence has reached a new level that raises substantial concerns about Gryphon's ability to safeguard Sphere's digital assets, the effectiveness of its internal controls, and compliance with the law. . . . Gryphon and Mr. Chang, however, recently fell for multiple spoofing attacks targeting Sphere's digital assets that would have been avoided had they had internal controls systems and policies and procedures in place and adhered to applicable law."), ¶ 51 ("[T]he absence of anything resembling internal controls at Gryphon makes clear that Sphere's digital assets are unsafe in Gryphon's hands.").

Gryphon's most incredible claim is that the Press Release somehow defamed it by questioning its integrity and, according to Gryphon, insinuating that it as a "bad actor" in the crypto-industry (the phrase "bad actor" never appears in the Press Release but Gryphon draws that conclusion because Sphere states it will not be "bullied by the *likes* of Gryphon"). *See* Answer at 43 ¶ 99. Both characterizations are fair game. In addition to the foregoing, the Complaint alleges that Gryphon engaged in "self-dealing" by "prioritiz[ing] its own interests" over Sphere's in breach of its fiduciary duties. *See, e.g.*, Compl. ¶ 34 (alleging that Gryphon engaged in "self-dealing," "including by prioritizing the operation of its own miners . . . and employing more advantageous mining pool strategies for its own digital assets"). The Complaint alleges, no less than five times, that Gryphon was "*stealing*" Sphere's assets. *See, e.g.*, *id.* ¶ 2. The Complaint goes on to allege that Gryphon "conceal[ed]" its theft from Sphere. *See id.* ¶ 4. It further alleges that Gryphon worked to suppress the truth of its misconduct, including by refusing to report the criminal theft of Sphere's bitcoins to the FBI because it "was concerned that involvement by a law enforcement agency would lead to the uncovering of Gryphon's violation of the law." *See id.* ¶ 44; *see also id.* ¶ 12 (accusing Gryphon of making "misleading" disclosures to the market). Further, with respect to the notion that the Press Release is accusing Gryphon of being a bad actor in the industry, that too is expressly alleged in the Complaint, as Sphere alleges that Gryphon "provides abhorrent services, far below those generally recognized in the crypto-mining industry." *See id.* ¶ 27.

Gryphon's own positions in this litigation undermine its claims that these statements are defamatory. In its letter seeking leave to file a partial motion to dismiss, Gryphon argues that the allegations of the Complaint were "quite serious," so serious that they "sound[ed] in *fraud*." *See* Dkt. No. 14 at 3. If the Complaint called Gryphon a fraudster, the Press Release's more general statement that it lacks integrity cannot be actionable.

Aside from being absolutely privileged, the statement that Gryphon lacked integrity is a statement of opinion incapable of being defamatory. *See Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 603 (1993) (noting that because "only 'facts' are capable of being proven false, it follows that only statements alleging facts can properly be the subject of a defamation action").

### B. Ms. Trompeter's Tweet Of A Hyperlink Is In All Events Not Actionable

Gryphon's defamation claim against Ms. Trompeter in her personal capacity for retweeting, without further elaboration, a hyperlink to an article describing the Press Release and Complaint is pure vindictiveness. The tweet is re-produced below:



The tweet is not actionable for the reasons stated *supra*. It is also not actionable because simply tweeting a hyperlink does not constitute a republication capable of being defamatory because "[a] hyperlink . . . does not duplicate the content of a prior publication; rather, it identifies the location of an existing publication." *Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 39 (S.D.N.Y. 2018) (rejecting "contention that the Tweet was defamatory by linking to the E! News article"); *accord Doctor's Data, Inc. v. Barrett*, 170 F. Supp.3d 1087, 1137 (N.D. Ill. 2016); *In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012). Even if tweeting a hyperlink could be defamatory, it would still not be actionable here because Ms. Trompeter was simply issuing a fair report of what was said in the underlying article. *See Karedes*, 423 F.3d at 119.

***

Accordingly, the defamation claims must be dismissed. Counter-Defendants respectfully request permission to file their motion to dismiss. Sphere also seeks leave to amend the Amended Complaint to assert a claim for damages under the anti-SLAPP statute.

## III.   THE COURT LACKS PERSONAL JURISDICTION OVER MS. TROMPETER

The defamation claim against Ms. Trompeter also must be dismissed due to lack of personal jurisdiction. New York's long-arm statute governs the exercise of personal jurisdiction over Ms. Trompeter, a citizen of Connecticut. *See Trachtenberg v. Failedmessiah.com*, 43 F. Supp. 3d 198, 202 (E.D.N.Y. 2014). Under New York law, a court has personal jurisdiction over an out-of-state

defamation defendant if, and only if, the requirements of C.P.L.R. § 302(a)(1) are satisfied. *See Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (noting that, unlike sections 302(a)(2) and (3) of New York's long-arm statute, 302(a)(1) may be invoked in an out-of-state defamation case). Under that statute, "long-arm jurisdiction over a nondomiciliary exists where (i) a defendant transacted business within the state and (ii) the cause of action arose from that transaction of business." *Johnson v. Ward*, 829 N.E.2d 1201, 1202 (N.Y. 2005).

Gryphon has failed to satisfy the stringent requirements of 302(a)(1). *See Prince v. Intercept*, 634 F. Supp. 3d 114, 129 (S.D.N.Y. 2022) ("New York courts construe 'transacts any business within the state' in Section 302(a)(1) 'more narrowly in defamation cases than they do in the context of other sorts of litigation.'"). Its Answer contains no non-conclusory allegation that Trompeter transacts business within New York or that Gryphon's defamation claim arises out of that transaction of business. That is an insufficient basis for the assertion of personal jurisdiction. *See Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 380 (S.D.N.Y. 2019) ("Conclusory allegations are not enough to establish personal jurisdiction").

## IV.   THE IMPLIED COVENANT CLAIM (COUNT II) MUST BE DISMISSED

Gryphon's claim for breach of the implied covenant seeks damages for Sphere's alleged failure to provide it with information, the precise scope of which is unclear. The claim fails for at least three reasons:

*First*, "the obligation of good faith and fair dealing does not obligate a party to do more than what was expressly promised under the contract." *See Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 300 (S.D.N.Y. 2009); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Xerox Corp.*, 25 A.D.3d 309, 310 (1st Dept 2006) ("The covenant of good faith and fair dealing cannot be construed . . . to create independent contractual rights."). Gryphon admits that nothing in the MSA expressly requires that Sphere provide certain information to Gryphon. *See* Answer at 46 ¶ ("[T]he MSA does not explicitly address Sphere's failure to disclose all this information . . . .").

*Second*, despite insisting on the importance of the information allegedly withheld, Gryphon nowhere describes it in non-conclusory terms. Whenever Gryphon pleads an alleged failure to provide "information," Gryphon fails to describe what that information is, when it was sought, and why Gryphon required it to perform its contractual obligations. *See, e.g.*, Answer at 32 ¶ 55 (failing to describe what information Gryphon "would require to secure mining hosting services for Sphere" that Sphere did not provide); *id.* at 33 ¶ 60 (alleging, without elaboration, that "Sphere has refused to provide Gryphon with certain information relating to the hosting services it has independently . . . sought out and obtained"). Gryphon cannot state a claim for breach of an obligation that even it cannot define with any reasonable specificity. *See Lewis Tree Serv., Inc. v. Lucent Technologies, Inc.*, 2000 WL 1277303, at *5 (S.D.N.Y. Sept. 8, 2000) (dismissing an implied covenant claim because the plaintiff "fail[ed] to specify any particular conduct that allegedly breached the" covenant).

*Finally*, Gryphon has failed to allege that Sphere's purported failure to provide it with information caused it any harm over and above harms caused by the alleged breach of MSA's express provisions. *See ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) ("Under New York law, claims for breach of the implied covenant of good faith which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant.").

## V.  PROPOSED BRIEFING SCHEDULE

Counter-Defendants propose that they be allowed to file two motions to dismiss. The first will be filed for lack of personal jurisdiction on behalf of Ms. Trompeter. The second will be filed for failure to state a claim on behalf of Sphere and on behalf of Ms. Trompeter in the alternative to her personal jurisdiction motion. Given that Counter-Defendants need to file two motions, they respectfully request that they be given fourteen (14) days from the date the Court grants leave to file; that Gryphon be given twenty-eight (28) days to oppose; and that Counter-Defendants be given fourteen (14) days to reply. In addition, Counter-Defendants propose that they file their Answers twenty-one (21) days after the court rules on the motions. Of course, Counter-Defendants will adhere to any schedule set by the Court.

Sphere also requests leave to amend its Amended Complaint to add a claim for its attorney's fees under the anti-SLAPP statute, with the deadline to file the amended pleading due fourteen (14) days after the Court grants leave.

***

We are available to discuss these issues at your Honor's convenience.

Respectfully submitted,

*Gregory N. Wolfe*

*/s/ Gregory N. Wolfe*