**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SPHERE 3D CORP.,

        *Plaintiff-Counterdefendant*,

    v.

GRYPHON DIGITAL MINING, INC.,

        *Defendant-Counterplaintiff*.

Case No. 23-cv-02954 (PKC)

The Hon. Judge P. Kevin Castel

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

I.      THE MSA PROVIDED THAT GRYPHON WOULD BE THE MANAGER OF SPHERE'S
        CRYPTOCURRENCY OPERATIONS AND A CUSTODIAN OF SPHERE'S DIGITAL ASSETS.... 4

II.     DESPITE ITS STATUS AS CUSTODIAN OF SPHERE'S ASSETS, GRYPHON WAS DUPED BY
        A FRAUDSTER INTO PARTING WITH THOSE ASSETS ........................................................ 4

III.    FOLLOWING THE SPOOFING INCIDENT, GRYPHON SUDDENLY BEGAN THREATENING
        VARIOUS "CLAIMS" AGAINST SPHERE ......................................................................... 5

PROCEDURAL HISTORY ................................................................................................... 6

I.      SPHERE FILES CLAIMS AGAINST GRYPHON FOR BREACH OF THE MSA AND OF
        GRYPHON'S FIDUCIARY DUTIES ................................................................................ 6

II.     IN REACTION TO SPHERE'S SUIT, GRYPHON FILES COUNTERCLAIMS ........................... 6

III.    GRYPHON ELECTED NOT TO ATTEMPT TO BOLSTER ITS NEGLIGENCE AND IMPLIED
        COVENANT CLAIMS DESPITE AN OPPORTUNITY TO DO SO ........................................... 8

ARGUMENT ...................................................................................................................... 8

I.      SPHERE HAD NO DUTY TO PROTECT GRYPHON FROM THE ECONOMIC
        CONSEQUENCES OF ITS OWN INCOMPETENCE ............................................................ 8

II.     GRYPHON'S IMPLIED COVENANT CLAIM SHOULD BE DISMISSED ............................... 13

        A.  Gryphon's Implied Covenant Claim Must Be Dismissed As Impermissibly
            Duplicative ................................................................................................... 14

        B.  Gryphon's Implied Covenant Claim Improperly Seeks To Impose Obligations Beyond
            Those Set Forth In The MSA ........................................................................... 15

CONCLUSION ................................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.C.L. Computers & Software, Inc. v. United States*,
727 F. App'x 376 (9th Cir. 2018) ......................................................................2, 13

*Advanced Knowledge Tech, LLC v. Fleitas*,
2021 WL 6126966 (S.D.N.Y. Dec. 28, 2021) ...........................................................8

*Alfaro v. Wal-Mart Stores, Inc.*,
210 F.3d 111 (2d Cir. 2000) ......................................................................................12

*ARI & Co. v. Regent Int'l Corp.*,
273 F. Supp. 2d 518 (S.D.N.Y. 2003) ......................................................................14

*Asian Vegetable Rsch. & Dev. Ctr. v. Inst. of Int'l Educ.*,
944 F. Supp. 1169 (S.D.N.Y. 1996) ...........................................................................9

*Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*,
937 F. Supp. 2d 355 (E.D.N.Y. 2013) ................................................................8, 10

*County of Orange v. Travelers Indem. Co.*,
2014 WL 1998240 (S.D.N.Y. May 14, 2014) ..........................................................14

*Cruz v. TD Bank, N.A.*,
855 F. Supp. 2d 157 (S.D.N.Y. 2012) ........................................................................9

*D'Amico v. Christie*,
71 N.Y.2d 76 (1987) ..................................................................................................13

*Deleu v. Scaife*,
775 F. Supp. 712 (S.D.N.Y. 1991) ...........................................................................11

*Doe v. Maier*,
2020 WL 9812927 (E.D.N.Y. Mar. 24, 2020) .........................................................13

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*,
309 F. Supp. 3d 89 (S.D.N.Y. 2018) ........................................................................15

*Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*,
2023 WL 6812984 (S.D.N.Y. Oct. 16, 2023) ............................................................9

*Harris v. Provident Life & Acc. Ins. Co.*,
310 F.3d 73 (2d Cir. 2002) ........................................................................................14

*Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*,
   723 F. Supp. 976 (S.D.N.Y. 1989) ...........................................................................15, 16

*JTRE Manhattan Ave. LLC v. Cap. One, N.A.*,
   585 F. Supp. 3d 474 (S.D.N.Y. 2022) ..............................................................................11

*Landon v. Kroll Lab'y Specialists, Inc.*,
   91 A.D.3d 79 (2011) ........................................................................................................10

*Lopez v. City of New York*,
   2014 WL 5090041 (S.D.N.Y. Oct. 10, 2014) ...................................................................8

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   998 F. Supp. 2d 157 (S.D.N.Y. 2014) ...............................................................................9

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Xerox Corp.*,
   25 A.D.3d 309 (1st Dept 2006) ......................................................................................15

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
   763 F.3d 198 (2d Cir. 2014) .............................................................................................8

*Presnall v. Analogic Corp.*,
   2018 WL 4473337 (S.D.N.Y. Sept. 18, 2018) ...............................................................10

*In re Refco Inc. Sec. Litig.*,
   2010 WL 11475742 (S.D.N.Y. Mar. 2, 2010) .................................................................11

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*,
   109 F. Supp. 3d 587 (S.D.N.Y. 2015) ...............................................................................9

*TD Waterhouse Inv. Servs., Inc. v. Integrated Fund Servs., Inc.*,
   2003 WL 42013 (S.D.N.Y. Jan. 6, 2003) .......................................................................10

*Verzani v. Costco Wholesale Corp.*,
   641 F. Supp. 2d 291 (S.D.N.Y. 2009) .............................................................................15

*Vitolo v. Mentor H/S, Inc.*,
   426 F. Supp. 2d 28 (E.D.N.Y. 2006) ..............................................................................10

*Vought v. Tchrs. Coll., Columbia Univ.*,
   127 A.D.2d 654 (2d Dept 1987) .......................................................................................9

*Waxman v. Cliffs Nat. Res. Inc.*,
   222 F. Supp. 3d 281 (S.D.N.Y. 2016) .............................................................................15

*Wyche v. Advanced Drainage Sys., Inc.*,
   2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) ..................................................................16

## PRELIMINARY STATEMENT

This case arises out of Defendant-Counterplaintiff Gryphon Digital Mining Inc.'s ("Gryphon") breach of contractual duties it owed to Plaintiff-Counterdefendant Sphere 3d Corp. ("Sphere") under the Master Services Agreement between the parties dated August 19, 2021, as subsequently amended (the "MSA"), and Gryphon's breach of the fiduciary duties it owed as, among other things, Sphere's manager, broker, investment advisor, agent, and the custodian of its assets. As set forth in Sphere's Second Amended Complaint, Gryphon neglected Sphere's interests in favor of its own, engaged in naked self-dealing, and squandered Sphere's assets. To distract from its own misfeasance, Gryphon has asserted counterclaims for breach of contract, breach of the implied covenant, and negligence.[1] Although the breach of contract claim is meritless, as will be shown with the benefit of a full record, Gryphon's negligence and implied covenant claims should be dismissed now because they are squarely foreclosed as a matter of law.

*First*, Gryphon's negligence claim should be dismissed because Gryphon has failed to allege an essential element of the claim, namely, that Sphere owed a duty to Gryphon. The negligence claim is predicated on Gryphon's falling prey to a fraudster who, through use of several spoofed[2] emails, tricked Gryphon into transferring 26 of Sphere's bitcoin (worth many hundreds of thousands of dollars then and even more now) to the fraudster's account. The emails contained the telltale signs of fraud that any competent custodian should have detected, including misspellings and a facially implausible explanation for the need to transfer assets not to Sphere's normal account but to an account associated with the fraudster. Despite the fact that it is *Gryphon* that is the custodian of *Sphere's* digital assets, Gryphon asserts that Sphere bears sole responsibility

---

[1] Gryphon's Counterclaim originally included a claim for defamation asserted against Sphere and its CEO, Patricia Trompeter. By a stipulation so-ordered by this Court on November 7, 2023, Gryphon dismissed its defamation claim. Dkt. 47.

[2] Email spoofing is a technique in which a hostile actor impersonates a person by imitating—a/k/a spoofing—his or her email address by using an address that closely resembles it.

for Gryphon's own lack of care.

But Gryphon can point to no contractual obligation that would impose such a responsibility on Sphere. And the law is unequivocal that, where, as here, there is a contract, no duty will arise in the absence of a special relationship between the parties. Although Gryphon owes Sphere extracontractual duties by virtue of its role as, among other things, the custodian of Sphere's assets, Gryphon has done nothing to plead that Sphere owes any such duties in turn by virtue of a special relationship. Instead, it alleges that, because Sphere (like Gryphon) was copied on the fraudster's emails, and Sphere (like Gryphon) was allegedly aware of the general phenomenon of fraudulent spoofing attacks, Sphere (apparently unlike Gryphon) bore responsibility for preventing Gryphon from being duped. As the Ninth Circuit has held, that is a wholly insufficient basis for the imposition of an extracontractual duty because there is no "common-law duty requiring a business to prevent third-party fraudsters from impersonating the business." *A.C.L. Computers & Software, Inc. v. United States*, 727 F. App'x 376, 376 (9th Cir. 2018) (applying California law). The case against imposing a duty here is even stronger than in the ordinary commercial context given Gryphon's admitted responsibility for ensuring that Sphere's digital assets are transferred to the proper recipient.

*Second*, Gryphon's implied covenant claim should be dismissed because it is impermissibly duplicative and, independently, because it seeks to impose obligations beyond the four corners of the MSA. Under the MSA, Gryphon was to serve as the "exclusive provider of any and all management services for Sphere's blockchain and cryptocurrency-related operations." *See* MSA at 1. In its breach of contract claim, Gryphon asserts that Sphere breached that express provision (and others) because it allegedly conducted operations without Gryphon's consent. Gryphon's implied covenant claim—which expressly invokes that contractual language—contends that the

failure to provide certain information concerning those operations is independently actionable because it prevented Gryphon from performing the services required under the MSA.

The implied covenant claim should be dismissed because it is impermissibly duplicative. Courts dismiss implied covenant claims when they concern the same factual matter, or allege the same damages, as a claim for breach of contract. That is the case here because the sole injury allegedly caused by breach of the implied covenant is Gryphon's loss of exclusivity—*i.e.*, an injury underlying its breach of contract claim. *Compare* Counterclaim ¶ 120 (Gryphon alleging, in its breach of contract count, that Sphere "breached the exclusivity terms of the MSA") *with id.* ¶¶ 131, 138 (Gryphon alleging that it was injured because it was unable to provide services "pursuant to the exclusivity terms of the MSA"). Because the conduct and damages asserted by the implied covenant claim also form the basis of Gryphon's breach of contract claim, the implied covenant claim is impermissibly duplicative and should be dismissed.

The claim should also be dismissed because the implied covenant may not be used to impose obligations beyond those contemplated by the parties' agreement. The MSA sets forth Sphere's obligations to Gryphon related to Gryphon's role as manager and custodian. Because Gryphon admits that an obligation to provide the supposedly "critical" information sought is not among them, and because Gryphon has not alleged the existence of any gap or ambiguity that would permit the implication of an obligation to provide certain information, Gryphon's implied covenant claim should be dismissed as an improper attempt to impose obligations for which the parties did not bargain.

In response to a comprehensive pre-motion letter setting forth these arguments (*see* Dkt. 31), Gryphon asked for leave to amend to bolster its allegations (*see* Dkt. 32 at 6), which the Court granted. *See* Dkt. 33. Although Gryphon attempted to augment its breach of contract allegations

through amendment, it did not materially change the allegations supporting its implied covenant and negligence claims. Because those claims are deficient, and Gryphon apparently cannot improve upon them, they should be dismissed with prejudice.

## FACTUAL BACKGROUND[3]

### I.    THE MSA PROVIDED THAT GRYPHON WOULD BE THE MANAGER OF SPHERE'S CRYPTOCURRENCY OPERATIONS AND A CUSTODIAN OF SPHERE'S DIGITAL ASSETS

On August 19, 2021, the parties entered into the MSA. In the MSA, Gryphon agreed to serve as the "exclusive provider of any and all management services for Sphere's blockchain and cryptocurrency-related operations." *See* MSA at 1 (the "Management Services Provision"). In addition, the MSA made Gryphon a custodian of certain of Sphere's "digital assets," which are stored in a "digital wallet"—the rough equivalent of an online bank account—controlled by Gryphon. MSA at 2. As with a customer's online bank account, the MSA gave Sphere authority to issue "written instructions to [Gryphon] with respect to all decisions to sell or hold Digital Assets." *Id.* (the "Sale Provision"). In exchange for these services, Gryphon received a substantial Management Fee—22.5% of the "Net Operating Profit of all of [Sphere's] blockchain and cryptocurrency-related operations." *Id.* at 1.

### II.    DESPITE ITS STATUS AS CUSTODIAN OF SPHERE'S ASSETS, GRYPHON WAS DUPED BY A FRAUDSTER INTO PARTING WITH THOSE ASSETS

On January 27, 2023, Kurt Kalbfleisch, Sphere's Chief Financial Officer and Senior Vice President, requested by email that Gryphon transfer 18 bitcoin from a wallet controlled by Gryphon to one controlled by Sphere. *See* Counterclaim ¶ 72. At 1:33 p.m., Rob Chang, Gryphon's CEO, responded, "Received and initiated." Dkt. 38-6 at 3 ("Counterclaim Ex. F").

One hour later, Mr. Chang received an email from a "hostile threat actor" pretending to be

---

[3] The factual background set forth in this motion is drawn from the allegations of Gryphon's Counterclaim, the truth of which is assumed for purposes of this motion only, and the documents attached as exhibits thereto.

Mr. Kalbfleisch.  *See* Counterclaim ¶¶ 83, 90.  The email came from a different domain from the Sphere domain, namely @sphere**s**3d.com (with an added "s" in the middle), not @sphere3d.com. Counterclaim Ex. F at 2.  It also included a different email—Mr. Kalbfleisch's correct address— in the signature block.  *Id.* at 3.  In the email, the person pretending to be Mr. Kalbfleisch stated that Sphere's normal wallet address was "being audited" and requested that the 18 bitcoin be routed to a different wallet address that had not previously been used by Sphere.  *Id.* at 2; *see also* Counterclaim ¶ 75.

Despite these indicia that the request was not from Mr. Kalbfleisch, Mr. Chang initiated the transaction, apparently without performing the identify verification he had previously informed Mr. Kalbfleisch was required.  *See* Counterclaim ¶ 78; *see also* Counterclaim Ex. F at 3 (informing Mr. Kalbfleisch that "[a]ll Sphere withdrawals require a video ID call" for "verification" of the request).  Three days later, the hostile threat actor—using the same misspelled email address— asked Mr. Chang to transfer another 8 bitcoin to the unaffiliated wallet.  *See* Counterclaim ¶ 79. Consistent with Gryphon's "protocol," Mr. Chang made the transfer without conducting any verification of its propriety.  *Id.* ¶ 81.  After the real Kurt Kalbfleisch asked about the status of Sphere's bitcoin, Gryphon realized it had been duped.  It was, however, "unable to recover" the bitcoin it had transferred to the fraudster.  *Id.* ¶ 91.  It then "transferred the U.S. dollar-equivalent value of" the bitcoin—at the time, approximately $560,215.53—to Sphere "on a courtesy basis" but reserved all rights, including apparently to bring this suit.  *Id.* ¶ 90.

## III.    FOLLOWING THE SPOOFING INCIDENT, GRYPHON SUDDENLY BEGAN THREATENING VARIOUS "CLAIMS" AGAINST SPHERE

Less than a week after the parties held a March 15, 2023 call to discuss Gryphon's loss of the Sphere's bitcoin, Gryphon sent Sphere a demand letter in which it asserted that Sphere had breached the MSA, including by "attempting to enter" into business relationships without

Gryphon's permission.  *See* Dkt. 38-2 at 1 ("Counterclaim Exhibit B").  Based on the purported
"urgency" of its concerns, Gryphon demanded that Sphere respond in *less than 24 hours.*  *Id.* at 2.
After Sphere timely responded and pressed Gryphon on its responsibility for its various breaches
of its contractual and fiduciary duties (including the loss of Sphere's bitcoin), Gryphon demanded
that Sphere maintain a balance of $530,000—the then-approximate value of the bitcoin Gryphon
had given away to the fraudster—in accounts controlled by Gryphon.  *See* Dkt. 38-4 at 5
("Counterclaim Ex. D").  It then asserted that it had the unilateral right to *refuse* to heed Sphere's
instructions to sell its own assets, thereby permitting Gryphon to hold them hostage indefinitely.
*Id.*

## PROCEDURAL HISTORY

### I.    SPHERE FILES CLAIMS AGAINST GRYPHON FOR BREACH OF THE MSA AND OF GRYPHON'S FIDUCIARY DUTIES

On April 7, 2023, Sphere filed its original Complaint.  As it explained then, the relationship
between the parties had "proven to be completely one-sided," with Gryphon "collect[ing] its
exorbitant Management Fee while shirking its duties under the MSA," "nakedly prioritizing its
own interests over those of Sphere's," and engaging in rampant self-dealing that enriched Gryphon
at Sphere's expense in violation of its fiduciary duties.  *See* Complaint ¶¶ 2, 4, 13.  To recover the
damages it suffered and continues to suffer at the hands of Gryphon, Sphere asserted claims for
breach of contract, breach of the implied covenant, and breach of fiduciary duty.  *See id.* ¶¶ 52–
69.

### II.    IN REACTION TO SPHERE'S SUIT, GRYPHON FILES COUNTERCLAIMS

On October 11, 2023, Gryphon filed its Counterclaim, asserting claims for (1) breach of
contract; (2) breach of the implied covenant; (3) negligence; and (4) defamation, a claim Gryphon
has since dropped.  *See* n.1, *supra*.

The gist of Gryphon's negligence claim (Count III) is that Sphere, not Gryphon, bears total responsibility for Gryphon's failure to detect the spoofing fraud.  Gryphon contends that Sphere owed and breached a series of duties, namely:

- "to maintain proper security and control of Sphere's computer systems and information technology infrastructure, including its company email accounts and email server";

- "to take proper precautions to protect Gryphon from being targeted by fraudulent activities in connection with Gryphon's business dealings with Sphere, including the transfer of assets under the MSA";

- "to safeguard information relating to such business dealings and transactions"; and

- "to recognize and notify Gryphon of fraudulent activity occurring within Sphere's computer systems and information technology infrastructure."

*Id.* ¶¶ 142–43.  Contending that it bears zero responsibility for being duped by the fraudster because Gryphon's conduct was somehow "the sole fault of Sphere and due to Sphere's negligence alone," Gryphon now seeks to recover the funds it remitted to Sphere as a "courtesy" for losing its digital assets.  *Id.* ¶¶ 90, 156.

In its breach of contract claim (Count I), Gryphon alleges, *inter alia*, that Sphere breached the Management Services Clause by conducting its own business operations without Gryphon's consent.  *See id.* ¶ 120.  Through its breach of the implied covenant claim (Count II), Gryphon alleges that the failure to provide information concerning those operations constitutes an independently actionable breach of the implied covenant of good faith and fair dealing.  *See id.* ¶¶ 132–36, 139.

III.    **GRYPHON ELECTED NOT TO ATTEMPT TO BOLSTER ITS NEGLIGENCE AND IMPLIED COVENANT CLAIMS DESPITE AN OPPORTUNITY TO DO SO**

Gryphon's Counterclaim constitutes its second effort to plead its negligence and implied covenant claims. After Gryphon filed its initial counterclaims, Sphere submitted a comprehensive letter setting out their many defects. Dkt. 31. In its response, Gryphon sought leave to amend its claims (Dkt. 32), a request the Court granted (Dkt. 33). Despite that opportunity, Gryphon substantially stood on its allegations related to the implied covenant and negligence claims.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lopez v. City of New York*, 2014 WL 5090041, at *1 (S.D.N.Y. Oct. 10, 2014) (internal quotation marks omitted). While the Court must take a pleading's factual allegations as true for purposes of deciding the motion, "[t]he Court must disregard purely legal conclusions that are framed as factual allegations, as these legal conclusions are not entitled to the presumption of truth." *See Advanced Knowledge Tech, LLC v. Fleitas*, 2021 WL 6126966, at *2 (S.D.N.Y. Dec. 28, 2021). "Dismissal is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014) (internal quotation marks omitted).

I.    **SPHERE HAD NO DUTY TO PROTECT GRYPHON FROM THE ECONOMIC CONSEQUENCES OF ITS OWN INCOMPETENCE**

Under New York law, "a party to a contract that suffers economic loss only . . . is, in most cases, limited to recovery pursuant to a claim for breach of contract and cannot recover economic or consequential damages in tort." *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 361 (E.D.N.Y. 2013). There is no dispute that the MSA is a binding contract between the parties. Although Gryphon claims that Sphere owed it various duties—all of which

boil down to an alleged obligation by Sphere to protect Gryphon from the economic loss caused by Gryphon's own failure to detect the spoofing fraud—Gryphon does not contend that any of these duties can be found within the four corners of the contract itself; hence its resort to a negligence claim in lieu of a breach of contract claim. *See* Counterclaim ¶ 52. Because there is no general obligation to protect others from economic loss, Gryphon thus bears the burden of establishing the existence and breach of "a legal duty separate and apart from obligations bargained for and subsumed within the transaction" that required Sphere to protect Gryphon from the economic loss caused by the spoofing fraud. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 185 (S.D.N.Y. 2014); *see also Asian Vegetable Rsch. & Dev. Ctr. v. Inst. of Int'l Educ.*, 944 F. Supp. 1169, 1181 (S.D.N.Y. 1996) (recognizing the "longstanding New York rule that economic loss is not recoverable under a theory of negligence" (internal quotation marks omitted)).

It has failed to meet that burden. In New York, "parties are permitted to define their obligations to one another *ex ante* by agreement" and courts are "loathe to impose any extracontractual obligations on them *ex post.*" *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, NA.*, 2023 WL 6812984, at *10 (S.D.N.Y. Oct. 16, 2023). Thus, when parties enter into an agreement, that agreement, not the law of tort, ordinarily defines their obligations to each other. *See Vought v. Tchrs. Coll., Columbia Univ.*, 127 A.D.2d 654 (2d Dept 1987). A limited exception to that principle applies when the parties share "a special relationship" giving rise to a duty by one party to "protect against the risk of harm to" the other. *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 178 (S.D.N.Y. 2012) (Castel, J.). The existence of a duty is a question of law, the determination of which requires a "policy-driven scrutiny of whether" one party should bear responsibility to "protect [another] against purely economic losses." *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 599 (S.D.N.Y. 2015). Because this case

concerns a commercial transaction, Gryphon must point to an "identifiable source of a special duty of care" that obligated Sphere to prevent Gryphon from being duped by the fraudster. *Presnall v. Analogic Corp.*, 2018 WL 4473337, at *9 (S.D.N.Y. Sept. 18, 2018) (internal quotation marks omitted).

"New York law is clear in limiting imposition of [such] a duty, the breach of which can support a claim in tort, to a limited class of professionals and circumstances." *Avazpour*, 937 F. Supp. 2d at 364. Courts will not impose such duties when the "damages alleged, however significant to the parties, do not implicate a larger public interest." *Id.* The "imposition of an independent duty of care" in the commercial context is "reserved for the most serious of situations directly affecting the public at large, and not sophisticated parties." *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 36 (E.D.N.Y. 2006). Thus, while "professionals, common carriers and bailees, for example, may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties," ordinary parties to a commercial transaction are not. *Landon v. Kroll Lab'y Specialists, Inc.*, 91 A.D.3d 79, 83 (2011); *see also, e.g., TD Waterhouse Inv. Servs., Inc. v. Integrated Fund Servs., Inc.*, 2003 WL 42013, at *13 (S.D.N.Y. Jan. 6, 2003) (holding that an accounting firm did not owe an independent duty to its client because the injury asserted was "economic in nature" and did not implicate the public interest).

Gryphon's Counterclaim fails to allege the existence of a special relationship or any other basis for the imposition of an independent duty to prevent Gryphon from being duped by the fraudster.[4] To the contrary, its allegations make clear that it was Gryphon, not Sphere, who was responsible for protecting the economic interests of its contractual counterparty. The Court should

---

[4] In its response to Sphere's pre-motion letter, Gryphon relied on a series of consumer data privacy cases. *See* Dkt. 32. This case is nothing like those data privacy cases, not least because it involves a commercial transaction and purely economic losses, as opposed to the disclosure of consumers' personally identifying information, the damage for which is not purely economic.

therefore dismiss Gryphon's negligence claim for failure to allege the existence and breach of an extracontractual duty.

Gryphon alleges that it is a "sophisticated part[y]" with "unique experience, credibility, and expertise in cryptocurrency mining operations." *See* Counterclaim ¶¶ 10, 29. It further alleges Sphere "leverag[ed]" those characteristics to "transform its business" by vesting immense power in Gryphon. *Id.* ¶ 29. Under the MSA, Gryphon was the "exclusive provider of any and all management services for Sphere's blockchain and cryptocurrency-related operations." *See* MSA at 1. And it also was a custodian of Sphere's digital assets and charged with responsibility for maintaining them on Sphere's behalf. *See* Counterclaim ¶ 115. By Gryphon's account, those twin responsibilities gave it comprehensive power, including "exclusive control over" Sphere's digital assets and the right to determine when and with whom Sphere does business. *See id.* ¶¶ 8, 40 (alleging that Sphere breached the MSA by "enter[ing] into a business relationship . . . without the consent, approval, or involvement of Gryphon"). Those characteristics give rise to a special relationship in which *Gryphon owes extracontractual duties to Sphere*, not the other way around. *See JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, 585 F. Supp. 3d 474, 479 (S.D.N.Y. 2022) (observing that, "[i]n the commercial context," one party's "unique or special expertise" may give rise to a special relationship imposing duties of care to its contractual counterparty); *Deleu v. Scaife*, 775 F. Supp. 712, 715 (S.D.N.Y. 1991) ("New York law is clear that a fiduciary relationship exists from the assumption of control and responsibility."); *In re Refco Inc. Sec. Litig.*, 2010 WL 11475742, at *19 (S.D.N.Y. Mar. 2, 2010) ("[A] fiduciary duty arises, even in a commercial transaction, where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit." (citation omitted)); *see also* Dkt. 36 ("Am. Compl.") ¶¶ 42–46 (setting forth Gryphon's fiduciary duties as manager, custodian, broker, advisor, and agent).

By contrast, the grounds for Sphere's purported duties are patently insufficient to impose obligations outside of the parties' agreement.

For example, Gryphon alleges that Sphere's executives owed it a duty to scrutinize emails sent to Gryphon to determine whether they originated from the proper email address. *See* Counterclaim ¶¶ 84, 147–48 (faulting Sphere's CEO for failing to review emails on which she was copied to determine whether they originated from Mr. Kalbfleisch's real email address). But Gryphon admits that *Gryphon* was the recipient of the spoofed emails, that *Gryphon* had received requests originating from authentic Sphere email addresses in the past, and that, consistent with its obligation to "manage digital wallets on Sphere's behalf," *Gryphon* had processed those requests following a protocol designed to ensure that Sphere's digital assets were transferred to the proper recipient. *See, e.g.*, *id.* ¶¶ 70, 71. If any party was "well-positioned" to discern the propriety of a request to transfer assets, it was the one whose admitted role was to effectuate and verify such transfers on its counterparty's behalf. *See id.* ¶ 71 (Gryphon admitting that it had processed multiple requests to transfer Sphere's digital assets). The mere fact that Sphere's CEO was copied on emails from the fraudster is not a sufficient basis to impose duties to protect Gryphon, the party contractually charged with responsibility for safeguarding Sphere's assets, from the consequences of Gryphon's own incompetence. *See Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (observing that "[i]dentifying the scope of an alleged tortfeasor's duty" requires consideration of "contractual assumptions of responsibility").

Gryphon also alleges (at ¶144) that, because Sphere "knew or should have known" of the alleged "prevalence of, and industry warnings relating to," spoofing attacks, it owed a duty to protect Gryphon from the consequences of those attacks and implement robust policies to ward them off. As the Ninth Circuit has held, there is no "common-law duty requiring a business to

12

prevent third-party fraudsters from impersonating the business." *A.C.L. Computers & Software, Inc.*, 727 F. App'x at 376 (applying California law).  This follows the general rule that "[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter [the] defendant can exercise such control." *D'Amico v. Christie*, 71 N.Y.2d 76, 88 (1987).  The consequences of a different rule would be far reaching: every business would be charged with implementing costly programs to ward off spoofing attacks, which are by now understood to be ubiquitous.  *See Doe v. Maier*, 2020 WL 9812927, at *17 (E.D.N.Y. Mar. 24, 2020) ("[A]ny extension of the scope of duty must be tailored to reflect accurately the extent that its social benefits outweigh its costs." (internal quotation marks omitted)).  Gryphon's attempt to impose this duty here is particularly undesirable given its "significant and unique experience, credibility, and expertise in cryptocurrency mining operations."  Counterclaim ¶ 10.  That Gryphon was aware of spoofing risks yet failed to bargain for any obligations concerning them—and apparently failed in its own right to mitigate them—weighs heavily against the imposition of any extracontractual duty on its allegedly less sophisticated contractual counterparty.

In sum, Gryphon has offered nothing to overcome the law's strong presumption that parties to a contractual relationship are limited to contractual remedies for purely economic loss.  Accordingly, it has failed to plead the existence of an independent duty sufficient to give rise to a claim for negligence, which should be dismissed.

## II.    GRYPHON'S IMPLIED COVENANT CLAIM SHOULD BE DISMISSED

Gryphon's implied covenant claim alleges that Sphere breached the covenant by refusing to provide information concerning its miners and the third parties responsible for hosting them, thereby preventing Gryphon from providing the services required by the Management Services Provision by securing hosting and paying related bills on Sphere's behalf.  *See id.* ¶¶ 136–38.  That

claim should be dismissed because it is duplicative of the breach of contract claim and, independently, because it improperly seeks to impose obligations beyond those agreed to by the parties.

### A.    Gryphon's Implied Covenant Claim Must Be Dismissed As Impermissibly Duplicative

An implied covenant claim can be maintained only if it is independent of a party's breach of contract claim.  To be independent, the implied covenant claim must rest on different conduct than that underlying the breach of contract claim and seek to recover distinct damages.  *See Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (observing that "New York law . . . does not recognize a separate cause of action for breach of the implied covenant . . . when a breach of contract claim, based upon the same facts, is also pled."); *ARI & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 523 (S.D.N.Y. 2003) (holding that implied covenant claims "which seek to recover damages that are intrinsically tied to the damages allegedly resulting from the breach of contract must be dismissed as redundant").  Courts consistently dismiss implied covenant claims as duplicative where they address the "same ultimate grievance" as a breach of contract claim or seek damages resulting from a breach of an agreement's express provisions.  *See County of Orange v. Travelers Indem. Co.*, 2014 WL 1998240, at *3 (S.D.N.Y. May 14, 2014).

Gryphon's implied covenant claim is duplicative and must be dismissed because it rests on the same conduct and injury underlying Gryphon's breach of contract claim: Sphere's alleged failure to provide Gryphon with exclusive control over its business.  In its breach of contract claim, Gryphon complains that Sphere has denied its rights under the Management Services Clause by conducting its own operations without Gryphon's consent.  *See* Counterclaim ¶ 120.  That alleged deprivation also lies at the heart of the implied covenant claim.  *See id.* ¶ 138 (alleging that the failure to provide information "prevented Gryphon from providing Services as required under the

MSA"); *id.* ¶ 24 (defining the term "Services" to means the exclusive provision of "management services" under the MSA). The purported refusal to provide information is not a distinct wrong; it is simply another way of describing Sphere's allegedly improper decision to conduct its own affairs without Gryphon's involvement. Indeed, there is no distinct damage that could accrue from breach of the information rights that is not already subsumed by the alleged breach of the exclusivity provision. The implied covenant claim must therefore be dismissed as impermissibly duplicative. *See EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 94 (S.D.N.Y. 2018) (holding that an implied covenant claim based on the "allege[d] non-disclosure of documents" justifying a rate increase was duplicative of a breach of contract claim alleging that the increase was improper).

### B.    Gryphon's Implied Covenant Claim Improperly Seeks To Impose Obligations Beyond Those Set Forth In The MSA

It is well established that "the obligation of good faith and fair dealing does not obligate a party to do more than what was expressly promised under the contract." *See Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 300 (S.D.N.Y. 2009); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Xerox Corp.*, 25 A.D.3d 309, 310 (1st Dept 2006) ("The covenant of good faith and fair dealing cannot be construed . . . to create independent contractual rights."). "The implied covenant is a limited, gap-filling cause of action." *See Waxman v. Cliffs Nat. Res. Inc.*, 222 F. Supp. 3d 281, 295 (S.D.N.Y. 2016) (internal quotation marks omitted). Thus, when the parties' agreement addresses a particular subject matter and is not alleged to be ambiguous regarding it, a court may not find an implied covenant on the same subject. *See Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc.*, 723 F. Supp. 976, 991 (S.D.N.Y. 1989).

As Gryphon concedes, the MSA "does not . . . address Sphere's [alleged] failure to disclose" the information sought. *See* Counterclaim ¶ 136. But it undoubtedly addresses the

services Gryphon must perform under the Management Services Provision, including Sphere's obligations in relation to them. Gryphon has not suggested that those express provisions contain language sufficiently ambiguous to invoke the implied covenant or that there is a "gap" which the implied covenant must fill. This is neither a case in which the obligation Gryphon seeks to impose is a necessary incident of an express obligation, nor one in which Gryphon's purported need for the information sought could not have been contemplated at the time of contracting. Instead, Gryphon impermissibly seeks to impose a substantive obligation "for which the parties did not bargain." *See Hartford Fire Ins. Co.* 723 F. Supp. at 991. The claim should therefore be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Gryphon's negligence and implied covenant counts should be dismissed for failure to state a claim. Because Gryphon chose to stand on its deficient allegations after the Court gave Gryphon an opportunity to amend them, that dismissal should be with prejudice. *See Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *18 (S.D.N.Y. Mar. 10, 2017) (dismissing a complaint with prejudice where a party chose to stand on its deficient pleading despite being given an opportunity to amend it).

Dated:        November 9, 2023
              New York, NY

                                   **DONTZIN NAGY & FLEISSIG LLP**

                                   *Gregory N. Wolfe*
                                   —————————————————————
                                   Tibor L. Nagy, Jr.
                                   Gregory N. Wolfe
                                   Maxine Peskens
                                   Rahul Srinivas (pro hac vice forthcoming)
                                   David Moosmann (pro hac vice forthcoming)
                                   980 Madison Avenue
                                   New York, NY 10075
                                   Tel: 212-717-2900
                                   tibor@dnfllp.com
                                   greg@dnfllp.com
                                   mpeskens@dnfllp.com
                                   rsrinivas@dnfllp.com
                                   dmoosmann@dnfllp.com

                                   *Counsel for Sphere 3D Corp.*