# DONTZIN NAGY & FLEISSIG LLP
31 E 62nd St | New York, New York 10065 | (212) 717 - 2900

Gregory N. Wolfe
greg@dnfllp.com

**VIA ECF** January 29, 2024

Hon. Kevin P. Castel
United States District Court Judge
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, NY 10007

      Re:    *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, 1:23-cv-02954-PKC

Dear Judge Castel:

      We represent Plaintiff Sphere 3D Corp. ("Sphere") and write in response to the pre-motion letter dated January 23, 2024 (the "Letter") of Gryphon Digital Mining Inc. ("Gryphon") seeking leave to file a motion to reconsider this Court's October 27, 2023 order staying discovery (the "Order"). *See* Dkt. 63. No conference is currently set before the Court.

      For the reasons set forth below, the Court should adhere to its Order because (i) Gryphon failed to seek a meet-and-confer with Sphere regarding the Order before filing its Letter; (ii) Gryphon did not seek reconsideration of the Order within fourteen days in accordance with Local Civil Rule 6.3; and (iii) in any event, there is no justification for lifting the stay, as resolution of Sphere's motion to dismiss in its favor would substantially winnow discovery, and Gryphon has identified no prejudice it would suffer from a further brief delay given that Sphere's motion will soon be fully briefed and resolved.

### I. THE APPLICATION FOR RECONSIDERATION SHOULD BE DENIED BECAUSE GRYPHON FAILED TO SEEK A MEET-AND-CONFER REGARDING THE ORDER

      Rule 37 of the Federal Rules of Civil Procedure and Rule 3.B of this Court's Individual Rules generally require parties to meet-and-confer before seeking discovery-related relief from the Court. Gryphon failed to do so, meaning its application for reconsideration should be summarily denied.

      In its Letter, Gryphon disingenuously claims it asked to meet-and-confer "on this issue"—*i.e.*, lifting the stay—but that Sphere's counsel refused to do so. Letter at 2. Gryphon attaches no document to substantiate the claim with good reason: it is false. Instead, as demonstrated by the attached correspondence, Gryphon asked Sphere to "discuss a discovery plan." Ex. 1. Sphere responded that a call was premature because "there is a discovery stay in place" and that it did not want to unnecessarily expend client "resources" given that they are "thin." Ex. 2. Sphere, however, was clear it would meet-and-confer on a discovery plan at an "appropriate point"—*i.e.*, when the stay is lifted after its forthcoming motion to dismiss is decided. *Id.*

      Rather than inform Sphere of its intent to seek reconsideration of the Order—a subject on which Sphere would have of course met-and-conferred—Gryphon jumped to file its Letter. Gryphon's failure to meet-and-confer warrants denial of its application.

## II.     THE APPLICATION FOR RECONSIDERATION SHOULD BE DENIED BECAUSE GRYPHON DID NOT OBJECT TO THE ORDER WITHIN FOURTEEN DAYS OF ITS ISSUANCE IN ACCORDANCE WITH LOCAL CIVIL RULE 6.3

Local Civil Rule 6.3 provides that a party moving for "reconsideration or reargument of a court order determining a motion" must move for such relief within fourteen days of the order's issuance. On October 27, 2023, in response to Sphere's letter motion (Dkt. 39) seeking leave to file a partial motion to dismiss the then-operative amended counterclaims, the Court issued the Order in which it resolved Sphere's letter motion by permitting Sphere to file a motion to dismiss and staying discovery pending resolution of that motion. *See* Dkt. 40. Because months have passed since the issuance of the Order, Gryphon's application to revisit it now is untimely and should be denied for that reason alone.

Gryphon has not identified any good cause to explain why it did not comply with Local Rule 6.3 or otherwise act with alacrity. In its Letter, Gryphon makes boilerplate statements to the effect that it is "appropriate and efficient for discovery to proceed at this time" (Letter at 1) but makes no attempt to explain why it did not object to the Order over the prior three months or to identify any argument unavailable to it when the Court entered the Order. In fact, in the intervening three months:

- On November 9, 2023, Sphere filed its motion to dismiss Gryphon's negligence and breach of the implied covenant claims. *See* Dkt. 48.

- In early December 2023, rather than file an opposition, Gryphon sought and eventually obtained leave to amend its counterclaims not to bolster its negligence and implied covenant claims, but instead to add a new breach of contract count. *See* Dkts. 50–55.

- On December 21, 2023, Sphere filed a letter alerting the Court to its intent to again move to dismiss the negligence and implied covenant claims and also to move to dismiss the newly added breach of contract claim (Count I or the "Core Breach of Contract Claim"). *See* Dkt. 56.

- In early January 2024, Gryphon again sought and obtained leave to amend its pleadings, this time to enhance the Core Breach of Contract Claim. *See* Dkts. 59–62.

- Pursuant to this Court's scheduling order, Sphere will at last file its motion to dismiss on February 2, 2024, which will—barring further attempted amendment by Gryphon—be fully briefed by March 15, 2023. *See* Dkt. 61.

Gryphon's sudden, arbitrary change in heart—that it would now like to proceed with discovery notwithstanding that Sphere is filing a motion to dismiss—does not present any reason to revisit the Court's Order or depart from Local Civil Rule 6.3's fourteen-day deadline.

### III. THE APPLICATION FOR RECONSIDERATION SHOULD BE DENIED BECAUSE THE ORDER WAS JUSTIFIED BECAUSE RESOLVING THE MOTION TO DISMISS IN SPHERE'S FAVOR WILL STREAMLINE THE CASE

In any event, the Order was and remains warranted on its own terms. Courts do not hesitate to stay discovery pending partial motions to dismiss where doing so will winnow discovery. *E.g.*, *Nat'l Rifle Ass'n of Am. v. Cuomo*, 2020 WL 7338588, at *5 (N.D.N.Y. Dec. 14, 2020) (granting stay of discovery during pendency of partial motion to dismiss because doing so would reduce cost and burden on defendant). The case for doing so is even stronger where the "stay will very likely be brief" and the "prejudice" to other side "minimal." *Id.* at *6.

At the outset, Gryphon does not argue it will suffer any prejudice from a stay. Nor could it: Gryphon was perfectly content with the stay for three months and during that time took numerous actions to delay resolution of Sphere's motion to dismiss and thus extend the stay, such as amending its pleadings and seeking extensions of time to make filings.

Rather than assert prejudice, the core of Gryphon's argument is that granting Sphere's motion to dismiss "would not materially change the scope of discovery" because all of Gryphon's claims "aris[e] out of the same" Master Services Agreement dated August 19, 2021, as subsequently amended (the "MSA"). Letter at 2. This is simply not correct; there is a reason that Gryphon has asserted two different breach of contract claims against Sphere: Count I—*i.e.*, the Core Breach of Contract Claim, which Sphere is moving to dismiss—and Count II, *i.e.*, the "Exclusive Provider Breach Claim," which Sphere is not. Moreover, the argument ignores that there is virtually no overlap between the negligence claim and any other claim.

The Exclusive Provider Breach Claim is premised on allegations that Sphere breached the MSA by impermissibly entering into agreements with several counterparties and operating "its own digital wallets" without Gryphon's "consent" and further by terminating the MSA on October 6, 2023, without cause. *See* Fourth Amended Counterclaim ¶¶ 116–130. As far as the time period implicated by the Exclusive Provider Breach Claim, the Fourth Amended Counterclaim makes clear that the gravamen of the claim begins in late 2022, when Sphere entered into its first allegedly improper business relationship. *See id.* ¶ 44.

The Core Breach of Contract Claim is entirely different and thus will require entirely different discovery, as it depends on allegations that Sphere breached the MSA because it purportedly failed to "deliver[] . . . 71,000 [Bitcoin] mining machines to" Core Scientific Inc. ("Core"), a non-party. S*ee id.* ¶¶ 111–14. The Fourth Amended Counterclaim alleges that the Core Breach of Contract Claim depends on no less than three additional agreements: (1) a Master Services Agreement between Gryphon and Core dated September 12, 2021 (the "Core MSA"); (2) Order #2 between Gryphon and Core dated October 5, 2021; and (3) a Sub-License Agreement dated October 5, 2021, as subsequently amended, between Gryphon and Sphere. *Id.* ¶¶ 12–14, Exs. A–C. The Core Breach of Contract Claim alleges that Sphere failed to fulfill an obligation it purportedly owed nonparty Core under Order #2, namely, to abide by the mining delivery schedule found in Order #2, which purportedly called for the delivery of 71,000 miners in installments beginning in October 2021, with all deliveries to have concluded in November 2022. The damages sought by the Core Breach of Contract Claim are distinct, as Gryphon, through that claim, seeks "loss of the value of the MSA, lost profits, loss of business opportunities, and losses associated with litigation against Core." *Id.* ¶ 115.

Accordingly, as compared to the Exclusive Provider Breach Claim,[1] the Core Breach of Contract Claim would require discovery into a distinct period for a distinct set of claims that seek a distinct set of damages related to a distinct set of contracts involving a relationship with a non-party, Core, and issues like lost profits and lost business opportunities that are notoriously complex and burdensome to explore.

The negligence claim is also distinct from the others, as it depends on the allegation that Sphere failed to "maintain proper security and control of [its] computer systems and information technology infrastructure," which allegedly enabled a third-party fraudster to impersonate Sphere and fool Gryphon into parting with over half a million dollars' worth of Sphere's digital assets. *See id.* ¶¶ 146–61. If Sphere is right and the negligence claim is not properly stated, then there would be no need to explore Sphere's policies and procedures, "computer systems and information technology infrastructure," and anything else related to Sphere's purported negligence. *See id.*

And, as Sphere will explain in its forthcoming motion to dismiss, the claims are not properly pleaded. Sphere already explained why the negligence claim is insufficiently pleaded in its motion to dismiss filed on November 9, 2023 (*see* Dkt. 48), including because there is no "common-law duty requiring a business to prevent third-party fraudsters from impersonating the business." *A.C.L. Computers & Software, Inc. v. United States*, 727 F. App'x 376, 376 (9th Cir. 2018).

The Core Breach of Contract Claim is truly frivolous. In brief, Gryphon seeks damages based on Sphere's breach of the MSA, but identifies no provision within the MSA Sphere allegedly breached. *See* Fourth Amended Counterclaim ¶¶ 108–115. Instead, Gryphon alleges a breach predicated on the allegation that Sphere "knew it was responsible for delivering the 71,000 mining machines to Core"—an oddly worded obligation indeed. *Id.* ¶ 111. There is no provision to that effect in the MSA. Nor is there any provision in any other agreement (and Gryphon does not cite any) that can be reasonably read to have delegated any obligation by Gryphon to Sphere to deliver 71,000 miners to Core—and, even if there were, no provision that would permit Gryphon (as opposed to Core) to bring a suit based on any breach. And even if Gryphon could establish a breach, the claim would still be dead on arrival because of the MSA's limitation of liability provision, which expressly "exclude[s] all consequential, incidental, indirect, special and punitive damages, and loss of profits"—*i.e.*, the exact damages Gryphon is seeking. *See* MSA at 4. Gryphon should not be permitted to use such deficient claims to impose unnecessary and burdensome discovery costs on Sphere.

Gryphon's cases do not militate in favor of a different result. *CT Espresso v. Lavazza Premium Coffees* did not issue a stay because there, unlike here, the "discovery [would] largely be the same" regardless of the resolution of the motion to dismiss. 2022 WL 1639485, at *2 (S.D.N.Y. May 24, 2022). Gryphon misrepresents *Williston v. Eggleston*, 410 F. Supp. 2d 274, 278 (S.D.N.Y. 2006) as "*holding* that a 'stay [of discovery] is appropriate only when resolution of a preliminary matter may dispose of the *entire* case.'" Letter at 2 (first emphasis added; second emphasis found in Letter). That sentiment was not part of the holding of *Williston*; rather, what the Letter describes as a holding is *Williston*'s parenthetical description of another case, *Association Fe Y Allegria v. Republic of Ecuador*, 1999 WL 147716, at *1 (S.D.N.Y. Mar. 16, 1999). The parenthetical

---

[1] Sphere is also moving to dismiss the implied covenant claim, in part, on the ground that it is duplicative of the Exclusive Provider Breach Claim, which Gryphon's Letter all but admits through its argument that discovery for the two claims would be duplicative.

description is undoubtedly dicta, not only because it is a parenthetical description of another case but also because it was not essential to the holding of *Williston*, which rejected an application for an interlocutory appeal not because the appeal did not have the potential to the end the litigation but based on a finding that there was "no substantial difference of opinion" as to the issue decided by the decision to be appealed. *Williston*, 410 F. Supp. 2d at 277–78 (observing that a favorable appeal for the defendant in fact "would terminate the litigation"). The court then reached the obvious conclusion that, because it had rejected the request for an appeal, it would reject a stay pending resolution of that appeal too. *Id.* at 278. Gryphon's mischaracterization is reflected in the table below:

| Letter at 2:<br>Gryphon's Description of *Williston* | *Williston*, 410 F. Supp. 2d at 278:<br>What The Case Actually Says |
|---|---|
| *Williston v. Eggleston*, 410 F. Supp. 2d 274, 278 (S.D.N.Y. 2006) (holding that a "stay [of discovery] is appropriate *only* when resolution of a preliminary matter may dispose of the entire case") (emphasis added). | For the same reasons that certification for interlocutory review is not appropriate here, the City Defendant has failed to make a showing of good cause for a stay. *See In re Currency Conversion Fee Antitrust Litig.*, MDL 1409, M21–95(WHP), 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (quoting *Chrysler Capital Corp. v. Century Power Corp.*, 137 F.R.D. 209, 209–10) (S.D.N.Y. 1991) (stating "that a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not appear to be without foundation in law'"); *Association Fe Y Allegria v. Republic of Ecuador*, No. 98–8650(BSJ), No. 98–8693(BSJ), 1999 WL 147716, at *1 (S.D.N.Y. Mar. 16, 1999) (stating that a stay of discovery is appropriate only when resolution of a preliminary matter may dispose of the entire case). |

As sometimes happens with dicta, *Williston*'s description of *Association Fe Y Allegria* appears to have been imprecise, as the court in *Association Fe Y Allegria* merely commented that Rule 26 of the Federal Rules of Civil Procedure "enable[s] the district court to stay discovery where resolution of a preliminary motion may dispose of the entire action" without purporting to exclude the possibility of a stay in the event of a partial motion to dismiss. 1999 WL 147716, at *1. In any event, this Court plainly has discretion to stay discovery in these circumstances, just as it did on October 27, 2023, without any objection from Gryphon for a period of months.

***

For the foregoing reasons, the Court should reject Gryphon's application for reconsideration of the Order.  We are available to discuss these issues at your Honor's convenience.

Respectfully submitted,

*/s/ Gregory N. Wolfe*