# Group Exhibit K

# K&L GATES

June 6, 2023

Gregory N. Wolfe
Dontzin Nagy & Fleissig LLP
980 Madison Avenue
New York, NY 10075

Brian D Koosed
Partner
brian.koosed@klgates.com

T +1 202 778 9204
F +1 202 778 9100

Re: *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, **1:23-cv-02954-PKC**

Dear Greg:

We write in response to your May 30, 2023 letter (the "Letter") regarding the referenced action. (Capitalized terms not defined herein have the meaning ascribed to them in the Letter.)

Initially, please note that Gryphon will not be responding to the settlement demands set forth in the Letter, which are not serious for a variety of reasons, including that the demands ignore entirely the "Limitation of Liability" provision of the MSA. *See, e.g.,* MSA, p. 3. Accordingly, and for the avoidance of doubt, this response is not being sent subject to Federal Rule of Evidence 408 or any other state or federal analogue.

With that said, we do believe it is necessary to respond to the portion of the Letter concerning your contention that "Despite Notice, Gryphon Has Persistently Failed to Cure Breaches—Or Articulate How It Can." Letter, p. 1. Put simply, Gryphon takes its obligations under the MSA extremely seriously, and Gryphon therefore takes any allegations that it has breached the MSA equally seriously. This is why Gryphon has repeatedly sought clarification directly from your client as to ***exactly what*** Gryphon has allegedly done to breach the MSA, and as to ***exactly how*** Gryphon can cure those alleged breaches.

At no point has your client ever provided ***any*** specificity on those points. And your recent Letter does not provide any further clarification. Indeed, your Letter—and your client's prior responses—all seem to go out of their way to avoid clarifying these points, contending instead that Sphere has provided such information at some prior, unspecified time. (Notably, if, in fact, this information has been previously been provided in a clear and fulsome manner, it should be no trouble to reiterate it, whether in your Letter or otherwise.)

Your Letter identifies three purported breaches of the MSA: (i) Gryphon allegedly "failed to deliver 'management services' under the MSA"; (ii) Gryphon allegedly "did not have the internal controls and policies and procedures needed to be a custodian of Sphere's digital assets"; and (iii) Gryphon allegedly "was skimming off the top by not paying Sphere what it was due under the MSA." Letter, p. 1.

As with every other communication from you or your client on these topics, your Letter fails to specify *what* Gryphon did not do, but should have done, that constitutes Gryphon's alleged "fail[ure] to deliver 'management services' under the MSA." Nor does your Letter specify what "internal controls and policies and procedures" Gryphon should have had, but did not have, "to be a custodian of Sphere's digital assets." Likewise, your Letter does not specify what funds Sphere should have received, but did not receive, because of Gryphon's alleged "skimming off the top" (which, for the record, is complete nonsense).

My client and my colleagues and I have repeatedly asked for this basic level of detail because, as Sphere well knows, there is no way Gryphon can actually cure any of these purported breaches unless and until Sphere specifies what it believes constitutes a breach, and thus what specific actions are necessary to fix the alleged breaches. In this regard, your Letter's repeated echoing of your client's position—essentially, that Gryphon did not move to dismiss Sphere's breach of contract claim, so Gryphon somehow must know what the breaches are and how to cure them—reflects inexperience in the litigation process (which we assume is a refrain your client is pushing, and not one that you have adopted in earnest). As an accomplished lawyer, you well know the extremely low bar for pleading a breach of contract claim under the Federal Rules of Civil Procedure. That is far short of the specificity that the parties obviously contemplated—and expressly bargained for—in agreeing to the MSA's cure provisions.

In short, the parties expressly granted each other a cure right in the MSA. Your Letter repeats your client's long-standing refusal to actually identify what Gryphon supposedly did wrong, and thus how it can be cured. Your and your client's failure to identify these basic facts effectively deprives Gryphon of its contractually bargained-for cure right, thereby rendering it a nullity. That is not what the parties agreed to under the MSA, and it is not what New York law allows under these circumstances. Sphere must provide Gryphon with the specificity required to allow Gryphon to exercise its cure rights under the MSA. Gryphon reserves all rights in the event that Sphere does not do so, including the right to seek relief from the Court in the coming months.

We expect, and look forward to, a substantive response to this letter and as it concerns Gryphon's contractually bargained-for requests. Thank you.

Very truly yours,

/s/ *Brian D. Koosed*

Brian D. Koosed

cc: Desiree Moore (*via email only*)
Andrew Hinkes (*via email only*)

2

# K&L GATES

June 22, 2023

Gregory N. Wolfe
Dontzin Nagy & Fleissig LLP
980 Madison Avenue
New York, NY 10075

Brian D Koosed
Partner
brian.koosed@klgates.com

T +1 202 778 9204
F +1 202 778 9100

Re: *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, 1:23-cv-02954-PKC

Dear Greg:

We write to follow up on our June 6, 2023 letter, as well as to address a troubling new development caused by your client's most recent actions in violation of the MSA. (Capitalized terms not defined herein have the meaning ascribed to them in our June 6, 2023 letter.)

*First*, it has now been more than two weeks since our June 6, 2023 letter requesting that your client specify ***exactly what*** Gryphon has allegedly done to breach the MSA, and ***exactly how*** Gryphon can cure those alleged breaches, with no response at all from Sphere. As we noted in our June 6, 2023 letter, the MSA expressly grants Gryphon the right to cure any alleged breaches of the MSA. For that right to have any meaning at all, Sphere must specify what breaches it actually alleges, and how Gryphon may, in Sphere's view, cure them. Yet still, months into the parties' dispute, Sphere has never provided such specificity, either before or since our June 6 letter. This is contrary to the MSA and effectively deprives Gryphon of its contractually bargained-for cure rights. (We reiterate again that any notion that Gryphon is somehow aware of the alleged breaches because Sphere potentially managed to state a claim for breach of contract under the Federal Rules of Civil Procedure is unserious—and we are confident no court would allow Sphere to rest on its bare notice pleading as a sufficient articulation of the alleged breaches at issue in the context of the MSA's more specific cure provision.) Please immediately provide the requested specificity to which Gryphon is entitled, so that Gryphon may exercise its cure rights under the MSA.

*Second*, and even more troubling, we now have express and articulated confirmation that Sphere has diverted the proceeds of its Bitcoin mining operations to a separate digital wallet that is not operated or controlled by Gryphon (and that Gryphon was not even aware of). This is in direct violation of the MSA, which expressly provides:

- "Provider [Gryphon] *shall at all times control the digital wallet, which shall be a wallet address selected by Provider [Gryphon] on behalf of Customer [Sphere]* for storing digital assets (the "**Digital Wallet**"). . . ."

- "Provider [Gryphon] *shall pay directly from the Digital Wallet on behalf of Customer all operating costs*, inclusive of electricity and any profit share to hosts, such payments to occur prior to calculation and payment of the Management Fee."

MSA, p. 2 (italicized emphasis added).

This language is crystal-clear: Gryphon, not Sphere, "shall at all times control" the Digital Wallet, which "shall be a wallet address selected by" Gryphon. MSA, p. 2. Sphere's conduct—establishing pooling relationships with Foundry, with the proceeds of Sphere's mining operations re-directed to a separate wallet controlled by Sphere, not Gryphon—is in direct and flagrant breach of these MSA provisions.

Further, Sphere's actions in breach of the MSA directly prevent Gryphon from fulfilling its obligations to "pay directly from the Digital Wallet on behalf of [Sphere] all operating costs." MSA, p. 2. Indeed, as we have repeatedly advised since late May 2023, Sphere's rolling requests that Gryphon liquidate Bitcoin for Sphere would put Sphere in an untenable position where Gryphon cannot pay Sphere's debts as those debts become due. Sphere's recent actions in establishing its own digital wallet not controlled by Gryphon only exacerbate Sphere's inability to pay its debts, because: (i) Gryphon is obligated to pay Sphere's debts from the Digital Wallet that Gryphon established and maintains for Sphere pursuant to the MSA; and (ii) Sphere is now ensuring that that Digital Wallet is effectively deprived of Digital Assets going forward, thus rendering it incapable of being used to pay Sphere's debts.

Gryphon demands that Sphere immediately re-direct all proceeds of its mining operations back to the Digital Wallet that Gryphon established and maintains for Sphere, as the MSA expressly requires. Sphere's failure to do so will result in irreparable harm to Sphere, as Sphere will be unable to have its debts paid as required by the MSA, thereby allowing its creditors to potentially put Sphere into bankruptcy (and potentially exposing Sphere's officers to personal liability as well).

For the avoidance of doubt, Sphere's failure to immediately re-direct the proceeds of its mining operations back to the Digital Wallet that Gryphon established and maintains for Sphere will further irreparably harm Gryphon. As Sphere well knows, the mining industry is a small and discrete community, and everyone within it knows that Gryphon is obligated, under the MSA, to pay Sphere's operating costs on Sphere's behalf. By operating its own digital wallet in breach of the MSA, Sphere is damaging Gryphon's reputation, as the industry may well soon (wrongly) impute Sphere's inability to pay its debts to either Gryphon's mismanagement of Sphere, or to Gryphon's own financial issues. Either way, this would create a false impression within the industry that would cause Gryphon enormous and permanent damage to its reputation, which monetary damages would nowhere come close to compensating. Likewise, Sphere's actions will cause irreparable harm to Gryphon in that it will necessarily force a shut-down of the miners, which would lead to those miners being kicked out of their host facilities (and/or confiscation of the miners). This would cause significant disruption to Gryphon's business operations and is simply untenable—and certainly cannot be compensated monetarily.

For all these reasons, Sphere must cease its breaches of the MSA immediately and restore Gryphon's control over Sphere's Digital Wallet, as the MSA expressly requires.

We expect, and look forward to, a substantive response to this letter and as it concerns Gryphon's contractually bargained-for rights, and Sphere's breaches thereof. Gryphon reserves all rights in the event of Sphere's failure to respond or otherwise. Thank you.

                                              Very truly yours,

                                              /s/ *Brian D. Koosed*

                                              Brian D. Koosed

cc:      Desirée Moore  (*via email only*)
          Andrew Hinkes  (*via email only*)

3

# K&L GATES

August 1, 2023

Brian D. Koosed
brian.koosed@klgates.com
202-778- 9204

**By E-mail**

Gregory N. Wolfe
Dontzin Nagy & Fleissig LLP
980 Madison Avenue
New York, New York 10075
(212) 717-2900
greg@dnfllp.com

Re:   *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, No. 1:23-cv-02954

Dear Mr. Wolfe:

As you know, we are counsel to Gryphon Digital Mining, Inc. ("Gryphon").

Initially, we note that Sphere has utterly failed to respond to the explicit requests, made in our prior letters dated June 6, 2023 and June 22, 2023, that Sphere specify *exactly what* Gryphon has allegedly done to breach the MSA, and *exactly how* Gryphon can cure those alleged breaches, so that Gryphon can exercise its cure rights under the MSA. Sphere's inability to specify those breaches is telling and Gryphon continues to reserve all rights on those issues.

This letter further responds to your letter dated July 19, 2023, regarding purported deficiencies in Gryphon's Objections and Responses to the First Set of Requests for Production of Documents (the "RFP Responses") and the First Set of Interrogatories (the "Interrogatory Responses"), served on Sphere 3D Corp. ("Sphere") on June 8, 2023.

This response conforms to the organization of your July 19 letter. Accordingly, both the headings and numbering system correspond to the headings and numbering system in your letter. Gryphon includes these merely for ease of reference in addressing the various items in your July 19 letter. For the avoidance of doubt, Gryphon disputes Sphere's characterizations of the RFP and Interrogatory Responses writ large.

I.   **Improper Objections Seeking to Limit Gryphon's Discovery Obligations to Documents and Information in Its Actual Possession, as Opposed to Its Control**

*Through its objections, Gryphon has stated it will not produce documents or information unless in Gryphon's actual possession. E.g., General Objection No. 7 of the Interrogatory and*

*RFP Responses; Instructions And Definitions Objection No. 2 of the Interrogatory Responses (seeking to limit the definition of "You," "Your," and "Gryphon" to Gryphon only); Definitions Objection No. 2 of the RFP Responses (same); Instructions Objection Nos. 2–3 of the RFP Responses (same); Response to RFP No. 1 (same).*

*These objections are improper. Gryphon is obligated to produce documents and provide information in its possession, custody, or control, including without limitation documents and information in the possession of a non-party. See In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 195 (S.D.N.Y. 2007) ("'[C]ontrol' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action."), aff'd sub nom.* Gordon Partners v. Blumenthal*, No. 02 CIV 7377 LAK, 2007 WL 1518632 (S.D.N.Y. May 17, 2007). Please confirm that Gryphon will withdraw such objections and produce documents and provide information in its possession, custody, or control.*

**Response**:  We disagree with your characterization of Gryphon's objections as stating that Gryphon "will not produce documents or information unless in Gryphon's actual possession."  For example, General Objection No. 7 of the Interrogatory Responses and the RFP Responses clearly states that Gryphon objects to the extent Sphere's interrogatories or requests for production seek documents or information "not in the possession, custody, *or control* of Gryphon."  (Emphasis supplied.)  Limiting the definition of the terms "You," "Your" and "Gryphon" to Gryphon only, and clarifying that Gryphon responds to Sphere's interrogatories and requests for production on behalf of itself and not on behalf of any third party, does not in any way state or imply Gryphon is objecting to the production of documents "unless in Gryphon's actual possession."  Nevertheless, and for the sake of your clarity, Gryphon confirms that, in accordance with its obligations under the Federal Rules of Civil Procedure, it will produce documents and provide information within its possession, custody, or control.

## II. Improper Objection to Form Interrogatories

*Pursuant to Local Rule 33.3, Sphere served two form interrogatories requesting information about custodians and repositories reasonably likely to possess relevant information and documents. Gryphon interposed numerous objections, none of which are proper, given that the interrogatories are called for by the Local Rule. Please confirm that Gryphon is not withholding any relevant information based on its objections.*

*Given the content of Gryphon's responses, it does not appear that they were provided in good faith, as they omit apparent repositories of documents or communications. For example, Gryphon lists "Sphere's facilities" as holding relevant discovery, but not Gryphon's. Please confirm that the responses are comprehensive.*

2

**Response**:  We disagree that Gryphon's objections to Interrogatory Nos. 1 and 2 are not "proper."  For example, Local Rule 33.3 provides that at the commencement of discovery a party may serve interrogatories "seeking names of witnesses with knowledge of information relevant to the subject matter of the action . . . and the existence, custodian, location and general description of relevant documents."  But such interrogatories should, as always, be considered within the particular context of each case and may become objectionable depending on the specific facts and circumstances of the case and claims asserted therein.  Here, Sphere's purported claims involve and/or implicate numerous non-party companies, employees, and individuals who may possess relevant knowledge or documents.  As such, there likely are persons with relevant knowledge or documents not controlled by Gryphon (including persons Gryphon may not even be aware of at the present time).  Gryphon is not in a position at this time to identify "each" such person, let alone identify the scope of "each" such person's knowledge as called for by Interrogatory No. 1.  Because it cannot identify each person with knowledge, Gryphon also cannot identify each potential repository of relevant documents.

Moreover, in this case (which again involves and/or implicates numerous non-parties and encompasses the entirety of the parties' commercial agreement and relationship), the identification of "each" person and "all" repositories of documents is overly broad, unduly burdensome, and not proportional to the needs of the case because there are countless persons who may potentially have some level of knowledge or documents (whether small or large or otherwise) rendering identification of each such person impracticable, if not impossible.

That said, Gryphon confirms that it is not withholding any information in its possession, custody, or control on the basis of its objections to Interrogatory Nos. 1 and 2.  Gryphon further confirms that in response to Interrogatory Nos. 1 and 2 it has endeavored to provide Sphere with a comprehensive list of individuals Gryphon believes may have relevant knowledge and repositories of relevant documents.  With regard specifically to your concern that Gryphon's "facilities" are not identified, Gryphon does not have "facilities" where documents may be located; rather, relevant documents are believed to be in the possession of, among others, Gryphon's individual employees and largely stored digitally.

**III.     Improper Boilerplate Objections**

*Throughout the Interrogatory Responses and RFP Responses, Gryphon interposes boiler plate objections, which is wholly improper. E.g., Fischer v. Forrest, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017).*

*By way of illustration:*

- *In General Objection No. 6 of the RFP Responses, Gryphon objected "to the extent [the] Requests, Instructions, and Definitions are overly broad, unduly burdensome and*

3

*oppressive, and purport to require the search for and production of documents or information that is not relevant to any claim or defense and is not proportional to the needs of the case. Gryphon is withholding responsive documents on the basis of this objection." Gryphon includes a parallel objection in its Interrogatory Responses.*

- *Gryphon interposed virtually identical objections to each RFP Request, including based on overbreadth, undue burden, and proportionality, but without elaboration or particularity.*

- *In General Objection No. 3 of the Interrogatory Responses, "Gryphon objects generally to the Interrogatories, and to the Instructions and Definitions set forth or incorporated therein, on the basis that, taken collectively, they render the Interrogatories duplicative, unreasonably burdensome, vexatious, and oppressive."*

- *In General Objection No. 9 of the Interrogatory Responses, "Gryphon objects generally to the Interrogatories, and to the Instructions and Definitions set forth or incorporated therein, to the extent those Interrogatories, Instructions, and Definitions are vague, ambiguous, or incomprehensible, contain terms that are not adequately defined, or otherwise lack sufficient precision, and thereby require Gryphon to engage in conjecture as to their meaning."*

- *In General Objection No. 10 of the Interrogatory Responses, "Gryphon objects to each of the Interrogatories, and to the Instructions and Definitions set forth or incorporated therein, to the extent those Interrogatories, Instructions, and Definitions include legal conclusions or assumptions."*

*Please confirm that Gryphon will withdraw the foregoing General Objections and all boilerplate objections based on overbreadth, undue burden, and proportionality*

**Response**: We disagree that the general objections in Gryphon's RFP Responses and Interrogatory Responses are "improper." General objections are not prohibited and, in any event, Gryphon does not rely solely on its general objections in its RFP Responses. Rather, Gryphon additionally asserts applicable, specific objections to each of Sphere's individual Requests which state with specificity the basis for the objection, in accordance with Federal Rule of Civil Procedure 34(b)(2)(B). Gryphon also states whether responsive documents are being withheld on the basis of each general and specific objection, again consistent with Gryphon's obligations under the Rules.

With respect to Sphere's interrogatories, Gryphon similarly asserts both general *and* specific objections and provides substantive responses consistent with those objections. As such, Gryphon's use of general objections and its incorporation of those objections into its responses to specific requests for production or interrogatories is not improper. Gryphon declines Sphere's request that it withdraw those objections.

4

### IV. Improper Refusal to Search for Documents Potentially Covered by a Privilege

*In its RFP Responses, Gryphon objected to each RFP "to the extent it such seeks documents or information protected by the attorney-client privilege, work-product doctrine, or any other privilege or immunity afforded by law" and further states that it "is not searching for such documents and therefore is without sufficient knowledge or information to determine whether responsive documents are being withheld on the basis of this objection." E.g., Specific Objections to RFP No. 1.*

*Gryphon, however, may not decline to search for documents merely because they may be privileged, which it cannot possibly know until it reviews the document. Rather, Gryphon may withhold such documents, as reflected on its privilege log. Please confirm that Gryphon will withdraw these objections.*

**Response**: Gryphon is not specifically undertaking a search for documents protected by the attorney-client privilege, work-product doctrine, or any other privilege or immunity afforded by law, as opposed to a general search for responsive documents. To the extent Gryphon has agreed to search for documents in its RFP Responses, it will conduct a reasonable search for such documents, produce relevant, non-privileged documents (if any), and separately identify any documents withheld from production on the basis of any privilege in a privilege log in accordance with Federal Rule of Civil Procedure 26(b).

### V. Improper Vagueness Objections

*Throughout, Gryphon has interposed improper vagueness objections. At the outset, even if terms were ambiguous, it was incumbent on Gryphon to provide reasonable constructions and produce documents accordingly, which it did not do in a single instance. But the terms were not ambiguous. For example, Gryphon objected to the following as vague and ambiguous, which have ordinary meanings intelligible to any reasonable person:*

- *"negotiation" (see RFP Response No. 2)*

- *"efforts" (see RFP Response Nos. 4–5)*

- *"interactions" (see RFP Response No. 6)*

- *"calculation" (see RFP Response Nos. 9–10)*

- *"instruction" (see RFP Response No. 11)*

5

- *"revenues" (see RFP Response Nos. 20–21)*

- *"investigation" (see RFP Response No. 15)*

- *"business relationships" (see RFP Response No. 14)*

- *"policies" (see RFP Response No. 3)*

- *"procedures" (see RFP Response No. 3)*

- *"handling" (see RFP Response No. 3)*

*It is difficult to see how objections to terms like "negotiation" can be seen as made in good faith. Other terms have clear meanings in the context of the case:*

- *Gryphon objected to the term "**services**" as vague. See RFP Responses Nos. 1, 12–13. The term is not vague, as it is taken from the Master Services Agreement between the parties dated August 19, 2021 (the "MSA").*

- *Gryphon objected to the phrase "**ensure the operation of**" as vague. See RFP Responses Nos. 7–8. There is nothing, however, vague about asking for the production of documents related to Gryphon ensuring the operation of miners.*

- *Gryphon objected to the term "**strategies**" as vague. See RFP Responses Nos. 16–17, 24–25. Given that Gryphon is charged with managing many aspects of Sphere's business, however, there is nothing vague about that term.*

*Please confirm Gryphon will withdraw its vagueness objections; to the extent it intends to maintain them, it must provide reasonable constructions that Sphere can evaluate.*

**Response**: We disagree that any of Gryphon's objections based on vagueness or ambiguity are "improper" or that Gryphon is under any obligation to supply a definition or construction to the vague and ambiguous terms used by Sphere in its own discovery requests. The terms identified above, even within the broader context of the request or even the case itself, have more than one singular, "ordinary meaning[ ] intelligible to any reasonable person." Rather, each of the terms is susceptible to more than one reasonable interpretation, each of which may significantly alter the scope of documents requested. Nevertheless, in an effort to constructively move forward, Gryphon is willing to meet and confer with Sphere at a mutually convenient time to discuss Sphere's understanding of the terms Gryphon has identified as vague and ambiguous.

6

## VI. Improper Refusal to Produce Documents on the Ground that They Contain Confidential Information

*Gryphon objected to numerous RFPs on the basis that each "seeks the production of documents that comprise or reveal trade secrets or confidential proprietary and business information of Gryphon, where any purported marginal benefits of production of the requested documents are outweighed by the burden associated with producing such highly sensitive materials." See, e.g., RFP Responses Nos. 5, 13, 21; see also General Objection No. 8 of the Interrogatory Responses. These are not proper objections because there is a Protective Order negotiated by the parties and so-ordered by the Court in place, which provides adequate protections to Gryphon. Please confirm that Gryphon will withdraw these objections.*

**Response**: We disagree that the identified objections are "not proper." Notwithstanding the Protective Order, some documents may be so sensitive and bear such little relevance to the case that any purported benefit of production is outweighed by the burden of producing such material, even if dissemination of the material would be limited by the Protective Order in this case. Gryphon will not withdraw these objections. To the extent Sphere believes this is improper, Gryphon is willing to meet and confer on the topic and consider, among other things, seeking a revised Protective Order with Attorneys' Eyes Only protections, if necessary.

## VII. Improper Refusal to Search All Relevant Repositories

*In General Objection No. 5 to the RFP and Interrogatory Responses, Gryphon stated that it will not search for documents or provide information that "is not reasonably accessible because of undue burden, undue cost, and/or technological complication, and/or that is not reasonably specified by the Request." While Sphere is willing to accept that certain repositories may not be reasonably accessible, Gryphon must specify such repositories. Given that this lawsuit covers recent events, it would surprise Sphere if any repositories were not reasonably accessible.*

**Response**: Gryphon will inform Sphere of any known repository of electronically stored information or data that may contain documents Gryphon has agreed to search for and produce and which Gryphon believes to be not reasonably accessible because of undue burden, undue cost, and/or technological complication.

## VIII. Improper Effort to Limit the Scope of Documents Responsive to RFP No. 2, Which Seeks Discovery Related to the MSA

*RFP No. 2 seeks the production of documents and communications "related to the MSA." In response, Gryphon proposes to limit its search to documents and communications "relating to*

7

*the negotiation and execution of the" MSA. Gryphon, however, makes no effort to explain why the limited search is proper; indeed, the MSA is critical to the case. Gryphon must search for discovery responsive to RFP No. 2 as written.*

**Response**: As written, Request No. 2 is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case to the extent it purports to seek the production of "all" documents and communications even tangentially "related to" the Master Services Agreement (the "MSA"), potentially encompassing every single document or communication ever generated that relates in any way to, *inter alia*, Sphere, the MSA, the parties' commercial relationship, and/or services provided under the MSA, regardless of whether such documents or communications are relevant to any claim or defense actually asserted in this case. Indeed, Gryphon specifically objected to Request No. 2 on the ground that it is not tailored to seek the production of documents or information relevant to any specific claim or defense in the case. Gryphon is not searching for documents responsive to Request No. 2 as written, but will agree to meet and confer with Sphere for the purpose of coming to a mutually agreeable understanding as to the scope of Request No. 2.

### IX. Improper Effort to Limit the Scope of Documents Response [sic] to RFP No. 3, Which Seeks Discovery Into Gryphon's Policies and Procedures

*RFP No. 3 seeks the production of documents and communications "related Your [sic] internal policies and procedures." In response, Gryphon proposes to limit its search "documents and/or communications sufficient to show its internal policies and procedures governing the maintenance, control and transfer of digital assets." Gryphon, however, makes no effort to explain why the limited search is proper. Communications related to Gryphon's interpretation of its policies and procedures and any updates thereto are relevant. Similarly, policies and procedures related to, for example, Gryphon's accounting, cybersecurity, and protective measures are plainly relevant. Gryphon must search for discovery responsive to RFP No. 3 as written.*

**Response**: As written, Request No. 3 is overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case to the extent it purports to seek the production of "all Documents and Communications related to [Gryphon's] internal policies and procedures," regardless of whether those policies and procedures are relevant to the claims and defenses actually asserted in this case. Indeed, Gryphon specifically objected to Request No. 3 on the ground that it is not tailored to seek the production of documents or information relevant to any specific claim or defense in the case. Even in your own letter you implicitly acknowledge that only certain policies and procedures may be relevant by specifically referencing "policies and procedures related to . . . Gryphon's accounting, cybersecurity, and protective measures . . . ." Sphere has made no effort to explain how or why

8

each and every policy and procedure—let alone "all Documents and Communications related to" each and every policy and procedure—is relevant. Gryphon is not searching for documents responsive to Request No. 3 as written, but, again, will agree to meet and confer with Sphere at a mutually convenient time for the purpose of coming to a mutually agreeable understanding as to the scope of Request No. 3.

X. **Improper Effort to Limit the Scope of Documents Response [sic] to RFP Nos. 9-10, Which Seek Discovery into Gryphon's Failure to Make Proper Payments to Sphere Due Under the MSA**

*RFP No. 9 seeks the production of documents and communications related to the "calculation of any payment or consideration due to Sphere under the MSA." In response, Gryphon proposes to limit its search to documents "sufficient to show how Gryphon determines the amount of any payment or consideration paid to Sphere." RFP No. 10 seeks parallel discovery into Gryphon's calculations of consideration due to itself under the MSA and Gryphon seeks to limit its search in the same way.*

*Gryphon, however, makes no particularized effort to explain why the limited search is proper. The search cannot be properly limited to a mere showing of the method by which Gryphon calculates payments due Sphere or itself. Rather, Gryphon must produce any documents and communications related to all calculations of payments owed Sphere, a central issue in this case given the allegations that Gryphon did not properly make payments to Sphere. Gryphon must search for discovery responsive to RFP No. 9 as written.*

**Response**: Gryphon disputes the relevance and purported benefit (if any) of the production of each and every document and communication "related to the calculation of any payment or consideration due to" Gryphon or Sphere under the MSA. Moreover, Gryphon has requested leave to move to dismiss Sphere's claims to the extent they are based on allegations that Gryphon "did not properly make payments to Sphere." In the event that leave is granted and Gryphon's motion is granted, documents and communications relating to payments, or the calculation of payments, to Sphere or Gryphon will be completely irrelevant. As such, Gryphon is not searching for documents responsive to Request Nos. 9-10 as written, but will agree to meet and confer with Sphere at a mutually convenient time in the hopes of coming to a mutually agreeable understanding as to the scope of Request Nos. 9-10 given the current procedural posture of the case.

XI. **Improper Objection to RFP No. 19 Seeking Documents Related to How Gryphon Treats Its Own Digital Asset Repositories as Compared to How It Treated Sphere's**

*In RFP No. 19, Sphere requested documents and communications "related to any wallets or other similar repositories maintained for Gryphon's benefit." Without asserting any*

9

*particularized objection, Gryphon has flatly refused to produce discovery responsive to this RFP. This is improper. Among other reasons, at issue in the litigation is Gryphon's treatment of Sphere's wallet—i.e., the repository for Sphere's digital assets. It is fair to assess how Gryphon treats its own digital assets and whether it applied the different standards to Sphere's.*

**Response**:  The documents and communications sought under Request No. 19 are wholly irrelevant to any claim or defense in this case.  Any services or obligations owed by Gryphon to Sphere, including the management of any digital wallet or similar repository of digital assets maintained by Gryphon for Sphere's benefit, are governed entirely by an express, written agreement between the parties, *i.e.*, the MSA.  Documents and communications related to wallets or repositories of digital assets maintained for the benefit of Gryphon have absolutely no bearing or relevance whatsoever with respect to any claim or defense in this case, including Sphere's purported claims concerning the "treatment of Sphere's wallet."  Gryphon is not searching for and will not produce such documents and communications.  To the extent you disagree, Gryphon is willing to discuss these items with you at a mutually convenient time during which Gryphon expects Sphere would specifically articulate why, among other things, Gryphon's individual wallets—separate and apart from any wallets used to perform Gryphon's duties under the MSA—are relevant based on the claims and defenses in this case.

## XII. Improper Objection to RFP No. 21 Seeking Documents Related to the Revenues Gryphon Generated

*In RFP No. 21, Sphere requested documents and communications "related to any digital assets or other revenues generated for Gryphon's benefit." Without asserting any particularized objection, Gryphon has flatly refused to produce discovery responsive to this RFP. This is improper. Among other reasons, Sphere is entitled to explore how Gryphon treated its own business and whether it applied a different standard when fulfilling its obligations under the MSA.*

**Response**:  The documents and communications sought under Request No. 21 are wholly irrelevant to any claim or defense in this case.  Any services or obligations owed by Gryphon to Sphere are governed entirely by an express, written agreement between the parties, *i.e.*, the MSA.  Documents and communications related to "any digital assets or other revenues generated for Gryphon's benefit" have absolutely no bearing or relevance whatsoever with respect to any claim or defense in this case.  Gryphon is not searching for and will not produce such documents and communications.  To the extent you disagree, Gryphon is willing to discuss these items with you at a mutually convenient time during which Gryphon expects Sphere would specifically articulate why, among other things, Gryphon's individual digital assets—separate and apart from any digital assets connected with the MSA—are relevant based on the claims and defenses in this case.

10

Please advise as to the earliest date and time at which you are available to meet and confer concerning the above.

Sincerely,

*/s/ Brian D. Koosed*
Brian D. Koosed

cc: Andrew M. Hinkes
Desirée F. Moore
Matthew A. Alvis
Tibor L. Nagy
Maxine Peskens

11