

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T +1 212 918 3000
F +1 212 918 3100
www.hoganlovells.com

March 25, 2024

**Via ECF**

Hon. P. Kevin Castel
U.S. District Court, Southern District of New York
500 Pearl St.
New York, NY 10007

      Re:     <u>*Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*</u><u>, 1:23-cv-02954-PKC</u>

Dear Judge Castel:

     We represent Gryphon Digital Mining, Inc. ("Gryphon") in the above-captioned matter. The next conference presently scheduled before the Court is for September 30, 2024. Pursuant to Rule 3.A.iii of Your Honor's Individual Practices, Gryphon respectfully submits this letter requesting permission to file a motion seeking prejudgment attachment, pursuant to Fed. R. Civ. P. 64(a) and New York Civil Practice Laws and Rules ("CPLR") §§ 6201 and 6212, of the $10 million in equity proceeds recently received by Sphere from a settlement with non-party Core Scientific Inc. ("Core") (the "Core Equity Proceeds").

     The basis for the attachment motion, in summary, is that (1) Gryphon's claims against Sphere in this case are very strong and are based primarily on the undisputed fact, admitted by Sphere, that it entered into multiple agreements with third parties in violation of the parties' Master Services Agreement ("MSA") in which the parties agreed that Gryphon would be Sphere's exclusive manager for all such agreements; (2) the damages from Sphere's breach of the MSA are conservatively calculated at no less than $30 million; (3) Sphere has acknowledged in public filings and in pleadings in this case that it is in danger of bankruptcy; (4) the Core Equity Proceeds are likely the only source of payment of a judgment in this case; and (5) under the applicable CPLR provisions, an attachment of the Core Equity Proceeds is warranted.

    **I.**     **<u>Background</u>**

    **A. Sphere Entered Into At Least Four Separate Agreements – All of Which Are a Violation of the Parties' Contract**

   It is undisputed that, beginning in 2022, Sphere entered into at least four hosting agreements with other mining providers. The additional hosting agreements entered into by Sphere are a blatant violation of the Exclusivity and Management Fee Clauses of the Master Services Agreement (the "MSA") entered by Gryphon and Sphere on August 19, 2021, and subsequently amended on

1

December 29, 2021.[1]  Indeed, in its most recent annual report for fiscal year 2023, Sphere admitted to entering into these additional agreements, despite its obligations under the MSA.  Sphere's admissions include the following:

- On February 8, 2023, Sphere entered into a hosting agreement with Lancium FS 25, LLC, a mining hosting provider, for hosting services independent of those arranged by Gryphon. *See* FY 2023 Form 10-K at F-31.

- On June 3, 2023, Sphere entered into a hosting agreement with hosting Compute North LLC, a hosting provider, for colocation and other hosting services independent of those arranged by Gryphon. *Id.*

- On April 4, 2023, Sphere entered into a hosting agreement with Rebel Mining Company, LLC, a hosting provider, for hosting services independent of those arranged by Gryphon. *Id.* at F-30.

- On October 18, 2023, Sphere entered into a hosting agreement with Joshi Petroleum, LLC for hosting services independent of those arranged by Gryphon. *Id.* at 4.

Each of the third-party hosting agreements that Sphere admits to entering into without the consent, approval, or involvement of Gryphon is a breach of the Exclusivity and Management Fee Clauses of the Sphere MSA. The hosting agreements entered into by Sphere, among other violative conduct, forms the basis for Gryphon's breach of contract counterclaim against Sphere (Count II) (*See* ECF No. 65), which remains live in this action. *See* ECF No. 69.

### B. Sphere Has Admitted That Its Financial Condition Is Rapidly Deteriorating

Over the last four months, Sphere has revealed its growing financial troubles.  On November 28, 2023, in a filing in the Core Bankruptcy Action, Sphere's counsel acknowledged that the company was operating with a $200 million net loss and that recent losses had overtaken revenue by a two-to-one margin. (*See* Case 23-90345, No. 1476, at ¶ 8).  On January 29, 2024, following a premotion letter to the Court filed by Gryphon, Sphere claimed it could not participate in a meet-and-confer with Gryphon's counsel because **Sphere did not have sufficient resources to pay its counsel to attend the call**.[2]

Finally, on March 13, 2024, Sphere issued its 2023 annual report on Form 10-K (the "2023 Annual Report"), wherein Sphere disclosed, for the first time, the full extent of the company's financial desperation.  Specifically, Sphere's disclosed the following in the 2023 Annual Report:

- Substantial doubt exists regarding Sphere's ability to continue as a going concern within the next twelve months. *Id.* at 22.

- Sphere's cash on hand may not be sufficient to fund its current operations based on the proceeds generated by the company's mining operations. *Id.*

---

[1] The MSA's Exclusivity Clause provided that "[Gryphon] shall be [Sphere's] ***exclusive provider*** of any and all management services for ***all blockchain and cryptocurrency-related operations*** including but not limited to services relating to all mining equipment owned, purchased, leased, operated, or otherwise controlled by Customer and/or its subsidiaries and/or affiliates at any location (collectively, the 'Services')." (emphasis added).

[2] *See* ECF No. 64, at 1 ("Gryphon asked Sphere to 'discuss a discovery plan.' Ex. 1. Sphere responded that a call was premature because 'there is a discovery stay in place' and that it did not want to unnecessarily expend client 'resources' given that they are 'thin.'").

- There are doubts as to whether Sphere can maintain compliance with the NASDAQ listing requirements. *Id.*

- There is a risk that Sphere may be forced to seek bankruptcy protecting or be subject to an involuntary bankruptcy petition. *Id.* at 35.

- Sphere admits that its current asset balance, as of December 31, 2023, is made up almost exclusively of the $10 million in Core Equity Proceeds. *Id.*

## II. Legal Standard

Federal Rule of Civil Procedure 64 authorizes the use of remedies available under state law that provide for "seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). A federal court considering a Rule 64 motion applies the law of the state where the court is located. *Id.*

Under New York law, §§ 6201 and 6212 govern the issuance of an order of attachment. Section 6201 states that "[a]n order of attachment may be granted in any action, except a matrimonial action," where the moving party seeks a money judgment and at least one of the five statutory grounds exists. § 6201. The statutory grounds authorizing an order of attachment include where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." *Id.*

To obtain prejudgment attachment under New York law, in addition to satisfying the requirements of § 6201, the moving party must also satisfy the requirements of § 6212. Section 6212 requires the moving party to show that (1) there is a cause of action for money judgment; (2) it is probable that the claim will succeed on the merits; (3) grounds for attachment under § 6201 exist; and (4) the amount demanded exceeds all counterclaims known to Plaintiffs. § 6212(a).

## III. Discussion

### A. Gryphon Meets the Requirements of § 6201 for The Court to Order Prejudgment Attachment of the Core Equity Proceeds

Gryphon meets the statutory requirements of § 6201(1) because it is undisputed that Sphere is a foreign corporation incorporated under the laws of Ontario, Canada, and is not qualified to do business in New York. *See* ECF Nos. 10, at 2; 36, at 12. Thus, a proper statutory basis exists for this Court to authorize prejudgment attachment of the Core Equity Proceeds.

### B. Gryphon Meets All Four Requirements for Prejudgment Attachment Under § 6212

Gryphon also meets the four requirements under § 6212 for the Court to order prejudgment attachment of the Core Equity Proceeds in this action.

*First*, Gryphon maintains a cause of action against Sphere for a money judgment. Count II, which is a breach of contract claim asserted by Gryphon against Sphere, seeks an award of damages and reasonable attorneys' fees and costs in connection with Sphere's breach of the Exclusivity and Management Fee Clauses of the MSA. *Id.* at 28, 52.

*Second*, Gryphon is likely to prevail on the merits of its contract claim against Sphere. To meet this requirement, the moving party must show that it is more likely than not that it will succeed on the merits of his claim. *In re Hypnotic Taxi LLC*, 543 B.R. 365, 372-73 (Bankr. E.D.N.Y. 2016). In evaluating whether this standard has been met, a court must afford the plaintiff the benefit of all

3

legitimate inferences than can be drawn in plaintiff's favor. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004).

Under New York law, to state a claim for breach of contract, a party must show (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) the other party's breach resulted in damages. *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000).

Here, it is undisputed that Gryphon and Sphere entered into the MSA, which is a valid and binding contract, wherein they agreed that Gryphon would act as the exclusive provider of services to Sphere. *See* ECF No. 67, at 5. Further, Gryphon performed in accordance with the MSA by, *inter alia*, serving as the exclusive provider of any and all management services to Sphere related to its blockchain and cryptocurrency-related operations. By contrast, Sphere has admitted in publicly filed documents that it entered into **at least four separate hosting agreements**. Each of the third-party hosting agreements that Sphere admits to entering into without the consent, approval, or involvement of Gryphon is a breach of the Exclusivity and Management Fee Clauses of the Sphere MSA. Indeed, Gryphon calculates that Sphere's repeated breaches of the MSA have imposed damages on Gryphon at no less than $30 million, reflecting the percentage of Sphere's net operating profit through the contract's term that Gryphon is entitled to under the MSA.

Finally, the damages associated with Gryphon's breach of contract claim exceed all known claims asserted by Sphere against Gryphon. In determining whether the moving party has met this requirement under § 6212(a), courts are to examine only the amount of the claims that the moving party concedes are just. *Bank of Leumi Tr. Co. of New York v. Istim, Inc.*, 892 F. Supp. 478, 482 (S.D.N.Y. 1995). Sphere asserts three claims against Gryphon, including claims for breach of contract, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. *See* ECF No. 36, at 28-30. As Gryphon will show in its motion, each of Sphere's claims is without merit.

### C. Sphere's Deteriorating Financial Condition Creates a Risk That Gryphon Will Be Unable To Enforce A Future Judgment In The Absence of Attachment

Here, Sphere's deteriorating financial condition warrants prejudgment attachment in this action. In two separate forums and in its 2023 Annual Report, Sphere has admitted that it is on the verge of economic collapse. *Elton Leather Corp.* is instructive here. *First Gen. Res. Co.*, 138 A.D.2d 132 (N.Y. 1988). In that case, the court ordered attachment on the basis of the defendant's quarterly financial statements to the U.S. Securities and Exchange Commission ("SEC"), which showed that the defendant was in "serious financial distress" because its liabilities exceeded its assets. *Id.* at 133. Like the moving party in *Elton Leather Corp.*, which succeeded in obtaining prejudgment attachment based on the precarious financial condition of the defendant, which was evidenced in the defendant's SEC disclosure filings, Gryphon will also show that Sphere is on the brink of financial ruin.

### IV. Conclusion and Proposed Briefing Schedule

In summary, Gryphon has every reason to believe that Sphere's most valuable asset – the Core Equity Proceeds it received as a result of the Core Settlement – will soon be dissipated to cover the operating expenses, or worse yet, distributions to shareholders, if they are not ordered attached. In the absence of an attachment order granted by the Court, it is likely that Gryphon will be unable to collect on a future judgment in connection with Sphere's breach of the Sphere MSA – a contract that Sphere has already publicly admitted to breaching on multiple occasions.

Accordingly, Gryphon respectfully submits this premotion letter requesting leave to file a motion for prejudgment attachment pursuant to Fed. R. Civ. P. 64 and CPLR §§ 6201 and 6212 that will seek to attach the Core Equity Proceeds.

If the Court grants Gryphon's request for leave to file the motion, Gryphon proposes the following briefing schedule for the motion:

| Motion | Party | Deadline |
| --- | --- | --- |
| Motion | Gryphon | March 29, 2024 |
| Response | Sphere | April 5, 2024 |
| Reply | Gryphon | April 10, 2024 |

Respectfully submitted,

*/s/ Dennis H. Tracey, III*
Dennis H. Tracey, III
Elizabeth C. Carter
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
dennis.tracey@hoganlovells.com
elizabeth.carter@hoganlovells.com

*Attorneys for Defendant*
*Gryphon Digital Mining, Inc.*

Enclosure

cc: All Counsel of Record (via ECF)