**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SPHERE 3D CORP.,

*Plaintiff and Counter-Defendant,*

v.

GRYPHON DIGITAL MINING, INC.,

*Defendant and Counter-Plaintiff.*

---

Case No. 1:23-cv-02954-PKC

## <u>DECLARATION OF GREGORY N. WOLFE</u>

I, Gregory N. Wolfe, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following facts are true and correct based on my personal knowledge:

1.     I am an attorney at Dontzin Nagy & Fleissig LLP and represent Sphere 3D Corp. ("Sphere") in this case.  I make this declaration in support of Sphere's letter opposing Gryphon Digital Mining, Inc.'s March 25, 2024 pre-motion letter requesting leave to file a motion seeking an attachment.

2.     On August 7, 2023, a hearing was held before the United States Bankruptcy Court for the Southern District of Texas in *In re Core Scientific, Inc.*, Case No. 22-90341-11.  A true and correct copy of an excerpt from the transcript of that hearing is attached hereto as **Exhibit 1.**

3.     On October 6, 2023, I sent a letter to Gryphon's counsel informing Gryphon that Sphere had terminated the MSA.  A true and correct copy of that letter is attached hereto as **Exhibit 2.**  I have omitted the exhibits given their size but can provide them at the Court's request.

1

4.      On March 29, 2024, I caused to be downloaded a copy of the Form 8-K and an attached presentation Gryphon filed with the Securities & Exchange Commission on March 18, 2024.  A true and correct copy of relevant excerpts of the Form 8-K and presentation is attached hereto as **Exhibit 3.**

5.      On October 3, 2023, I corresponded with counsel for Gryphon concerning Gryphon's stated intent to seek emergent relief to prevent Sphere from terminating the MSA.  A true and correct copy of that correspondence is attached hereto as **Exhibit 4.**

6.      On January 22, 2024, I corresponded with counsel for Gryphon concerning Gryphon's request that the parties meet and confer concerning a discovery plan.  A true and correct copy of that correspondence is attached hereto as **Exhibit 5.**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 29, 2024

_Gregory N. Wolfe_
Gregory N. Wolfe

# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE: | § CASE NO. 22-90341-11 |
| | § JOINTLY ADMINISTERED |
| CORE SCIENTIFIC, INC., | § HOUSTON, TEXAS |
| ET AL, | § MONDAY, |
| | § AUGUST 7, 2023 |
| DEBTORS. | § 4:29 P.M. TO 6:03 P.M. |

### **MOTION HEARING**

BEFORE THE HONORABLE DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                    SEE NEXT PAGE

**(RECORDED VIA COURTSPEAK)**

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
mary@judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

1     reason for that.  They are the exclusive manager, they are the

2     ones who are getting paid to ultimately deal with Core, right?

3     But in terms of whose money it is, it's our money that's

4     coming to them.

5            THE COURT:  And so why didn't your manager file a

6     proof of claim?

7            MR. WOLFE:  I'm not sure that they would consider

8     that they had -- it's a good question.  I'm not sure that they

9     would consider that they had rights to the money, given that

10     it's our money.

11            THE COURT:  Well, no, they don't have any rights to

12     the money, I mean, according to you.

13            MR. WOLFE:  Correct.

14            THE COURT:  The -- managers take action all the time

15     that have financial benefits to the folks that they're

16     managing for.

17            MR. WOLFE:  Then -- I can't speak for them, Your

18     Honor.

19            THE COURT:  Okay.  Are they represented by anybody?

20            MR. WOLFE:  K&L Gates.

21            THE COURT:  Okay.  And I take it there's -- they

22     haven't filed a proof of claim in this case.

23            UNIDENTIFIED:  That's correct.

24            THE COURT:  Okay.

25            MR. WOLFE:  All right.  So if we can put up Slide 6,

# Exhibit 2

# DONTZIN NAGY & FLEISSIG LLP

Gregory N. Wolfe
greg@dnfllp.com

980 Madison Avenue | New York, New York 10075 | (212) 717 - 2900

**VIA EMAIL**

October 6, 2023

Brian D. Koosed, Esq.
Brian.Koosed@klgates.com

Re:    **Termination of Master Services Agreement Dated August 19, 2023**

Dear Brian:

As you know, this firm represents Sphere 3D Corp. ("Sphere"). We write to inform you that Sphere has terminated the Master Services Agreement dated August 19, 2023 (the "MSA"), as subsequently amended, between Gryphon Digital Mining, Inc. ("Gryphon") and Sphere. *See* Ex. 1.

The reasons for the termination have been exhaustively catalogued in the correspondence between the parties and the pleadings filed by Sphere in the current litigation between the parties, *Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, 23-cv-02954 (S.D.N.Y.) (the "Litigation"). We will not recount all of those reasons now, although provide a summary below.

In brief, Gryphon has materially breached the MSA, failed to perform its obligations under the MSA in a professional and workmanlike manner in accordance with generally recognized crypto-mining industry standards for similar services, and engaged in gross negligence and willful misconduct in connection with performing its obligations under the MSA. Gryphon's breaches and misconduct are incurable.[1] Even if they were curable, Gryphon has been provided requisite written notice under the MSA and declined to cure its breaches despite an opportunity to do so. And even if Gryphon had not been provided requisite notice, it has indicated that it is unwilling to cure the issues identified in all events, obviating the need for further opportunity to cure in the first place.[2]

In the remainder of this letter, we set forth facts that are not reasonably in dispute regarding the termination of the MSA and provide you with instructions regarding next steps.

---

[1] *See Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) ("New York common law will not require strict compliance with a contractual notice-and-cure provision if providing an opportunity to cure would be useless, or if the breach undermines the entire contractual relationship such that it cannot be cured.").

[2] *See Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 482 (E.D.N.Y. 2020) ("The Court finds that enforcing strict compliance with the notice-and-cure provision would be useless with respect to the alleged error in this case, given that Defendant was aware of the charges and insists that the overdraft fees are not, in fact, errors."); *Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 552 n.6 (S.D.N.Y. 2014) (holding that plaintiff did not need to comply with notice provision because bank was aware of the alleged breach and refused to correct it).

## I. THE MSA EXPRESSLY PROVIDED THAT SPHERE COULD TERMINATE THE MSA IF GRYPHON FAILED TO MEET INDUSTRY STANDARDS OR ENGAGED IN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT

Under the MSA, Gryphon undertook an obligation to be Sphere's "exclusive provider of any and all management services for all blockchain and cryptocurrency-related operations." Ex. 1 at 1. In return, Sphere promised to pay Gryphon a tremendous management fee equal to 22.5% of the "Net Operating Profit of all of [Sphere's] blockchain and cryptocurrency-related operations." *Id.*

In addition, the MSA made Gryphon a custodian of certain of Sphere's digital assets, which it maintains in a wallet. *Id.* at 2. The MSA also required Gryphon to sell Sphere's digital assets upon Sphere's "instruction." *Id.* at 3.

The MSA also included a termination provision that provided as follows:

> Subject to written notice from Customer and an opportunity by Provider to cure for a period of up to one hundred eighty (180) day, Customer shall be entitled to terminate the Agreement in the event of: (i) Provider's failure to perform the Services in a professional and workmanlike manner in accordance with generally recognized crypto-mining industry standards for similar services, or (ii) Provider's gross negligence, fraud or willful misconduct in connection with performing the Services.

*Id.* at 6.

## II. SPHERE PROVIDED NOTICE OF GRYPHON'S MATERIAL BREACHES, GROSS NEGLIGENCE, AND WILLFUL MISCONDUCT MORE THAN SIX MONTHS AGO, INCLUDING THROUGH ITS COMPLAINT DATED APRIL 7, 2023

For more than 180 days, Sphere has raised issues with Gryphon's performance under the MSA. By way of example, Sphere through extensive email correspondence in February 2023 raised concerns to Gryphon when Gryphon fell for multiple spoofing attacks, leading Gryphon to transfer well over $400,000 in Sphere's digital assets to an unauthorized third-party.

As another example, on March 22, 2023, Sphere through counsel sent Gryphon a letter in which it reiterated its concerns over the spoofing attacks as well as other violations of the MSA, including without limitation that Gryphon had been stealing Sphere's assets, did not have adequate internal controls and policies and procedures in place, had refused to find hosting space for Sphere, had shirked its duties in securing the release of Sphere's miners, delayed setting up mining pools, ignored instructions to sell bitcoin, and failed to review third-party invoices for accuracy. *See* Ex. 2.

And on April 7, 2023, Sphere filed its Complaint in the Litigation. In the Complaint, Sphere made clear that Gryphon had materially breached the MSA, failed to perform in line with

industry standards, and engaged in gross negligence and willful misconduct, including without limitation as follows:

- Gryphon "fell for multiple spoofing attacks targeting Sphere's digital assets," which led Gryphon to transfer over $400,000 in Sphere's digital assets to a third-party, an act that Gryphon incredibly "claimed" Sphere was "responsible for." Compl. ¶¶ 5, 48; *see also id.* ¶¶ 6–11, 35–41.

- Gryphon failed to have industry-standard "internal controls systems and policies and procedures" in place that would have averted the spoofing attacks. *Id.* ¶ 5; *see also id.* ¶¶ 2, 11–12, 42–46.

- "[W]hen Sphere needed hosting space in 2022 (a prerequisite to turning on its miners and generating money), Gryphon refused to find hosting space and instead directed Sphere to find such space on its own." *Id.* ¶ 28; *see also id.* ¶ 3.

- When a shipment of Sphere's miners was seized by U.S. Customs, "Gryphon shirked its duties to provide the assistance and information needed to release the miners" despite "urgent pleas" from Sphere while the miners languished in U.S. Customs not generating revenues. *Id.* ¶ 29; *see also id.* ¶ 3.

- Gryphon "outright ignored instructions to sell Sphere's bitcoin on a timely basis." *Id.* ¶ 30.

- Gryphon "inexplicably delayed setting up mining pools, resulting in lost revenue." *Id.*

- "Gryphon . . . failed to review third-party invoices for accuracy, resulting in Sphere paying erroneous charges." *Id.*

- Gryphon engaged in self-dealing, "including by prioritizing the operations of its own miners over Sphere's and employing more advantageous mining pool strategies for its own digital assets," as evidenced by, among other facts, that "on a monthly basis, Gryphon has reported a substantially higher mining efficiency ratio than Sphere, which would not occur if Gryphon were acting to avoid self-dealing." *Id.* ¶ 34.

- "In general, Gryphon has been content to sit back and collect millions of dollars in Management Fees while delivering no services whatsoever." *Id.* ¶ 3; *see also id.* ¶¶ 27, 30.

- Gryphon failed to "manage relationships with third-parties." *Id.* ¶ 3; *see also id.* ¶ 30.

- "Gryphon has been skimming off the top—effectively stealing money—from Sphere." *Id.* ¶ 32; *see also id.* ¶¶ 2, 4.

Gryphon has generally conceded in Court, as it must, that it has notice of the allegations against it, including by, with few exceptions, not moving to dismiss the breach of contract allegations and instead answering them.[3]

### III.   RATHER THAN ATTEMPT TO CURE ITS BREACHES, GROSS NEGLIGENCE, AND WILLFUL MISCONDUCT, GRYPHON HAS DENIED IT ENGAGED IN ANY BREACH OR MISFEASANCE AT ALL

At no point since Sphere sent its March 22, 2023 letter or filed its April 7, 2023 Complaint has Gryphon attempted to cure, or even acknowledged, its breaches, gross negligence, or willful misconduct.  To the contrary, Gryphon has categorically *denied* that it has engaged in any breach or misfeasance or otherwise failed to meet industry standards.  It has also engaged in ostrich behavior, denying it has notice of the issues raised despite its concession in Court that it in fact has notice.

For example, on May 6, 2023, Sphere wrote to Gryphon that it viewed the issues raised in the Complaint "as non-curable given the pattern of gross misfeasance," but invited Gryphon to cure if possible:

> If Gryphon contends that its misfeasance is curable, please let us know as soon as possible and set forth, in detail, a remediation plan, including how Gryphon plans to compensate Sphere for its past misconduct. We will otherwise proceed under the assumption that Gryphon has no intention of even attempting to cure its misfeasance.

Ex. 3 at 1.  Gryphon's CEO responded in no uncertain terms that Gryphon did not intend to cure any breach, stating: "Gryphon hasn't breached the parties' MSA in any way, so I don't think there's anything for Gryphon to 'cure' here.  Nor do I think such imagined breaches give Sphere any legitimate basis to terminate the MSA."  Ex. 4 at 1.

Although under no obligation to do so, on May 30, 2023, Sphere sent Gryphon a letter in which it proposed ways Gryphon could cure at least some of its misconduct, including without limitation by:

- compensating Sphere for historical breaches of the MSA;

- dropping any claim that Sphere was liable for the spoofing attack;

- promptly complying with written instructions to sell digital assets and remit the proceeds therefrom to Sphere;

---

[3] Gryphon has argued that the theft allegations do comply with the particularity requirements of Rule 9(b) but does not dispute that they meet the notice standard under Rule 8(a).  Gryphon accordingly has conceded it has notice of the theft issue too.

- disclosing Gryphon's internal controls and procedures to Sphere and updating them so that they complied with industry standards; and

- providing certain other information needed to assess requisite remediation.

Ex. 5.  On June 6, 2023, Gryphon responded by sticking its head in the sand, claiming that Sphere still had not provided any detail about its concerns regarding Gryphon's performance or how they could be addressed.  *See* Ex. 6.  Sphere reflected this state of affairs in its Amended Complaint filed on June 15, 2023, averring:

> Since Sphere filed this lawsuit, Gryphon has confirmed that is incapable of addressing its issues and performing under the MSA, both because the breaches are incurable and because Gryphon is simply unwilling to remedy its breaches.  Indeed, since Sphere filed its lawsuit, Gryphon has denied breaching any of its obligations. And incredibly, Gryphon has denied that Sphere has given it sufficient specificity to know what its material breaches of the MSA are. It has done so *even though Gryphon has conceded that Sphere breach claims are sufficient to state a claim and thus inherently gave it reasonable notice of the allegations against it.*

> This is part-and-parcel of Gryphon's general ostrich strategy:  accept exorbitant fees, play dumb regarding what services should be delivered.  What Gryphon should have done to not breach the MSA is obvious.  By way of example only, rather than direct Sphere to find hosting, Gryphon should have found hosting for Sphere. Rather than allow Sphere's miners to languish in U.S. Customs, depriving Sphere of millions of dollars in revenue, Gryphon should have provided the information needed to secure their release—which Sphere ultimately had to do itself.  Rather than failing to properly review vendor invoices, Gryphon should have ensured that Sphere is only charged for what is owed. Rather than falling for transparent spoofing attacks that led Gryphon to part with Sphere's assets, Gryphon should have detected the attack—and should have compensated Sphere for the loss without reservation, instead of asserting that Sphere is responsible and threatening litigation. Rather than refusing to honor written instructions to sell Sphere's digital assets, Gryphon should comply.

Am. Compl. ¶¶ 75–76 (emphasis in original).  Nevertheless, even after this filing, Gryphon doubled down, asserting it did not understand the claimed breaches and offering no effort to rectify any of the issues raised.  *See* Ex. 7 (June 22, 2023 Letter from Gryphon); Ex. 8 (June 23, 2023 Response from Sphere).

To the extent there was any doubt about Gryphon's position, on August 18, 2023, Gryphon filed its Answer in the Litigation in which it, among other denials, categorically "denie[d] that [it] ha[d] breached any contract with Sphere." Answer ¶ 1. Accordingly, there can be no doubt that Gryphon has not cured any of its misfeasance—in fact, it did not even attempt to do so.

## IV.    EVEN AFTER SPHERE FILED ITS INITIAL COMPLAINT, GRYPHON ENGAGED IN ADDITIONAL MISFEASANCE THAT IT REFUSED TO CURE

Even after Sphere filed its initial Complaint, Gryphon continued engaging in misfeasance that it stated it would not cure, which provides additional grounds for termination. The misfeasance was designed to induce Sphere to drop the Litigation.

By way of example only, in August 2023, Gryphon unilaterally decided that it would not pay invoices for third-party hosts Rebel Mining Co. ("Rebel") and Lancium. The result was that Sphere went into default on its obligations and Rebel shut down Sphere's miners, costing Sphere around $60,000.[4] On September 1, 2023, Sphere demanded that Gryphon make Sphere "whole" by compensating it for the loss. *See* Ex. 10. On September 6, 2023, Gryphon stated it would not do so and thus not cure its breach of the MSA. *See* Ex. 11.

As another example, Gryphon so poisoned a relationship with a mining pool provider, Foundry Digital ("Foundry"), that Foundry stated that it intends to terminate its relationship with Gryphon—and also Sphere given its relationship to Gryphon. Although Sphere requested that Gryphon address the issue, Gryphon has refused to do so. *See* Ex. 12 (June 23, 2023 Email from G. Wolfe), Ex. 13 (June 23, 2023 Email from P. Trompeter).

As for other examples, "Gryphon failed to file a proof of claim in a pending bankruptcy proceeding in which Sphere has a substantial claim, jeopardizing Sphere's ability to pursue its claim because Gryphon interacted with the debtor on Sphere's behalf." Am. Compl. ¶ 36. And Gryphon ceased honoring Sphere's written instructions "to sell digital assets" in an attempt "to put Sphere in a position where Sphere cannot meet its ordinary course obligations and where it cannot pay for the expenses and costs associated with this litigation so that Sphere will be forced to capitulate." *See* Am. Compl. ¶¶ 68–73. Gryphon denied any culpability for these issues and made clear it would not even attempt to cure them, which it did not. *See generally* Answer.

## V.    BY NOT SEEKING A TEMPORARY RESTRAINING ORDER IN ADVANCE OF SPHERE TERMINATING THE MSA, GRYPHON HAS CONCEDED IT WILL NOT SUFFER IRREPARABLE HARM ONCE THE MSA IS TERMINATED

On September 14, 2023, Gryphon informed Sphere of its belief that it would suffer some sort of undescribed irreparable harm if the MSA were cancelled and stated its intention to file a temporary restraining order preventing Sphere from terminating the MSA absent Sphere providing what it deemed to be requisite notice under the MSA. *See* Ex. 14. Gryphon indicated that it needed

---

[4] This was not the first time that Gryphon arbitrarily indicated it would not pay Rebel: in May 2023, Gryphon threatened to not pay Rebel and only relented when Sphere threatened to seek emergency relief. *See* Ex. 9 (May 23, 2023 Email from P. Trompeter).

to move before Sphere terminated the MSA to avoid the irreparable harm. *See id.* at 4 ("Please take further notice that, unless Sphere is willing to agree to a notice of motion process -- and to defer any purported termination of the MSA pending the outcome of that process -- Gryphon intends to make its motion by order to show cause, given the emergency nature of this situation and, particularly, Monday's impending deadline.").

The notion that Gryphon could be entitled to emergent relief on this record was without merit, as Sphere explained. *See id.* at 3. Aside from the fact that Gryphon would not be able to demonstrate a substantial likelihood on the merits (as the foregoing amply demonstrates), there was also no conceivable way Gryphon could prove irreparable harm over the termination of the MSA, through which the benefits Gryphon derives are purely economic.

As it turned out, Gryphon was posturing and recognized it would not be able to obtain emergent relief. Sphere agreed to commit to not terminating the MSA for a period to allow the parties to try to find a consensual resolution. On October 3, 2023, however, with no resolution in sight, Sphere informed Gryphon that it would no longer commit to not terminating the MSA and urged Gryphon to file its order to show cause on October 4, 2023 so that the parties could coordinate their schedule to appear in Court at a mutually convenient time. *See* Ex. 15 at 4 ("I am writing to inform you that Sphere is no longer willing to guarantee that it will not terminate the MSA. As such, given your prior representations that you would seek emergent relief in that situation and in the interest of a coordinated schedule, we should schedule the TRO hearing for tomorrow at a mutually convenient time.").

The parties again spoke on October 4, 2023, during which time Sphere indicated that, if Gryphon wanted to seek emergency relief, now was the time. Gryphon's failure to do so before Sphere canceled the MSA confirms the obvious: Gryphon had no basis to prevent Sphere from terminating the MSA given its rampant misconduct and the absence of any irreparable harm whatsoever.

## VI. NEXT STEPS

Now that the MSA has been canceled, Gryphon must do the following immediately and in all events by **October 11, 2023**:

- Point the hash rate of all Sphere miners, regardless of where they are hosted (including without limitation at Core Scientific and Coinmint) to Sphere's BitGo wallet through the Sphere pool hosted by Foundry.

- Transfer all Sphere digital assets in the possession, custody, or control of Gryphon, including without limitation any bitcoin held in any wallets utilized for the benefit of Sphere, to Sphere's wallet.

- Transfer all other funds or monies, regardless of form, belonging or otherwise owed to Sphere (including without limitation any fiat currency) to Sphere's bank account.

Sphere will confirm the foregoing wire and wallet instructions by separate email.

Finally, Sphere will work with you constructively on a rational way to handle Sphere's miners held at Core Scientific and Coinmint and provide for an orderly transition.

***

I am available to discuss any of these matters.  Sphere reserves all rights.

Sincerely,

*/s/  Gregory N. Wolfe*

Enclosures

cc:    Desiree Moore, Desiree.Moore@klgates.com
       Andrew Hinkes, Drew.Hinkes@klgates.com

Exhibit 3

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**FORM 8-K**

**CURRENT REPORT**
**Pursuant to Section 13 OR 15(d) of the Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): **March 18, 2024**

**GRYPHON DIGITAL MINING, INC.**
(Exact name of registrant as specified in its charter)

| Delaware | 001-39096 | 83-2242651 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| 1180 N. Town Center Drive, Suite 100, Las Vegas, NV | 89144 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: (877) 646-3374

(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Stock, par value $0.0001 per share | GRYP | The Nasdaq Stock Market LLC |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☒

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 7.01 Regulation FD Disclosure.**

On March 18, 2024, Gryphon Digital Mining, Inc. (the "Company") will make presentations to certain institutional investors using the materials that are included as Exhibit 99.1 (the "Investor Presentation") to this Current Report on Form 8-K (this "Report"). The Company may use the Investor Presentation, possibly with modifications, in presentations from time to time thereafter to current and potential investors, analysts, lenders, business partners, acquisition candidates, customers, employees and others with an interest in the Company and its business.

By furnishing this Report, including the Investor Presentation, the Company makes no admission as to the materiality of any information in this Report, including without limitation the Investor Presentation. The Investor Presentation contains forward-looking statements. See page 2 of the Investor Presentation for a discussion of certain forward-looking statements that are included therein and the risks and uncertainties related thereto.

The information in this Item 7.01, including Exhibit 99.1, shall not be deemed "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended, and shall not be deemed incorporated by reference into any filing with the Securities and Exchange Commission, except as expressly set forth by specific reference in such a filing.

**Item 9.01 Financial Statements and Exhibits.**

**(d) Exhibits**

| Exhibit Number | Description |
|---|---|
| 99.1 | Investor Presentation, dated March 2024 |
| 104 | Cover Page Interactive Data File (embedded within the Inline XBRL Document). |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, hereunto duly authorized.

Dated: March 18, 2024                                                        **GRYPHON DIGITAL MINING, INC.**

By: /s/ Robby Chang
    _____
    Name:   Robby Chang
    Title:    Chief Executive Officer

2

# Industry Leader in Capital Efficiency

## Gryphon outperforms peers in Invested Capital Efficiency*

- Gryphon has spent only $42/TH to build its entire operation (machines, hosting, management, etc.)

- Peer average Invested Capital Efficiency $156/TH**

- Superior performance driven by unique royalty stream with a third-party miner, resourceful capital raising, disciplined capital deployment and asset light model



Invested Capital ($)/TH

*Invested Capital per terahash is defined as (Paid In Capital + Short- and Long-Term Debt + Short- and Long-Term Capital Leases – Liquid Assets) / Forecast hashrate that includes royalty stream
** Based on most recent publicly reported financial statements

 **www.GryphonDigitalMining.com**                                                                            13

---

# 22.5% MSA with Sphere 3D

## Unique Royalty Stream Provides Additional Cash Flows

- Gryphon has an agreement to manage all of Sphere 3D's blockchain operations for a five-year period

- Gryphon earns 22.5% of gross operating profit royalty from all of Sphere 3D's current and future blockchain operations through August 2026

- Sphere 3D's fully deployed 15,000 miners are expected to have over 1.5 Exahash and generate 940 BTC in 2024 based on current network hashrate*

- Sphere has moved to terminate this arrangement. Gryphon is confident it will prevail and accrues the revenue

**Forecast 2024 Cash Flows from Royalty ~$12M**



*Based on an estimated average hashrate of 540 exahash and BTC price of US$72,000, Post Halvening hashrate of 270 exahash that grows back to 540 EH by Q4/24

 **www.GryphonDigitalMining.com**                                                                            14

Exhibit 4

## David Moosmann

| | |
|---|---|
| **From:** | Greg Wolfe |
| **Sent:** | Tuesday, October 3, 2023 10:21 AM |
| **To:** | Koosed, Brian D.; Moore, Desiree F. |
| **Cc:** | Rahul Srinivas; David Moosmann; Hinkes, Andrew M.; Alvis, Matt A.; Hall, Sara T.; Tibor Nagy |
| **Subject:** | Sphere 3D Corp. v. Gryphon Digital Mining, Inc., Case No. 1:23-cv-02954-PKC |

Brian –

I am writing to inform you that Sphere is no longer willing to guarantee that it will not terminate the MSA. As such, given your prior representations that you would seek emergent relief in that situation and in the interest of a coordinated schedule, we should schedule the TRO hearing for tomorrow at a mutually convenient time. Please let me know what times work for you.

We ask that you please send us your TRO papers 24 hours in advance of the time we are to appear. To date, you have provided three cases and a vague articulation of irreparable harm that will purportedly be revealed when we review your papers and supporting declarations. It would benefit the court tomorrow if we know precisely what Gryphon intends to argue rather than walking in half-blind.

We otherwise reserve all rights.

Best,


**Greg Wolfe**
Partner
Dontzin Nagy & Fleissig LLP
980 Madison Avenue
New York, NY 10075
O: (212) 717-2900 | M: (917) 282-9481
greg@dnfllp.com

Exhibit 5

**David Moosmann**

| | |
|---|---|
| **From:** | Greg Wolfe |
| **Sent:** | Monday, January 22, 2024 9:11 AM |
| **To:** | Tracey, Dennis H.; David Moosmann |
| **Cc:** | Bianchini, Allegra; Wynne, Rick; Winter, William; Rahul Srinivas |
| **Subject:** | RE: Gryphon/Sphere |

Dennis –

Thanks for your email.  There is a discovery stay in place, so I'm not sure the point of a call now, especially when my client is thin on resources.  We'll be happy to engage in that discussion at an appropriate point, however.

Please advise when your client will be transferring the proceeds or if it contends it still needs more information before it engages in the transfer.  As it stands, this is simply blatant conversion.  I'd really rather avoid spending both sides' money on dealing with this in court, if possible.

Best,

**Greg Wolfe**
Partner
Dontzin Nagy & Fleissig LLP
31 East 62nd Street
New York, NY 10065
O: (212) 717-2900 | M: (917) 282-9481
greg@dnfllp.com

**From:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>
**Sent:** Friday, January 19, 2024 4:21 PM
**To:** David Moosmann <dmoosmann@dnfllp.com>
**Cc:** Greg Wolfe <greg@dnfllp.com>; Bianchini, Allegra <allegra.bianchini@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; Winter, William <william.winter@hoganlovells.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Subject:** RE: Gryphon/Sphere

The week is now over.  Please get back to me with a time for a call.

**From:** David Moosmann <dmoosmann@dnfllp.com>
**Sent:** Wednesday, January 17, 2024 5:34 PM
**To:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>
**Cc:** Greg Wolfe <greg@dnfllp.com>; Bianchini, Allegra <allegra.bianchini@hoganlovells.com>; Wynne, Rick <richard.wynne@hoganlovells.com>; Winter, William <william.winter@hoganlovells.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Subject:** Gryphon/Sphere

[EXTERNAL]
Dennis,

I'm writing regarding your request for a call.  Greg asked me to let you know that he is in Delaware for a hearing but will get back to you by the end of the week.

David

**David Moosmann\***
Associate
Dontzin Nagy & Fleissig LLP
31 East 62nd Street
New York, NY 10065
O: (212) 717-2900 | M: (850) 294-6435
[dmoosmann@dnfllp.com](mailto:dmoosmann@dnfllp.com)
**\*Admitted only in Texas**

---

**About Hogan Lovells**
Hogan Lovells is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP. For more information, see
www.hoganlovells.com.

CONFIDENTIALITY. This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

PRIVACY. Hogan Lovells processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hoganlovells.com/en/privacy.