# DONTZIN NAGY & FLEISSIG LLP

31 E 62nd Street, New York, NY 10065 | (212) 717 - 2900

Gregory N. Wolfe
greg@dnfllp.com

**VIA ECF**　　　　　　　　　　　　　　　　　　　　　　　　　　April 1, 2024

Hon. P. Kevin Castel
United States District Court Judge
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, NY 10007

　　　　Re:　　*Sphere 3D Corp. v. Gryphon Digital Mining, Inc.*, 1:23-cv-02954-PKC

Dear Judge Castel:

　　We represent plaintiff and counter-defendant Sphere and write in response to Gryphon's unauthorized reply letter (the "Reply Letter") filed earlier today in support of its Letter seeking permission to file a motion to attach Sphere's assets.[1] The Reply letter was not permitted by Your Honor's individual rules and should be disregarded.[2]

　　To the extent your Honor is inclined to consider the Reply Letter, the Court should consider this rebuttal letter too. Sphere's letter dated March 29, 2024 (the "Opposition Letter") explained why Gryphon had made no showing that it was entitled to attach Sphere's assets. Gryphon's efforts to argue that it still has any basis to attach Sphere's assets under CPLR § 6201 are without merit. Gryphon does not dispute that:

- Sphere is now validly registered to do business in New York;

- Gryphon secured no attachment order before Sphere registered to do business in New York;

- *Gov't Emps. Ins. Co. v. Grody*, 2023 WL 5979206, at *6 (E.D.N.Y. July 24, 2023) *report and recommendation adopted*, 2023 WL 6307340 (E.D.N.Y. Sept. 28, 2023), is directly on point and held just last year that a plaintiff may not invoke CPLR § 6201(1) in these circumstances; and

- Gryphon has no other basis to attach Sphere's assets under CPLR § 6201—*e.g.*, it is not asserting any risk of fraudulent transfer.

　　Although Gryphon cites numerous cases that held that registration that occurred following an *attachment order, but pre-confirmation* is ineffective to *lift* the attachment order, it concededly cites no case that has imposed an order of attachment where, as here, registration was secured after the mere filing of a motion seeking attachment. And while Gryphon suggests otherwise, *Gov't Emps. Ins.* specifically considered the line of cases on which Gryphon relies yet still reached the conclusion that registering before the order of attachment is issued forecloses attachment under § 6201(1). *See* 2023 WL 5979206, at *6 (citing *Elton Leather Corp. v. First Gen. Res. Co.*, 138

---

[1] Capitalized terms have the meanings ascribed in the Opposition Letter unless otherwise noted.

[2] Gryphon did not even alert Sphere it would be filing its Reply Letter.

A.D.2d 132, 135 (1st Dep't 1988); *Giorgio Morandi, Inc. v. Texport Corp.*, 697 F. Supp. 777, 778 (S.D.N.Y. 1988)).  The reason for the distinction is obvious:  there must be a statutory basis to secure the order of attachment in the first place.  *See New York State Com'r of Tax'n & Fin. v. Bank of New York*, 275 A.D.2d 287, 289 (1st Dep't 2000) (holding that "the only means of extending a levy by service of execution (CPLR 5232[a]) is by way of motion" and thus that alternative means of extending levy were deficient because "when, as here, a statute is free from ambiguity and its sweep unburdened by qualification or exception, we must do no more and no less than apply the language as it is written").  That conclusion is not only consistent with basic statutory interpretation but also New York law that attachment is a "drastic provisional remedy," *J.V.W. Inv. Ltd. v. Kelleher*, 41 A.D.3d 233, 234 (1st Dep't 2007), and is "strictly construed … in favor of those against whom it may employed," *Onewoo Corp. v. Hampshire Brands, Inc.*, 2016 WL 11779677, at *5 (S.D.N.Y. Nov. 15, 2016) (Castel, J.).  Here, there is no statutory basis for attachment, so no order of attachment can lie.[3]

     Gryphon suggests that it was simply following standard procedure in seeking permission to file a motion to attach assets and thus Sphere's registration should be disregarded.  Reply Ltr. at 1–2.  Not so:  plaintiffs seeking attachment orders generally proceed by order to show cause on an emergency basis because there is an actual risk that assets will dissipate.  *See, e.g.*, *Elton Leather*, 138 A.D.2d at 133 (noting the plaintiff "secured" the attachment order "without notice to defendant").  Here, of course, there is no risk of that, which likely explains Gryphon's decision not to proceed on an emergency basis.  In any event, it is axiomatic that some statutory basis must exist before attachment can lie.[4]

     Gryphon's Reply Letter does not dispute the bulk of the Opposition Letter, but does make several blatant misrepresentations.  First, Gryphon asserts it is undisputed that Sphere entered into four contracts in violation of the MSA's exclusivity provision.  Reply Ltr. at 2.  Sphere explained in its Opposition Letter (at 6–7) why it did not breach the exclusivity provision.  The only thing that is undisputed here is that, as Sphere pointed out in its Opposition Letter, those four alleged breaches could only give rise to *nominal damages*.  Gryphon has no conceivable basis to claim even $10 million in damages, let alone $30 million.

     Second, Gryphon continues to insist that the Core Equity Proceeds essentially comprise Sphere's only assets.  Reply Ltr. at 3.  But Gryphon does not dispute that Sphere's 2023 Annual Report balance sheet demonstrates that Sphere has $45 million in assets and $5 million in liabilities—and that it has taken no loans and has no encumbered assets or other secured debt.  Opposition Ltr. at 8.  That many of the assets comprise revenue-generating property does not

---

[3] The same logic would apply if the defendant was in danger of being unable to satisfy a judgment *at the time a motion was filed*, but had its fortunes improve before the order was entered.

[4] The reasoning underlying the line of cases relied upon by Gryphon and rejected as relevant by *Gov't Emps. Ins.* does not suggest a contrary outcome is warranted here.  The line of cases stems from *Elton Leather*, which *only* "h[e]ld that a foreign corporation, *who simply files a post-attachment, pre-confirmation, application to do business, cannot, by that act alone, cause an order of attachment to be vacated*."  138 A.D.2d at 137.  It did not purport to address this circumstance.  The result here is compelled by the plain statutory text, which cannot be overridden.  Plaintiffs needing attachment know not to sleep on their rights and instead that is advisable to proceed expeditiously by order to show cause, which Gryphon did not do.

change that Sphere can satisfy even a $30 million judgment. Illustratively, Gryphon cites to Sphere's statement that, in November 2023, it had little cash on hand to meet its ordinary course obligations. Reply Ltr. at 3. If needed, Sphere would have sold non-cash assets to meet those obligations—exactly what would happen if Gryphon secured a $30 million judgment and Sphere did not have sufficient cash on hand to simply pay down the judgment.[5]

Finally, Gryphon's attempt to explain away its year-long delay in seeking attachment lacks any credibility. There is no dispute that, for years, Sphere has included risk factors in its securities filings to the effect that it may run out of cash if it fails to raise money and that Gryphon's representations to the Court in its Opening Letter that Sphere had suddenly disclosed something new was false. Before Sphere received the Core Equity Proceeds in January 2024, Sphere had tens of millions of dollars assets on its balance sheet; nevertheless, over the course of a year of litigation, Gryphon did not seek to attach those assets. And Gryphon includes no explanation for why it waited *two months* before trying to attach the Core Equity Proceeds. Gryphon knew exactly when Sphere received the Core Equity Proceeds because it was a party to that settlement, which was public since it had to be confirmed by the Bankruptcy Court. If Gryphon truly believed there was a risk of dissipation, it would have immediately sought to attach the Core Equity Proceeds instead of waiting months.

In sum, this is not a serious application, only an attempt to harm Sphere's business in an effort to force Sphere to settle rather than litigate on the merits. The Court should reject Gryphon's improper use of the attachment procedure without requiring further briefing.

***

We are available to discuss these issues at your Honor's convenience.

Respectfully submitted,

*/s/ Gregory N. Wolfe*

cc:   Counsel for Gryphon (*via ECF only*)

---

[5] Sphere's situation today is what is relevant, not in November 2023. And Sphere's circumstances have improved since November 2023, including because (1) it resolved the Core litigation, meaning it no longer needs to pay fees associated with that litigation; (2) it secured the release of tens of millions of dollars in Core claims against Sphere; (3) it secured the Core Equity Proceeds, adding $10 million in assets; and (4) Gryphon returned approximately $1.2 million in assets to Sphere.