**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SPHERE 3D CORP.,

    *Plaintiff and Counterclaim-Defendant*,

    v.

GRYPHON DIGITAL MINING, INC.,

    *Defendant and Counterclaim-Plaintiff*

Civil Action No. 1:23-cv-02954-PKC

---

# MEMORANDUM OF LAW IN SUPPORT OF GRYPHON DIGITAL MINING, INC.'S UNOPPOSED MOTION FOR ISSUANCE OF LETTERS ROGATORY

HOGAN LOVELLS US LLP
Dennis H. Tracey, III
Elizabeth C. Carter
William C. Winter
390 Madison Ave.
New York, NY 10017
Tel.: (212) 918-3000
Fax: (212) 918-3100
dennis.tracey@hoganlovells.com
elizabeth.carter@hoganlovells.com
william.winter@hoganlovells.com

*Counsel for Gryphon Digital Mining, Inc.*

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................. ii

BACKGROUND .................................................................................................................. 2

    I.    Gryphon and Sphere Enter Into a Merger Agreement. .......................................... 2

    II.    The Parties Negotiate and Enter into the MSA, Which Was Negotiated by Both Peter Tassiopoulo And Mark Valentine. ...................................................... 2

    III.    As Sphere's CEO, Mr. Tassiopoulos Praised Gryphon's Performance as the Exclusive Provider of Management Services Under the MSA. ........................ 3

    IV.    Sphere Repeatedly Breaches the MSA and Then Retaliates by Filing This Action. ............................................................................................................ 5

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ......................................................................................................................... 7

    I.    The Court Should Issue a Letter Rogatory for the Testimony of Peter Tassiopoulos Because the Discovery Sought Is Relevant and Not Otherwise Available. .............................................................................................. 7

    II.    The Court Should Issue a Letter Rogatory for the Testimony of Mark Valentine Because the Discovery Sought Is Relevant and Not Otherwise Available. .............................................................................................. 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*,
 121 F.3d 77 (2d Cir. 1997) ............................................................................................................6

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
 841 F. Supp. 2d 769 (S.D.N.Y. 2012) ...........................................................................................7

*Netherby Ltd. v. Jones Apparel Grp., Inc.*,
 No. 04 Civ. 7028 (GEL), 2005 WL 1214345 (S.D.N.Y. May 18, 2005) ......................................7

*Pearlstein v. BlackBerry Ltd.*,
 332 F.R.D. 117 (S.D.N.Y. 2019), *on reconsideration in part*, No. 13-cv-07060
 (CM) (KHD), 2019 WL 5287931 (S.D.N.Y. Sept. 20, 2019) .......................................................7

**Other Authorities**

22 C.F.R. § 92.54 (2024) ...................................................................................................................6

8A Charles Alan Wright & Arthur R. Miller,
 *Federal Practice and Procedure* § 2083 (3d ed.) ........................................................................7

Fed. R. Civ. P. 26 ...............................................................................................................................7

Fed. R. Civ. P. 28 ...............................................................................................................................1

Pursuant to Federal Rule of Civil Procedure 28, Defendant and Counterclaim-Plaintiff Gryphon Digital Mining, Inc. ("Gryphon"), by and through its undersigned counsel, respectfully moves this Court for issuance of letters rogatory for international judicial assistance from the appropriate judicial authorities in Canada to take testimony from the individuals Peter Tassiopoulos and Mark Valentine, and such other further relief as the Court deems just and proper.

Upon information and belief, Messrs. Tassiopoulos and Valentine currently reside in Canada. During the relevant period, Messrs. Tassiopoulos and Valentine negotiated the Master Services Agreement (the "MSA") between Gryphon and Sphere 3D Corp. ("Sphere") on Sphere's behalf, interfaced directly and on a near daily basis with Gryphon's personnel, and made public statements relevant to the claims and defenses raised by the parties in this action. These activities are all highly relevant to Gryphon's claims and defenses, and obtaining the testimony of Messrs. Tassiopoulos and Valentine is necessary for a fair determination of these proceedings. Further, Sphere has represented that is unable to produce either Messrs. Tassiopoulos and Valentine to provide testimony in this action.

Given that Messrs. Tassiopoulos and Valentine reside in Canada and are, therefore, outside of the Court's subpoena power, Gryphon will be able to secure their testimony only through the issuance of letters rogatory. However, the Canadian courts will not order testimony to be taken in Canada for use in foreign proceedings merely to locate relevant evidence; rather, the testimony itself must be relevant to an issue in dispute to be decided by this Court.

The letters rogatory have been narrowly tailored to seek the specific categories of evidence relevant and material to establishing Gryphon's claims and defenses in this action. Further, in order to minimize any burden, Gryphon is willing to proceed with a remote deposition via videoconferencing link for both Messrs. Valentine and Tassiopoulos. Accordingly, the Court

should issue the letters rogatory, which are attached as Exhibits A and B to the Declaration of Dennis H. Tracey, III in Support of Gryphon's Unopposed Motion for Issuance of Letters Rogatory for International Judicial Assistance to Take Testimony Overseas (the "Tracey Declaration"), filed concurrently herewith.

## BACKGROUND

**I.   Gryphon and Sphere Enter Into a Merger Agreement.**

This case arises out of a Master Services Agreement (the "MSA") entered between Gryphon and Sphere 3D Corp ("Sphere"). In 2021, Gryphon and Sphere negotiated and entered into a merger agreement (the "Merger Agreement"). As part of the Merger Agreement, Mark Valentine was a key influence and decision-maker who led and negotiated the merger on Sphere's behalf. During the relevant time period, Mr. Valentine participated in daily calls between Gryphon and Sphere's personnel.

**II.  The Parties Negotiate and Enter into the MSA, Which Was Negotiated by Both Peter Tassiopoulo And Mark Valentine.**

In 2021, the parties decided to enter into the MSA in contemplation of the planned merger. Sphere's then-Chief Executive Officer, Peter Tassiopoulos, actively participated in negotiating the terms of the MSA with Gryphon.[1] Mr. Tassiopoulos is also a Canadian national who served as a key point of contact for Gryphon in its dealings with Sphere. Mr. Valentine also participated in negotiating the terms of the MSA on Sphere's behalf and regularly interfaced with Gryphon's personnel. Additionally, in the summer of 2021, Mr. Valentine was instrumental in facilitating a transaction on Sphere's behalf with third-party Hertford Advisors, Ltd. ("Hertford") (the "Hertford Agreement") whereby Sphere purportedly obtained a six-month exclusive right to obtain tens of

---

[1] Mr. Tassiopoulos served as Sphere's CEO from March 4, 2013 until April 5, 2022.

thousands of bitcoin mining machines. It was understood by all parties that Sphere was going to use the bitcoin mining machines that it obtained through the Hertford Agreement in connection with its performance under the MSA.² Sphere never obtained the thousands of bitcoin mining machines under the Hertford Agreement.

On August 19, 2021, the parties entered into the MSA. Mr. Tassiopoulos signed the MSA on behalf of Sphere. Under the MSA, the parties agreed that Gryphon would serve as the exclusive provider of all management services related to Sphere's blockchain and cryptocurrency-related management operations.

On December 29, 2021, the parties amended certain provisions of the MSA ("Amendment No. 1"). Both Messrs. Tassiopoulos and Valentine participated in negotiating the terms of Amendment No. 1. In addition to signing the MSA, Mr. Tassiopoulos was central to negotiating the provisions of Amendment No. 1. Mr. Tassiopoulos also signed Amendment No. 1 on behalf of Sphere. During the relevant time period, Mr. Tassiopoulos had direct management responsibility for ensuring Sphere's performance under the MSA. Mr. Tassiopoulos also had direct knowledge of Gryphon's performance under the MSA.

### III. As Sphere's CEO, Mr. Tassiopoulos Praised Gryphon's Performance as the Exclusive Provider of Management Services Under the MSA.

During the relevant time period, Ms. Tassiopoulos repeatedly praised Gryphon's provision of management services to Sphere under the MSA. Mr. Tassiopoulos made at least the following public statements regarding Gryphon's performance under the MSA:

- On August 20, 2021, Mr. Tassiopoulos stated that it was "important" to Sphere that Gryphon be a part of Sphere's expansion initiatives.

---

² Under the Hertford Agreement, Sphere assumed a six-month exclusive right to assume Hertford's rights under four separate agreements for the purchase of mining machines. In exchange, Sphere transferred substantial amounts of its own equity to Hertford. Hertford's sole shareholder is Caravel Capital.

- On September 16, 2021, Mr. Tassiopoulos praised Gryphon's performance in operationalizing Sphere's miners, stating that "**the seamlessness exhibited by the [Gryphon] team to operationalize the new miners** is very encouraging for us as we await the first deliveries this year from the 60,000 miners we have ordered."

- On October 13, 2021, Mr. Tassiopoulos shared that Gryphon and its team was providing "**great work and help**" to Sphere.

*See* Tracey Declaration Ex. C, Press Release, Sphere 3D Corp., Gryphon and Sphere Announce MSA and Agreement to Purchase Additional Carbon Offset Credits Bringing Total to Half a Million Credits (Aug. 20, 2021); Tracey Declaration Ex. D, Press Release, Sphere 3D Corp, Sphere 3D Merger Target Gryphon, Launches First Batch of its 7,200 S19j Miners (Sept. 16, 2021) (emphasis added); Tracey Declaration Ex. E, Press Release, Sphere 3D Corp., Sphere 3D and Gryphon Secure Largest Single Hosting Services Deal in Core Scientific's History (Oct. 13, 2021) (emphasis added).

Mr. Tassiopoulos also lauded the quality and expertise of the management services that Gryphon employed on Sphere's behalf. For example, Mr. Tassiopoulos publicly described the expertise that Gryphon employed on Sphere's behalf as "**world class**" and admitted that Gryphon was "committed to the professionalization of the crypto industry." *See* Tracey Declaration Exs. C and E.

Thereafter, on April 4, 2022, the parties publicly announnced their mutual decision to terminate the Merger Agreement. Mr. Valentine actively negotiated the termination of the Merger Agreement on Sphere's behalf, which overlapped with parties' performance under the MSA.

**IV.     Sphere Repeatedly Breaches the MSA and Then Retaliates by Filing This Action.**

On April 7, 2023, Sphere filed this action against Gryphon. ECF Nos. 1 and 36.[3] Sphere has asserted three claims against Gryphon, including a claim for breach of the MSA (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and breach of fiduciary duty (Count III). *Id*. *First*, Sphere's claim for breach of contract is predicated in part on allegations that Gryphon provided "abhorrent" management services to Sphere in breach of the MSA and that Gryphon lacks internal controls in accordance with industry standards. *See, e.g.*, ECF No. 36 ¶¶ 2, 15, 33-37, 55-62. *Second*, Sphere's claim for breach of the implied covenant of good faith and fair dealing alleges that Gryphon failed to honor Sphere's instructions to sell certain digital assets held in a Sphere digital wallet. *Id*. ¶¶ 90-96. *Third*, Sphere's claim for breach of fiduciary duty is predicated in part on allegations that Gryphon prioritized its own interests over those of Sphere. *Id*. ¶¶ 47, 97-101.[4]

On February 1, 2024, Gryphon filed its Amended Answer and Fourth Amended Counterclaims (the "Answer and Counterclaims"). ECF No. 65. In its Answer and Counterclaims, Gryphon asserted a series of affirmative defenses against Sphere's claims, including that Sphere failed to state any claim upon which relief could be granted and that Sphere's claims against Gryphon are extinguished by Sphere's own breaches of the MSA. *Id*. ¶¶ 1-14 ("Affirmative Defenses"). Gryphon intends to establish all of its affirmative defenses, including that its provision of management services to Sphere complied with its obligations under the MSA. The deposition

---

[3] On September 20, 2023, Sphere filed its Second Amended Complaint. The Second Amended Complaint is the operative complaint in this action.

[4] *Id*. ¶ 47 ("Notwithstanding its clear fiduciary duties, throughout the parties' relationship, Gryphon has prioritized its own interests over those of Sphere's, including by prioritizing the operations of its own miners over Sphere's and employing more advantageous mining pool strategies for its own digital assets.").

testimony sought from Messrs. Tassiopoulos and Valentine are directly relevant to Gryphon's defenses.

In its Answer and Counterclaims, Gryphon also asserted its own claims against Sphere, including that Sphere repeatedly breached the MSA (Count II). ECF Nos. 65 and 70. Gryphon's breach of contract claim has two components. *First*, Sphere breached the MSA by entering into hosting agreements with other mining providers, which violated the Exclusivity Clause of the MSA. *See, e.g.*, ECF No. 65 ¶¶ 16, 37, 44, 47, 52, 62, 67. *Second*, Sphere's purported attempt to terminate the MSA on October 6, 2023 failed to comply with the notice-and-cure provisions of the MSA. *Id*. ¶¶ 106, 129. Gryphon seeks evidence from Messrs. Tassiopoulos and Valentine regarding any other hosting agreements entered into by Sphere during the relevant time period. The oral testimony sought from Messrs. Tassiopoulos and Valentine are directly relevant to Gryphon's breach of contract claim in this action.

## **LEGAL STANDARD**

A court may authorize discovery from individuals or entities in countries that are not signatories to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention") by issuing letters rogatory.[5] A letter rogatory is "a formal request from a court in which an action is pending, to a foreign court" to, among other things, secure "the taking of evidence." 22 C.F.R. § 92.54 (2024). Requests for judicial assistance through a letter rogatory are based on principles of reciprocity and international comity. *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (citing the "twin aims" of letters rogatory). Courts have "inherent authority" to issue

---

[5] Canada is not a signatory state to the Hague Evidence Convention.

and enforce letters rogatory. *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012) (citing 28 U.S.C. § 1781(b)(2) and Fed. R. Civ. P. 28(b)).

When considering issuing a letter rogatory, U.S. courts apply the discovery principles contained in Rule 26 of the Federal Rules of Civil Procedure, including whether "the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence..." *Id*. (citations omitted); *see also Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 120 (S.D.N.Y. 2019), *on reconsideration in part*, No. 13-cv-07060 (CM) (KHD), 2019 WL 5287931 (S.D.N.Y. Sept. 20, 2019) ("When determining whether to issue letters rogatory, courts apply the principles of Rule 26," which is "an extremely broad concept"); 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2083 (3d ed.) ("[T]here must be some good reason to deny a party the particular type of judicial assistance it seeks."). "Courts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material." *Netherby Ltd. v. Jones Apparel Grp., Inc.*, No. 04 Civ. 7028 (GEL), 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005).

## ARGUMENT

**I.     The Court Should Issue a Letter Rogatory for the Testimony of Peter Tassiopoulos Because the Discovery Sought Is Relevant and Not Otherwise Available.**

Gryphon seeks the issuance of letters rogatory to obtain deposition testimony from Mr. Tassiopoulos to establish its claims and defenses in this action. The evidence sought from Mr. Tassiopoulos is essential and there are several reasons why this Court should grant Gryphon's Motion. *First*, Mr. Tassiopoulos served as Sphere's most senior officer during part of the relevant time period – *i.e.*, during the time period when the parties were obligated to perform under the MSA. Mr. Tassiopoulos maintains direct knowledge of the factual issues relevant to this action, including both Sphere and Gryphon's performance under the MSA. *Second,* Mr. Tassiopoulos was

7

instrumental in negotiating and approving the terms of both the MSA and Amendment No. 1. Mr. Tassiopoulos **signed** both the MSA and Amendment No. 1 – both of which are now at the heart of this action.

*Third*, Mr. Tassiopoulos' public statements **directly contradict** the factual allegations asserted by Sphere in this action, including Sphere's allegations that Gryphon provided "abhorrent" management services to Sphere under the MSA and that Gryphon breached the fiduciary duties it allegedly owed to Sphere. ECF No. 36 ¶¶ 2, 33, 47. In multiple public statements as Sphere's CEO, Mr. Tassiopoulos praised Gryphon's performance under the MSA, including admissions that Gryphon provided "seamless" management services to Sphere. Further, Mr. Tassiopoulos credited Gryphon's efforts to operationalize Sphere's miners, which squarely undermines Sphere's allegations that Gryphon prioritized its own miners over those of Sphere. *Id*. ¶ 47.

In short, Mr. Tassiopoulos is a key witness who has direct knowledge over material factual issues implicated in this action and has evidence that will enable Gryphon to prove up both its claims and defenses. Mr. Tassiopoulos occupied a senior management position within Sphere during the relevant time period, oversaw the parties' performance under the MSA, and has made a series of public statements that directly contradict the factual allegations that Sphere has asserted against Gryphon. The deposition testimony sought from Mr. Tassiopoulos will likely support Gryphon's contentions in this litigation, including that Gryphon fully performed under the MSA. Mr. Tassiopoulos' testimony regarding his knowledge about the relationship between Gryphon and Sphere and the parties' performance under the MSA is relevant to both Gryphon's counterclaims and defenses in this action.

Accordingly, Gryphon requests that the Court issue a letter rogatory to obtain specific categories of deposition testimony from Mr. Tassiopoulos.

## II. The Court Should Issue a Letter Rogatory for the Testimony of Mark Valentine Because the Discovery Sought Is Relevant and Not Otherwise Available.

Gryphon also seeks the issuance of a letter rogatory to obtain the deposition testimony from Mr. Valentine that are relevant to establishing Gryphon's claims and defenses. There are several reasons why Mr. Valentine's evidence is relevant and essential to a full and just adjudication of this action. *First*, Mr. Valentine occupied an influential position within Sphere by negotiating the terms of both the Merger Agreement, MSA, and Amendment No. 1. *Second*, Mr. Valentine was a key point of contact for Gryphon's personnel and participated in daily calls between Gryphon and Sphere's personnel during the relevant time period. *Third*, Mr. Valentine was also key to negotiating a transaction with third-party Hertford that was highly relevant to the parties' relationship under both the Merger Agreeemnt and MSA.

Mr. Valentine's evidence is relevant to establishing Gryphon's claims and defenses in this action, including Gryphon's compliance with its obligations under the MSA and Sphere's breaches of the MSA. To that end, Mr. Valentine has direct knowledge of material factual issues that will tend to support Gryphon's defense that Sphere has failed to state any claim upon which relief can be granted, among other defenses. [6] Accordingly, Gryphon requests the issuance of letter rogatory to obtain specific categories of deposition testimony from Mr. Valentine.

---

[6] In its Responses and Objections to Gryphon's Second Set of Requests for Production of Documents ("Sphere's June 6, 2024 R&Os), Sphere declined to provide discovery into Gryphon's requests related to Mr. Valentine and his knowledge of the factual issues in this action. A true and correct copy of Sphere's June 6, 2024 R&Os are attached hereto as Exhibit F.

9

## **CONCLUSION**

For the foregoing reasons, this Court should grant Gryphon's Motion in its entirety, issue the letters rogatory in the annexed form, and grant such other and further relief to Gryphon as the Court deems just and proper.

Dated: August 29, 2024
      New York, New York

**HOGAN LOVELLS US LLP**

*/s/ Dennis H. Tracey, III*
Dennis H. Tracey, III
Elizabeth C. Carter
William C. Winter
390 Madison Avenue
New York, New York 10017
dennis.tracey@hoganlovells.com
elizabeth.carter@hoganlovells.com
william.winter@hoganlovells.com

*Counsel for Gryphon Digital Mining, Inc.*