# EXHIBIT A

# Winter, William

| | |
|---|---|
| **From:** | Winter, William |
| **Sent:** | Wednesday, November 13, 2024 12:23 PM |
| **To:** | 'David Moosmann'; Greg Wolfe; Rahul Srinivas |
| **Cc:** | Tracey, Dennis H.; Carter, Elizabeth C; Galt, Gwendolyn; DalCero, James |
| **Subject:** | RE: Gryphon and Mr. Levin's Assertions of Privilege |

David,

I'm free at 4 PM on Friday and all day Monday.

Regards,
Will

**From:** David Moosmann <dmoosmann@dnfllp.com>
**Sent:** Wednesday, November 13, 2024 11:22 AM
**To:** Winter, William <william.winter@hoganlovells.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>; DalCero, James <james.dalcero@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

**[EXTERNAL]**
Will,

We have reviewed your recent production and, as we predicted during our meet-and-confer, the limited documents you've produced do not, contrary to your representation, provide any of the "factual background" concerning Mr. Chang's termination and Mr. Salzman's withdrawn resignation. As we've explained, Sphere is entitled to such information and, unless Gryphon will agree to produce documents furnishing it, will need to seek relief from the Court. Please let us know your availability for a follow-up meet-and-confer this week so that we can determine whether we are at an impasse.

We additionally note that, with respect to Gryphon's refusal to supplement its response to Interrogatory No. 3., we believe we have fully discharged our meet-and-confer obligations and are at an impasse; nevertheless, we are willing to discuss the matter once more before we seek a conference with the Court.

In addition to these subjects, please be prepared to discuss the results of the "forensic examination" Gryphon was set to conduct of Mr. Chang's phone. You stated that Mr. Chang was to bring his phone in for examination last Monday (the 4th) but have not provided us with an update. Please confirm that Gryphon is now in possession of Mr. Chang's old phone and let us know when we can expect the results of Gryphon's forensic examination.

David

**David Moosmann***
Associate
Dontzin Nagy & Fleissig LLP
31 East 62nd Street
New York, NY 10065
O: (212) 717-2900 | M: (850) 294-6435
dmoosmann@dnfllp.com
***Admitted only in Texas**

1

**From:** Winter, William <william.winter@hoganlovells.com>
**Sent:** Tuesday, November 5, 2024 9:51 AM
**To:** David Moosmann <dmoosmann@dnfllp.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>; DalCero, James <james.dalcero@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

David,

Our responses below to the issues raised in your email.

  1. **Sphere's Document Requests Concerning Mr. Chang's Departure as Gryphon's CEO**

We continue to believe that the discovery Sphere seeks into Mr. Chang's departure as Gryphon's CEO is a fishing expedition and irrelevant to the claims or defenses in this action. With that said, and subject to and without waiver to the objections raised in Gryphon's October 28, 2024 R&Os, we will agree to produce the following materials (if they exist):

   1. Agreements between Mr. Chang and Gryphon, and agreements between Gryphon and any entity Mr. Chang controls.
   1. Formal communication between Gryphon and Mr. Chang concerning the cause and reasons behind his termination.
   2. Board-level documents (e.g., minutes and resolutions) concerning the cause and reasons behind Mr. Chang's termination.

After further consideration, we have decided that the materials outlined above are more than sufficient to provide Sphere with the factual background concerning the end of Mr. Chang's employment. Consequently, we will only be producing the above-mentioned materials and will not be engaging in any electronic searches at this late stage in discovery.

  2. **Sphere's Document Requests Concerning Mr. Salzman's Continued Employment with Gryphon**

As with Sphere's late-breaking requests seeking information concerning Mr. Chang's departure, we continue to believe that the requests targeting Mr. Salzman are a fishing expedition targeting topics irrelevant to this litigation. However, subject to and without waiver to any of our objections, Gryphon is willing to produce the following:

   1. Employment agreements between Mr. Salzman and Gryphon, and agreements between Gryphon and any entity Mr. Salzman controls.
   2. Board-level documents (e.g., minutes and resolutions) relating to Mr. Salzman's decision to remain with Gryphon and his increased compensation following that decision.

Again, we think these categories of materials are more than sufficient, especially at this late-stage in fact discovery. We will not be conducting any electronic searches at this stage in the proceedings.

  3. **Sphere's Demand that Gryphon Provide Information Concerning An "Updated" Damages Estimate that Sphere Itself Has Refused to Provide**

2

We don't understand why you are threatening to seek Court intervention if we do not provide you with an "updated response" to Sphere's Interrogatory No. 3 dated March 25, 2024. Quite frankly, we don't understand why you think we have developed an "updated" estimate of the damages caused by Sphere's breaching conduct. In any event, Gryphon has provided the same type of information that Sphere has provided to date, and Sphere has not provided any update to its own damages estimate.

For example, when Gryphon requested on March 25, 2024 that Sphere produce an estimate of its damages, Sphere objected that the interrogatory request was "premature" because "discovery is still ongoing and Sphere does not know the full measure of its damages or the categories of damages it is entitled to." Further, Sphere claimed that "the calculation of damages may require expert evidence." Sphere provided an estimate of the damages it thinks it is owed.

On June 15, 2024, Gryphon provided an estimate of the damages that it suffered as a result of Sphere's breaching conduct and which forms the basis for Gryphon's breach of contract claim against Sphere (Count II). I attach that letter to this email.

When we met last Thursday, you confirmed that Sphere's discovery productions are not yet completed. Further, it is not at all clear that Sphere has produced all of the financial information that Gryphon has requested. Quite frankly, Sphere has not even confirmed which categories of financial information Sphere will ultimately produce.

As I've noted several times now, we have not created any updated damages estimate. Given that discovery is ongoing (depositions are just beginning in this case) and that the calculation of damages will require expert evidence, we will not be providing any "update" to our estimate of damages – we already provided an estimate of our damages at the start of discovery and without the benefit of discovery, just as Sphere did. Our damages will be updated in the form of an expert report that will be exchanged with Sphere at the same time as Sphere provides its expert report.

4. **Depositions**

We are coordinating with Mr. Tolhurst on his availability to come to the United States. Mr. Tolhurst lives in England. We'll reach back out with alternative dates as November 14 will not work given that Sphere now insists on an in-person deposition. We are fine to proceed with Mr. Chase's deposition on November 20 at 1:30 EST. Mr. Levin can sit for his deposition on any day between December 9 and 13. We have confirmed Mr. Valentine's deposition for December 3. We are fine with proceeding with Dr. Wall's deposition beginning at 9 AM this Friday.

Gryphon reserves all rights and waives none.

Regards,
Will


**From:** David Moosmann <dmoosmann@dnfllp.com>
**Sent:** Saturday, November 2, 2024 4:50 PM
**To:** Winter, William <william.winter@hoganlovells.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>; DalCero, James <james.dalcero@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

[EXTERNAL]
Will,

3

I write to memorialize our meet-and-confer on October 31, 2024, and address a few logistical items.

**Gryphon's Production of Documents Concerning Mr. Chang's Termination & Mr. Salzman's Departure And Its Reversal**

The first issue we discussed was Gryphon's R&Os to Sphere's most recent set of Requests for Production, which you served on Monday. On the call, we set forth our differing positions on propriety of our RFPs and your objections, including the positions I set forth in my previous emails. We then discussed the specific categories of documents you were willing to produce or would consider producing. With respect to Mr. Chang, you stated that you were willing to produce the following categories of documents:

- Agreements between Mr. Chang and Gryphon, and agreements between Gryphon and any entity Mr. Chang controls.

- Formal communication between Gryphon and Mr. Chang concerning the cause and reasons behind his termination.

- Board-level documents (e.g., minutes and resolutions) concerning the cause and reasons behind Mr. Chang's termination.

We informed you of our position that Sphere is entitled to know the factual basis of Mr. Chang's termination. We then asked that you also agree to search for and produce communications in the months leading up to Mr. Chang's termination for Cause. You said you would take the proposal back to your client and asked us in turn to consider a date range with which we'd be satisfied. Because Mr. Chang received notice of his breach on July 19, 2024, and was terminated on September 17, 2024, we'd like communications related to Mr. Chang's termination generated between June 1, 2024, and September 30, 2024.

The parties next discussed Sphere's Requests for Production as they relate to Sim Salzman. You said Gryphon is prepared to produce the following categories of non-privileged documents as they relate to Mr. Salzman's decision to remain at Gryphon.

- Employment agreements between Mr. Salzman and Gryphon, and agreements between Gryphon and any entity Mr. Salzman controls.

- Board-level documents (e.g., minutes and resolutions) relating to Mr. Salzman's decision to remain with Gryphon and his increased compensation following that decision.

As with Mr. Chang's documents, we explained that the factual context of Mr. Salzman's decision to leave and its reversal is relevant such that we would like Gryphon to produce communications sufficient to show the facts of why Mr. Salzman left, why he decided to remain, and what inducements or benefits Mr. Salzman received in connection with his decision to remain; we identified, for example, communications concerning the negotiation of the terms (including the increased compensation) of his new employment agreement. You agreed you'd take that request back to your client as well.

Gryphon noted that its production of the above categories of documents was conditioned on Sphere producing its employment agreements with Patricia Trompeter and Kurt Kalbfleisch. We have conferred internally and are willing to produce those materials so long as Gryphon comes back with an acceptable proposal on the categories of documents you said you'd discuss with your client.

Please let us know **by no later than Tuesday morning** what categories of documents you are willing to produce in response to our RFPs concerning Messrs. Chang and Salzman.

**Gryphon's Refusal To Updates Its Incomplete Interrogatory Response On Damages**

We then discussed Sphere's request that, in light of your comment that the computation of Gryphon's damages was "simple math," Gryphon update its response to Sphere's Interrogatory No. 3, which asked Gryphon to state its damages computation. In that response, Gryphon stated that it was premature to disclose its damages calculation. Thereafter, as I noted earlier in this email chain, Gryphon sent a follow-up letter in which it estimated its damages at $45 million but did not provide a computation. I asked you to explain the "simple math" to me and, more generally, Gryphon's damages theory. I reiterated our demand that Gryphon supplement its interrogatory response.

You responded that Gryphon would not provide an updated interrogatory response because, although Gryphon had not put forward a computation, it had provided all it was required to provide. When I asked why you were declining to state your computation given your statement that it is "simple math," you replied that the MSA was very clear on what Gryphon's damages are. After I informed you that I did not find your damages theory clear, you said that you struggled to understand why I could not grasp your damages theory. At the same time, you stated that you could not provide an updated damages figure at this time because discovery was ongoing and all the facts weren't known.

I also asked you about what categories of damages you were claiming. You confirmed that, as of now, Gryphon's sole theory of damages is that Sphere failed to pay the Management Fee (22.5% of Sphere's Net Operating Profit as that term is defined in the MSA) to which Gryphon claims it is entitled. When I asked you to explain how that theory squared with Gryphon's prior estimation of its damages (not including damages associated with the October 2023 termination of the MSA) at $35 million—which would put the Net Operating Profit on which Sphere had not paid the Management Fee at over $150 million, even though Sphere hasn't even generated that much revenue in the three years since the MSA was entered into—you stated that Sphere's prior CEO had, in communications Sphere produced, apparently done the math already. When I asked you to identify those communications, you said something to the effect that I could do my own homework. You then refused to identify the documents at issue.

Given your statement that Gryphon will not provide an updated response to our interrogatory, we may need to seek relief from the Court. Please let us know **by Tuesday** if you have reconsidered your position.

**Deposition Scheduling Issues**

We'd like to raise five logistical issues concerning depositions:

- Now that Mr. Tolhurst has been designated as your 30(b)(6) witness, we intend to depose him in person as we planned to do for your previous 30(b)(6) designee. If you cannot make him available in person on the date already scheduled (the 14th), please provide alternative dates after the 14th.

- With respect to Dr. Wall, I'm confirming that starting at 9:00 AM EST is fine with us.

- Please confirm that Gryphon is available for Mr. Chase's deposition on the 20th from 9:30 to 1:30 EST, as I'd like to nail down a date and time.

- Given that Mr. Chase is available on the 20th, do you have alternative dates for Mr. Levin?

- Can you confirm whether you've locked in a December 3 deposition for Mr. Valentine?

5

**David Moosmann\***
Associate
Dontzin Nagy & Fleissig LLP
31 East 62nd Street
New York, NY 10065
O: (212) 717-2900 | M: (850) 294-6435
dmoosmann@dnfllp.com
**\*Admitted only in Texas**

**From:** David Moosmann
**Sent:** Wednesday, October 30, 2024 2:01 PM
**To:** Winter, William <william.winter@hoganlovells.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>; DalCero, James <james.dalcero@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

Thanks for confirming. I'll circulate a dial-in.

**David Moosmann\***
Associate
Dontzin Nagy & Fleissig LLP
31 East 62nd Street
New York, NY 10065
O: (212) 717-2900 | M: (850) 294-6435
dmoosmann@dnfllp.com
**\*Admitted only in Texas**

**From:** Winter, William <william.winter@hoganlovells.com>
**Sent:** Wednesday, October 30, 2024 1:56 PM
**To:** David Moosmann <dmoosmann@dnfllp.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>; DalCero, James <james.dalcero@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

Noon works.

**From:** David Moosmann <dmoosmann@dnfllp.com>
**Sent:** Wednesday, October 30, 2024 1:55 PM
**To:** Winter, William <william.winter@hoganlovells.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>; DalCero, James <james.dalcero@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

[EXTERNAL]
Will,

Please confirm that 12:00 tomorrow works for a call to discuss the issues we've been emailing about. Thanks.

**David Moosmann\***
Associate
Dontzin Nagy & Fleissig LLP
31 East 62nd Street
New York, NY 10065
O: (212) 717-2900 | M: (850) 294-6435
dmoosmann@dnfllp.com
**\*Admitted only in Texas**

**From:** Winter, William <william.winter@hoganlovells.com>
**Sent:** Wednesday, October 30, 2024 1:12 PM
**To:** David Moosmann <dmoosmann@dnfllp.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>; DalCero, James <james.dalcero@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

David,

Enough with the bluster. As for the damages caused by Sphere, we've provided all the information that is required in our interrogatory responses. As you know, this is information in Sphere's own possession. My reference to "simple math" is that the MSA clearly and unambiguously set forth Gryphon's rights under the MSA. Further, we've told you that we've been working with our vendor since last week I believe. We're not providing you with any new information. Mr. Chang is scheduled to bring his old phone in for a forensic examination next Monday.

November 8 is fine for Dr. Wall's deposition. Let's start at 9 or 9:30 AM if that works.

Regards,
Will

**From:** David Moosmann <dmoosmann@dnfllp.com>
**Sent:** Wednesday, October 30, 2024 12:40 PM
**To:** Winter, William <william.winter@hoganlovells.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

[EXTERNAL]
Will:

First, on Kroll and Brian Chase, our depositions of either will likely not take anywhere close to 5 hours. Of course, you never asked for any limitation on the time spent deposing Mr. Chase or Kroll; there's no occasion to compromise in response to a position that's never been articulated. But as stated, we will be closer to one or two hours than five.

Second, you said our discovery requests were "ridiculous." That is not a cognizable legal position.

Third, you have not said anything that changes our position on the relevance of the discovery. On timing, we obviously cannot pursue discovery on events like Mr. Chang's termination and Mr. Salzman's reversal of his decision until they occur. As far as Mr. Salzman, we are still considering whether to notice his deposition

(which would be short) based on the recent productions, which plainly show him to have knowledge material to this dispute. And he will certainly be relevant as a trial witness.

Fourth, your statement that Gryphon's damages can be computed using "simple math" is surprising. You may recall that we propounded an interrogatory seeking Gryphon's computation of its damages, which you declined to provide in your April 15, 2024, R&Os. By letter, you later stated that your damages are $45 million, but did not provide the basis. We demand that Gryphon provide an updated response containing its damages computation, including the "simple math" Gryphon is using to arrive at it and its basis. If the simple math you are referring to only forms a portion of your damages calculation, we are still entitled to see the simple math. This must be supplemented by the end of the week. If you do not agree to do so today, please be prepared to discuss this matter, including the basis of your computation, in our meet-and-confer tomorrow.

Fifth, you reference the "documented position of Sphere's former CEO." Which "position" are you referring to, and what document or documents is that position set forth in?

Sixth, based on our review of the production, we are still seeing inexplicable gaps that leads us to believe that documents have, in fact, been spoliated. Also, your statement that you are only now "working with [y]our vendor . . . to identify any documents which may have been deleted" suggests that, when you answered our previous questions on the issue, you had not conducted that investigation. Is that correct?

As to your point that Mr. Chang's destruction of documents wouldn't matter because any communications with "Gryphon's other personnel" would be reflected in your production of their materials, that position ignores that (1) any communications by Mr. Chang exclusively with persons other than those you identified would obviously not be reflected in other custodians' productions; and (2) there still appear to be gaps with Gryphon personnel, which suggests the spoliation issue is not isolated to Mr. Chang. We will raise these issues after we finish reviewing your production.

Seventh, Dr. Wall is available on November 8. Please let us know as soon as possible if that date works; as I noted, Dr. Wall has teaching and other obligations that are difficult to move, but we have worked to clear that day for his deposition.

Noon tomorrow is fine for a meet-and-confer.

**David Moosmann***
Associate
Dontzin Nagy & Fleissig LLP
31 East 62nd Street
New York, NY 10065
O: (212) 717-2900 | M: (850) 294-6435
dmoosmann@dnfllp.com
***Admitted only in Texas**

---

**From:** Winter, William <william.winter@hoganlovells.com>
**Sent:** Wednesday, October 30, 2024 10:59 AM
**To:** Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>; David Moosmann <dmoosmann@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

David,

First, we agreed to reduce the time of Dr. Wall's deposition – a compromise we were not obligated to make and which we will add Sphere has not offered to do for any non-party in this case, including Kroll and Brian Chase. That's the record, which you do not dispute. Second, I'm not mischaracterizing our exchange from earlier this week – you plainly stated that you "couldn't care less" about my views about your document requests. That's fine, but I wasn't offering my personal opinion, but rather Gryphon's position as its legal counsel.

Third, we are still struggling to see the relevance of the discovery sought by Sphere in the document requests propounded on September 27, 2024. What you offer below is pure speculation, which is insufficient to justify the wide-ranging discovery you now seek, especially after the substantial completion deadline. For example, in justifying Sphere's fishing expedition, you claim that "[t]he timing of the notice and ultimate termination coincided with Gryphon's review of Mr. Chang's documents and communications in the Sphere litigation." There is no relationship between the discovery process in this litigation and Mr. Chang's separation of employment with Gryphon. We do not represent Gryphon in any employment dispute involving Mr. Chang. I'd also add that Gryphon had been reviewing Mr. Chang's documents throughout the summer and, by late August, had completed its review of tens of thousands of documents and made a substantial production to Gryphon. If your theory is correct (it is not) that some smoking gun uncovered by Gryphon in the course of discovery in this action resulted in Mr. Chang's termination, don't you think Mr. Chang's employment would have ended earlier? The fact is that Mr. Chang's employment ended for reasons not relevant to Sphere or this litigation. You're entitled to explore the reasons why Mr. Chang's employment ended during depositions.

As to the eleventh-hour discovery you now seek from Mr. Salzman, Mr. Salzman was not a custodian negotiated by the parties before embarking on extremely expensive discovery. Likewise, as Sphere already knows, Mr. Salzman had very minimal contact with Sphere's personnel. Sphere has never sought the deposition testimony of Mr. Salzman in this action, so we're similarly confused as to how any employment agreement entered between Gryphon and Mr. Salzman "would impact [Mr. Salzman's] ability to testify honestly." And, in response to your statement that the discovery sought by Mr. Salzman is justified based on the fact that "Gryphon has baselessly claimed it is entitled to tens of millions of dollars in consideration in connection with this litigation—a figure no responsible CFO would attach his name to," that's not just Gryphon's position, but apparently the documented position of Sphere's former CEO who caused Sphere to enter into the MSA in the first place. The damages caused by Sphere and suffered by Gryphon are the product of simple math.

Finally, as to your claim that Mr. Chang has "spoliated" evidence, we disagree with that characterization. As we've communicated already this week, we're working with our vendor, including their forensics team, to identify any documents which may have been deleted. We'll follow up with you as we receive updates on that front. We'll add, however, that any messaging chats sent by Mr. Chang to any of Gryphon's other personnel, including, among others, Mr. Tolhurst, Mr. Ensey, Mr. Levin, Mr. Chase, and Ms. Kaiser would be located in their own document productions, which we've produced.

Given the irrelevance of the eleventh-hour discovery Sphere now seeks in its September 27, 2024 document requests, we're standing on our objections. I'm happy to meet on Thursday (tomorrow) between noon and 2 PM if you want to try again or if you think there's a discrete and limited set of documents that you think you need and which reflects a compromise and an end to this fishing expedition.

Regards,
Will

---

**From:** David Moosmann <dmoosmann@dnfllp.com>
**Sent:** Wednesday, October 30, 2024 8:54 AM
**To:** Winter, William <william.winter@hoganlovells.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>;

Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

[EXTERNAL]
Will,

Your memorialization of our discussion is not accurate. Our responses are below; I also raise a couple other issues.

First, thank you for agreeing to limit your deposition of Dr. Wall to five hours. While we think that is still far too long given his limited relevance to the case, we will consult with Dr. Wall about times at which he is available and get back to you in short order. As to the efficiency of our questioning of your deponents, we always aim to keep depositions as short as possible. I would note our view that keeping Dr. Wall's deposition to "five hours" does not reflect that efficiency sentiment.

Second, you are mischaracterizing our exchange. After we discussed other matters, I noted that we would like to meet and confer with respect to the responses and objections you served Monday morning so that we could discuss our respective positions. You then stated that you thought the requests were "ridiculous," which is not a helpful contribution. In response, I stated that I was not concerned with your personal views about our discovery requests, but that the parties could discuss the substantive issues at our upcoming meet-and-confer.

Here is the substance of why Gryphon must make productions responsive to Requests Nos. 35, 38, 39, 40, and 41.

Sphere is entitled to explore whether 1) Mr. Chang's termination for Cause had to do with issues in this litigation; 2) Mr. Salzman's threatened resignation likewise had to do with issues in this litigation; 3) either witness signed agreements, or received any benefits from Gryphon at this crucial point in the litigation (for example, Gryphon has disclosed that Mr. Salzman received a $75,000 increase to his previous base salary of $200,000 in connection with his decision to remain at the company), that would impact their ability to testify honestly.

Mr. Chang's advisory agreement provides that he may be terminated for Cause, among other reasons, if he engages in "(i) intentional misconduct involving the Company or its assets, including, without limitation, material misappropriation of the Company's funds or property; (ii) reckless or wilful misconduct in the performance of Consultant's duties in the event such conduct continues after the Company has provided 30 days written notice to Consultant and a reasonable opportunity to cure such misconduct; …; (v) the material breach of any provision of this Agreement after 30 days written notice to Consultant of such breach and a reasonable opportunity to cure such breach; or (vi) any other misconduct that has a material adverse effect on the business or reputation of the Company after 30 days written notice to Consultant of such breach and a reasonable opportunity to cure the adverse effects of such misconduct."

According to Mr. Chang's recently filed complaint against Gryphon, on July 19, 2024, he received notice that he was in breach of his obligation to "use his best efforts to advance the business and welfare of the Company, to render his services under this Agreement faithfully, diligently and to the best of his ability" and that he had 30 days to cure the alleged misconduct. He was later terminated for cause on September 17, 2024. The timing of the notice and ultimate termination coincided with Gryphon's review of Mr. Chang's documents and communications in the Sphere litigation. It is more than plausible that those documents and communications caused Gryphon to conclude that Mr. Chang had caused Gryphon to materially breach its obligations under the MSA, failed to perform his obligations consistent with industry standard, and committed gross negligence, fraud, and intentional misconduct. Indeed, the for Cause definition in Mr. Chang's contract with Gryphon in many ways mirrors the termination provision in the Sphere-Gryphon MSA. The timing here also coincided

with the revelation that Mr. Chang had spoliated documents.  It is plausible that Gryphon, having uncovered evidence that Mr. Chang engaged in acts that justified Sphere's termination under the Sphere-Gryphon MSA and undermined Gryphon's defenses in this litigation by spoliating documents, terminated him for Cause.  Equally plausible is that Mr. Salzman was prepared to resign over the issue and Gryphon's public disclosures concerning the litigation, in which Gryphon has baselessly claimed it is entitled to tens of millions of dollars in consideration in connection with this litigation—a figure no responsible CFO would attach his name to.

As to your objections, they are either improper, lack sufficient specificity, or both.  Your burden and overbreadth objections are boilerplate, make no concrete showing of burden, and are entitled to no weight.  Your vagueness objection is not well taken.  The word "agreements" is not vague or ambiguous; indeed, Gryphon itself has used the term in its own requests for production, so it presumably knows what it means.  Finally, as to your objection that the requests assume the existence of events that did not occur, which events are you referring to? Please identify which of the events in the RFPs your objection applies to.

As to the other requests, we will accept your representation that they have no relevance to this litigation.

In light of the above explanation, please let us know if you intend to rest on your objections and we can set a meet-and-confer.  If you are resting on your objections, please let me know your availability on Thursday.

Third, with respect to Mr. Levin, we understand and disagree with your position about his status as an agent and the propriety of your decision to withhold communications for which he was a sender or a recipient.  As I noted on our call, we are aware that there are communications on which both Mr. Levin and the Lazers—whom you now concede are not Gryphon's agents—were copied.  We appreciate your decision to reconsider your assertion of privilege as to those materials, which we will review and at least some of which appear to be in your production of yesterday evening.  We will wait to see what documents remain on your privilege log before deciding on a course of action.

Fourth, as I mentioned, we're in agreement for November 14 for Mr. Tolhurst.  8:00 AM is fine.  We will confirm on Mr. Ensey when able.  Please let us know when you have additional dates for Mr. Levin and the other witnesses you intend to depose.

Fifth, do you have proposed dates for Messrs. Valentine or Tassiopolous yet?

David

**David Moosmann\***
Associate
Dontzin Nagy & Fleissig LLP
31 East 62nd Street
New York, NY 10065
O: (212) 717-2900 | M: (850) 294-6435
dmoosmann@dnfllp.com
**\*Admitted only in Texas**

---

**From:** Winter, William <william.winter@hoganlovells.com>
**Sent:** Monday, October 28, 2024 6:48 PM
**To:** Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>; David Moosmann <dmoosmann@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>;

Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

David and Rahul,

Thank you for your time during this morning's meet and confer. We'd like to memorialize a few points from our meeting:

1. We will agree to limit Dr. Wall's deposition to five (5) hours. Given our effort to compromise, which we were under no obligation to do so, we hope you will likewise try and make your own questioning of Gryphon's witnesses efficient so that our witnesses can move on with their busy lives.

2. As you know, we served our responses and objections this morning to Sphere's Second Set of Requests for Production, dated September 27, 2024. As we stated during today's meet and confer, we think the document requests are entirely irrelevant to any of the claims or defenses in this action, among other objections. During the call, you did not dispute that they were irrelevant, and replied only that "you could care less" what Gryphon's lawyers thought of Sphere's document requests. We are usually interested in understanding our adversaries' position on the document requests we propound in order to adjust our own approach or reach compromise, if needed. Despite your saying "you could care less" about our position on your irrelevant document requests, we're happy for you to attempt to explain their relevance.

3. As mentioned on the call, our position continues to be that Mr. Levin was and is a Gryphon agent. However, as I mentioned in my email from last Friday and reiterated this morning, we have decided that the Lazers and Greg Lipschitz are not Gryphon agents after further investigation. Further, during today's call, we noted that the Lazers were also copied on many of the communications that Mr. Levin was copied on and which we think you are pursuing. Therefore, as a practical matter, we would recommend that you review those communications before engaging in unnecessary and wasteful motion practice. We expect to be in a position to produce these documents tomorrow.

4. Mr. Tolhurst can sit for his deposition on November 14. I'd like to note that Mr. Tolhurst resides in London and will be sitting for his deposition in London. London is six (6) hours ahead of New York time. If we can begin the deposition at 8 a.m. New York time, Mr. Tolhurst would be appreciative. Further, Mr. Ensey can sit for his deposition on November 26. Please advise if this date works.

Regards,
Will

---

**From:** Winter, William
**Sent:** Monday, October 28, 2024 10:12 AM
**To:** David Moosmann <dmoosmann@dnfllp.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

David,

During our meet and confer this morning, I'd like to also discuss hammering out the remaining dates for deps. So far, we've provided dates for Dan Tolhurst (November 14) and Chris Ensey (November 26). We also need to schedule Mr. Levin's deposition.

Regards,

Will

---

**From:** Winter, William <william.winter@hoganlovells.com>
**Sent:** Friday, October 25, 2024 3:29 PM
**To:** David Moosmann <dmoosmann@dnfllp.com>
**Cc:** Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>; Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>
**Subject:** Re: Gryphon and Mr. Levin's Assertions of Privilege

I now remember. You're right. We did. I forgot about that conversation. But I'll add that Mr. Levin's status as an agent extends beyond his role as a principal shareholder. He acted on behalf, and in furtherance of, the company's interests in a variety of substantive ways.

How's 11:30 AM on Monday? Have a good weekend.

Regards,

Will

Sent from my iPhone

William C. Winter
Associate
Hogan Lovells US LLP
Mobile: (332) 867-4554

> On Oct 25, 2024, at 3:12 PM, David Moosmann <dmoosmann@dnfllp.com> wrote:
>
> **[EXTERNAL]**
> Will,
>
> I think we have discussed Mr. Levin's role in connection with your assertions of privileges. We spoke in late September and discussed your and Dennis's assertion that communications involving Mr. Levin are privileged because he is a "principal shareholder." But I am happy to discuss further to better understand your position. Could you send me some times on Monday that work for you? I have a call from 1 to 1:30 but am otherwise flexible.
>
> On the Lazers, Kroll, and Greg Lipschitz, thanks.
>
> David
>
> **David Moosmann***
> Associate
> Dontzin Nagy & Fleissig LLP
> 31 East 62nd Street
> New York, NY 10065
> O: (212) 717-2900 | M: (850) 294-6435
> dmoosmann@dnfllp.com

13

*Admitted only in Texas

**From:** Winter, William <william.winter@hoganlovells.com>
**Sent:** Friday, October 25, 2024 2:53 PM
**To:** David Moosmann <dmoosmann@dnfllp.com>; Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Cc:** Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>
**Subject:** RE: Gryphon and Mr. Levin's Assertions of Privilege

David,

I don't believe we have conferred by phone about Mr. Levin's and his role within Gryphon's organization. We've corresponded by email on this topic, but I don't believe we've discussed by phone. I'm happy to confer with you on this topic early next week. Does Monday or Tuesday work for you?

After further investigating Mr. Levin and the Lazers' role within Gryphon's organization, which included discussions with Gryphon's employees and a review of documents, it continues to be our position that Mr. Levin is an agent of Gryphon. Indeed, as we have stated multiple times, Mr. Levin acted on behalf of Gryphon in a variety of ways and on multiple different subjects, including, but not limited to, the following:

1. Participating in the Gryphon-Sphere merger agreement, including negotiating its terms and the amendments to those terms;

2. Participating in the parties' entrance into the MSA, including negotiations of the MSA;

3. Participating in negotiating the termination of the Gryphon-Sphere merger agreement in which Sphere's representative was Mark Valentine; and

4. Discussions with Sphere's personnel, including Ms. Trompeter, in the aftermath of the Spoofing Incident.

Of course, Sphere has been aware of Mr. Levin's role within Gryphon's organization since before the litigation began. Accordingly, our position remains that Mr. Levin is an agent of Gryphon. However, after further investigation, we have come to the conclusion that Dean Lazer, Eric Lazer, and Greg Lipchitz's interactions with Gryphon did not rise to the level of an agency relationship. As such, we will be producing responsive communications where these individuals are senders or recipients. I expect that we will be in a position to produce those communications by early next week.

Second, consistent with our agreement, we will produce any communications between Gryphon or K&L Gates, on the one hand, and Kroll, on the other hand, that concerns the Spoofing Incident investigation. I've looked at the privilege log entries and agree that the documents associated with Kroll should be produced pursuant to our agreement. We will make that production, likely early next week. There are very few documents, so

that will be easy. As you note below, we will not be producing communications exclusively between Gryphon and K&L Gates on this topic.

Third, while I agree that merely attaching something to a privileged document does not, by itself, make the attachment privileged, courts have acknowledged that email attachments need to be considered in the context of the parent email. *Families for Freedom v. U.S. Customs & Border Prot.*, 2011 WL 4599592 at *5 (S.D.N.Y. Sept. 30, 2011) ("The attachments can only be fully understood and evaluated when read in the context of the emails to which they are attached. That is the way they were sent and the way they were received."). This is because a parent email and its attachments may reflect a logical single communication, and the information included in attachment may be necessary for the lawyer to provide advice. With that said, given that the Lazers and Mr. Lipschitz are also recipients of the emails you note below (LEVIN-PRIV-LOG—00093-94), we will be producing the parent email and attachments.

Regards,
Will

**From:** David Moosmann <dmoosmann@dnfllp.com>
**Sent:** Thursday, October 24, 2024 11:02 PM
**To:** Winter, William <william.winter@hoganlovells.com>; Tracey, Dennis H. <dennis.tracey@hoganlovells.com>; Carter, Elizabeth C <elizabeth.carter@hoganlovells.com>; Galt, Gwendolyn <gwendolyn.galt@hoganlovells.com>
**Cc:** Greg Wolfe <greg@dnfllp.com>; Rahul Srinivas <rsrinivas@dnfllp.com>
**Subject:** Gryphon and Mr. Levin's Assertions of Privilege

[EXTERNAL]
Will,

We write to address several issues we've identified in our review of Gryphon's and Mr. Levin's privilege logs.

First, Gryphon and Mr. Levin withheld many documents with Gryphon for which Mr. Levin or the Lazers were senders or recipients. As you know, we contend that such documents cannot be privileged because the presence of Mr. Levin or the Lazers vitiates the privilege. Indeed, prior counsel for Gryphon expressly informed Greg that Mr. Levin was not an agent of the company and that he would need to be subpoenaed. In your subpoena responses, you likewise did not contend that Mr. Levin was an agent, but instead that he had no responsibility for Gryphon's day-to-day operations. And in your correspondence of earlier today, you reiterated your view that Mr. Levin was a "non-party" witness. Given that we have already discussed the matter several times over calls and exchanged correspondence on it, we believe the issue is ripe for motion practice. Please however let us know if you believe a further call would be productive.

Second, there appear to be a small number of documents associated with Kroll (e.g., GRYPHON-PRIVLOG-00230) which you have withheld on grounds of attorney-client privilege. Pursuant to our agreement, we expect those communications to be produced. For the avoidance of doubt and again pursuant to our agreement, we are not challenging your assertion of privilege over communications that are exclusively between Gryphon and K&L Gates but which otherwise have a connection to Kroll's investigation of the Spoofing Incident, contingent on reciprocity for us.

Third, in Mr. Levin's log, there are two documents (LEVIN-PRIV-LOG—00093-94) connected to the Spoofing Incident that are withheld on the ground that they were "provided to K&L Gates for the purpose of providing legal advice regarding spoofing incident." As you know, the mere fact that a document is sent to a lawyer in connection with their provision of legal advice does not render the document privileged; rather, the document must be privileged in its own right. *See Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 2020 WL 1698928, at *2 (S.D.N.Y. Apr. 8, 2020) ("As to the issue of attachments to emails, HCC cannot assert that attachments are automatically privileged—even if attached to a privileged email—and must produce such attachments unless they themselves contain or refer to legal advice."). Please confirm that you will produce these documents and any other attachments whose contents do not provide an independent basis for the assertion of privilege.

Fourth, as to our own privilege log, we are in the process of finalizing it in light of our most recent productions and intend to serve it soon.

**David Moosmann***
Associate
Dontzin Nagy & Fleissig LLP
31 East 62nd Street
New York, NY 10065
O: (212) 717-2900 | M: (850) 294-6435
dmoosmann@dnfllp.com
***Admitted only in Texas**

---

**About Hogan Lovells**
Hogan Lovells is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP. For more information, see www.hoganlovells.com.

CONFIDENTIALITY. This email and any attachments are confidential, except where the email states it can be disclosed; it may also be privileged. If received in error, please do not disclose the contents to anyone, but notify the sender by return email and delete this email (and any attachments) from your system.

PRIVACY. Hogan Lovells processes personal data, including data relating to email communications, in accordance with the terms of its privacy policy which is available at www.hoganlovells.com/en/privacy.